**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 18-24070-GLT |
| OneJet, Inc. | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| WOODY PARTNERS, ET AL. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary No. 2:19-02134-GLT |
| | : | |
| MATTHEW R. MAGUIRE, ET AL. | : | |
| | : | |
| Defendants. | : | **Oral Argument Requested** |

<u>**DEFENDANT DAVID MINNOTTE'S BRIEF IN SUPPORT OF HIS MOTION TO
DISMISS AND, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT**</u>

Defendant David Minnotte, through undersigned counsel, respectfully moves to dismiss
all claims against him for failure to state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6), or alternatively, for a more definite statement pursuant to Federal Rule of Civil
Procedure 12(e).[1]

**I.      Introduction**

Plaintiffs, all investors in the now-defunct airline OneJet, Inc., sued David Minnotte (also
an investor in OneJet) for allegedly helping the purveyors of OneJet securities commit securities
violations. Specifically, Plaintiffs contend that Mr. Minnotte is liable to them pursuant to Section

---

[1]      Federal Rule of Bankruptcy Procedure 7012(b) states that both Federal Rule of Civil
Procedure 12(b)(6) and 12(e) apply in adversary proceedings.

1-503(a) of the Pennsylvania Securities Act and Restatement (Second) of Torts § 876 for aiding and abetting in securities violations. But Plaintiffs do not—and cannot—satisfy the most basic elements of the causes of action they purport to bring against Mr. Minnotte. Instead the Complaint simply describes a fellow-investor who happens also to be the Chairman of the Board of the Allegheny County Airport Authority. This is not cause for civil liability under any theory. Moreover, there is no explanation of how any single plaintiffs' alleged injury is attributable to Mr. Minnotte's supposedly tortuous conduct, and thus, how each (or any) plaintiff has standing to pursue his or her claims. Because the facts of this case do not support liability, Mr. Minnotte moves to dismiss all claims against him.

## II.     Facts

On December 5, 2018, Plaintiffs filed their Complaint in Civil Action (the "Complaint") in Allegheny County Court of Common Pleas. *See generally,* Complaint, attached hereto as Exhibit A. Mr. Minnotte removed the Complaint to the Western District of Pennsylvania on January 8, 2019, and the matter was transferred to the Bankruptcy Court for the Western District of Pennsylvania on June 19, 2019. *See* ECF No. 1, Notice of Removal; ECF No. 48, Opinion & Order, 12.

In their Complaint, Plaintiffs allege that they were misled into purchasing stock from OneJet, Inc., a now bankrupt airline. *See generally,* Ex. A, Complaint. Plaintiff identified three categories of defendants: (1) Matthew Maguire and Patrick Maguire (collectively, the "Maguire Defendants"); (2) Boustead Securities, LLC, a registered broker-dealer, and its sales agents Melvin Perchesky and Robert Campbell (collectively, the "Boustead Defendants"); and (3) David Minnotte and Robert Lewis (collectively, the "Investor Defendants"), both of whom were

investors in OneJet and members of the Allegheny County Airport Authority Board of Directors. *See* Ex. A, Complaint, ¶¶ 7, 8.

According to the Complaint, the Maguire Defendants "formed" OneJet in 2007 and began soliciting investments in OneJet in October of 2014. Ex. A, Complaint, ¶¶ 11, 33. In the course of soliciting investments, the Maguire Defendants allegedly made numerous misrepresentations regarding, among other things, the makeup of OneJet's board and management team and its financial prospects. *See* Ex. A, Complaint, ¶ 38. The Maguire Defendants also allegedly failed to properly register securities with the SEC. Ex. A., Complaint, ¶¶ 58-60. As a result, Plaintiffs contend that the Maguire Defendants are liable to them for breach of fiduciary duty, violations of Sections 201, 401, 501, and 503 of the Pennsylvania Securities Act, and common law aiding and abetting liability under Section 876 of the Restatement (2d) of Torts.

The Boustead Defendants allegedly were retained by the Maguire Defendants in March 2017 to solicit investments for OneJet. Ex. A, Complaint, ¶¶ 40-43. According to the Complaint, the Boustead Defendants conducted meetings at the Duquesne Club and "similar venues" in Pittsburgh in efforts to sell OneJet securities. Ex. A, Complaint, ¶ 45. Plaintiffs allege that the Boustead Defendants made substantially the same types of misrepresentations as the Maguire Defendants in order to solicit investors for OneJet. *See* Ex. A, Complaint, ¶ 46. The Complaint also alleges that the Boustead Defendants sent emails and "executive summaries" to potential investors that contained false statements. Ex. A, Complaint, ¶ 47. As a result, Plaintiffs contend that the Boustead Defendants are liable to them for violation of Sections 201, 401, 501, and 503 of the Pennsylvania Securities Act and common law negligent misrepresentation under Section 552 of the Restatement (2d) of Torts.

Finally, Plaintiffs allege claims against the Investor Defendants, including movant, Mr.

Minnotte. Specifically, Plaintiffs make the following allegations against Mr. Minnotte:

- "Minnotte is the Chairman of the Allegheny County Airport Authority. In addition, Minnotte is a shareholder of OneJet." Ex. A, Complaint, ¶ 8.

- "The [Airport Operations Agreement and Terminal Lease] was executed by Matthew Maguire, as the CEO of OneJet, and David Minnotte, as Chairman of the Airport Authority." *Id.* at ¶ 25.

- "The Plaintiffs believe and therefore aver that Defendants, David Minnotte and Robert Lewis, used their positions on the Board of the Airport Authority to influence the Authority's use of grant money for the benefit of OneJet." *Id.* at ¶ 28.

- "Minnotte and Lewis touted the fact that the Airport Authority had "approved" OneJet's operations, as a marketing tool to solicit investments in OneJet." ¶ 29.

- "The Maguires asserted that David Minnotte and Robert Lewis, who were both on the Board of the Allegheny County Airport Authority, had invested in OneJet and that they could secure favorable treatment of OneJet. With [sic] the Airport Authority." *Id.* at ¶ 38F.

- Boustead Securities sent e-mail summaries to potential investors which: "Asserted that the participation of well-known local investors, such as 'Jim Rohr, Bobby Lewis and Dave Minnotte,' virtually guaranteed success in the Pittsburgh market." *Id.* at ¶ 47C.

- Minnotte is "liable to the Plaintiffs under Section 503, since their involvement on the Airport Authority Board served as a significant material endorsement of OneJet in the eyes of the Plaintiffs," and that the Investor Defendants "actively solicited investors for OneJet securities." *Id.* at ¶ 129.

The above constitutes ***every single allegation*** made in the Complaint against Mr.

Minnotte. Substantially similar claims were made against the other Investor Defendant, Mr.

PHDATA 6976483_2

Lewis.[2] *See id.* at ¶¶ 7, 28, 29, 31, 38F, 46E. These allegations boil down to the following theories: (1) Mr. Minnotte's status as an Airport Authority board member served as an inducement to purchase securities, and other defendants (not Mr. Minnotte) used that status to solicit investments; (2) Mr. Minnotte, in his capacity as Chairman of the Airport Authority Board, signed the Airport Authority's lease with OneJet, and could "influence the Authority's use of grant money for the benefit of OneJet"; and (3) Mr. Minnotte solicited unidentified investors for OneJet securities. Significantly, ***none*** of the various plaintiffs allege that Mr. Minnotte solicited them to invest in OneJet, nor that they invested in OneJet specifically because Mr. Minnotte also was an investor.

Based on those bare allegations, Plaintiffs conclude that Mr. Minnotte is liable to them under Sections 1-503(a) of the Pennsylvania Securities Act ("Section 503") and Section 876 of the Restatement 2d of Torts ("Section 876").

## III.    Law & Argument

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the material facts pleaded in the complaint and any reasonable inferences that may be drawn therefrom. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court is not required to accept bald assertions, unwarranted inferences, or legal conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted) (emphasis added). The Court should therefore conduct a two-part analysis:

---

[2]    In addition to the allegations made against Mr. Minnotte, Plaintiffs also allege that Mr. Lewis "guaranteed the repayment of [an] Allegheny County Regional Development Authority on behalf of OneJet." Ex. A, Complaint, ¶ 31.

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). The "plausibility" determination is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). If the allegations do not "nudge [plaintiff's] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). As will be explained in the following pages, the facts in the Complaint do not amount to a plausible claim for relief against Mr. Minnotte. Mr. Minnotte's motion to dismiss must, therefore, be granted.

A.    ***Plaintiffs cannot state a claim for relief under Section 1-503 of the Pennsylvania Securities Act.***

Plaintiff's first cause of action against Mr. Minnotte is brought under Section 1-503(a) of the Pennsylvania Securities Act, 70 P.S. § 1-503(a) ("Section 503"). Section 503 states:

> "Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."

PHDATA 6976483_2

Section 503 can be broken down into three basic elements: (1) some person must be liable under Section 501 or 502 of the Pennsylvania Securities Act;[3] (2) the Section 503 defendant must be an affiliate, partner, principle executive officer, director or employee of that person liable under Section 501 of 502 of the Pennsylvania Securities Act, or a broker/dealer or agent for the sale of securities; and (3) the defendant must "materially aid" the person liable under sections 501 or 502 in the act or transaction constituting the violation.[4] *See* 70 P.S. § 1-503(a). Plaintiffs do not and cannot allege these basic elements of Section 503 against Mr. Minnotte.

   1.    Mr. Minnotte is not the Boustead or Maguire Defendants' affiliate, partner, principal executive officer, director or employee, nor is he a broker-dealer or agent for the sale of securities.

Sections 501 and 502 of the Pennsylvania Securities Act create private causes of action for violations of the Pennsylvania Securities Act. *See* 70 P.S. §§ 1-501, 1-502. Section 503 claims are derivative of Section 501 and 502 claims, and as noted above, on the face of the statute, require that a defendant be an affiliate, partner, principal executive officer, director, or employee of the defendants allegedly liable under Sections 501 or 502. 70 P.S. § 1-503(a). Yet,

---

[3]    Mr. Minnotte takes no position today as to whether or not the Maguire or Boustead Defendants are liable to Plaintiffs for violations of the Pennsylvania Securities Act. If they are not, however, Mr. Minnotte cannot be held liable under Section 503. *See Gilliland v. Hegert*, No. 2:05-cv-01059, 2007 WL 4105223, at * 19-20 at *6 (W.D. Pa. Nov. 15, 2007) (noting that the Section 503 defendant could only be liable "to the same extent" as the primary Pennsylvania Securities Act defendant); *Daniel Boone Are Sch. Dist. v. Lehman Bros. Inc.*, 187 F. Supp. 2d 400, 410 (W.D. Pa. 2002) ("§ 503 carries with it the precondition that there be a person liable under section 501 or 502.").

[4]    Section 503 also includes a defense to liability where the defendant did not, and could not in the exercise of reasonable care, have known of the existence of the facts by reason of which the liability is alleged to exist. *See* 70 P.S. § 1-503. This defense certainly applies to Mr. Minnotte on the face of the Complaint as there is no allegation that he knew anything about the Maguire Defendants' or Boustead Defendants' alleged violations (and in fact he did not).

PHDATA 6976483_2

nowhere in the Complaint do Plaintiffs identify *any relationship whatsoever* between Mr.

Minnotte and the Boustead Defendants or Maguire Defendants, not to mention one of the

relationships enumerated in Section 503.

Mr. Minnotte has no relationship with the allegedly liable parties.  He is not an affiliate,

partner, principal, executive officer, director or employee of the MaGuire Defendants or

Boustead Defendants.  He is not a broker dealer or agent for the sale of securities and does not

occupy a similar status or perform similar functions to the Maguire Defendants or Boustead

Defendants.  The Complaint does not and cannot allege any such relationship.  Further, other

than previously being a minority investor himself (and as a result, a creditor), Mr. Minnotte has

no relationship with OneJet.  Simply put, Mr. Minnotte is not included in any of the categories of

persons who could be held liable under Section 503.  For this reason alone, Plaintiffs' claim fails.

2.      <u>Mr. Minnotte did not "materially aid" in the act or transaction constituting
the violation.</u>

Section 503 applies only where the defendant "materially aids in the act or transaction

constituting the violation [of Section 501 or 502]." 70 P.S. § 1-503. *See also Fox Intern.*

*Relations v. Fiserv Securities, Inc.*, 490 F. Supp. 2d 590, 605 (E.D. Pa. 2007) ("Section 1-503

…creates a cause of action against a defendant who 'materially aids' in a securities law

violation…").

In this case, Plaintiffs allege that the Maguire and Boustead Defendants violated Sections

1-201 and 1-401 of the Pennsylvania Securities Act. Section 1-201 states in relevant part: "It is

unlawful for any person to offer or sell any security in this State unless the security is registered

under this Act…" 70 P.S. § 1-201. Section 1-401 states,

> It is unlawful for any person, in connection with the sale or
> purchase of any security in this State, directly or indirectly: (a) To

PHDATA 6976483_2

> employ any device, scheme or artifice to defraud; (2) To make any
> untrue statement of a material fact or to omit or state a material
> fact necessary in order to make the statements made, in light of the
> circumstances under which they are made, not misleading; or (c)
> To engage in any act, practice or course of business which operates
> or would operate as a fraud or deceit upon any person.

70 P.S. § 1-401. Therefore, Section 503 applies to Mr. Minnotte only if he "materially aided"

the Maguire Defendants or the Boustead Defendants in either failing to register securities or

misrepresenting facts to, or committing fraud upon, investors (of which he was one). The

Complaint contains no such allegations.

Instead, the Complaint merely alleges (1) Mr. Minnotte's status served as an inducement

to purchase securities, and other defendants (not Mr. Minnotte) used that status to solicit

investments; (2) Mr. Minnotte, in his capacity as Chairman of the Airport Authority Board,

signed the Airport Authority's lease with OneJet, and could "influence the Authority's use of

grant money for the benefit of OneJet"; and (3) Mr. Minnotte solicited unidentified investors for

OneJet securities. None of these allegations relate to the violations purportedly committed by the

Maguire and Boustead Defendants. Nor could they possibly constitute "material aid" of the acts

or transactions that allegedly violated Pennsylvania law.

The first allegation does not constitute any act or omission by Mr. Minnotte at all; rather,

it contends that Mr. Minnotte's status as a member of the Authority Board "served as a

significant material endorsement." Surely, one's status as a board member of an organization

doing business with OneJet cannot render one liable as an aider and abettor. Plaintiffs can cite to

no authority to support such an argument, and it is nonsensical.

Furthermore, simply being an investor in OneJet cannot render one liable as an aider and

abettor. Many investors may be more likely to invest in a company if Warren Buffett also

invested in that company; that does not mean that Mr. Buffett aided and abetted any securities violation. As a matter of law, these allegations are insufficient to impose liability under 503.

The second allegation (that Mr. Minnotte signed a lease in his official capacity, and (impliedly) had the ability to steer funds to OneJet) has nothing to do with the alleged violations, or with OneJet securities at all. Rather, this allegation merely relates to OneJet's authority to operate at the Pittsburgh International Airport.

The final allegation, that Minnotte "actively solicited OneJet investors," is merely a bald assertion that cannot on its own support a claim against Minnotte. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). There is no allegation that Mr. Minnotte solicited any specific transaction, not to mention in a manner that constitutes a securities violation. There are more than fifty plaintiffs, yet not a single one has come forward to allege that Mr. Minnotte solicited his or her investment. Only those Plaintiffs who can allege (and prove) that Mr. Minnotte aided in their investment could even arguably state a claim. Because none of the Plaintiffs have made such an allegation, dismissal is appropriate. To the extent one or two plaintiffs could come forward to make that allegation specifically, dismissal nevertheless is appropriate as to all the other plaintiffs. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (to have standing to sue, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant").

In summary, the Complaint contains no allegations against Mr. Minnotte that could constitute "material aid" to a transaction that violated Pennsylvania securities law.  For this reason as well, the claim should be dismissed.

**B.**       ***Plaintiffs cannot state a claim for relief under Restatement 2d of Torts § 876.***

Plaintiffs' second claim against Mr. Minnotte is common law aiding and abetting under

Restatement (Second) of Torts § 876 ("Section 876"). Section 876 provides that one is subject to

liability for harm to a third person arising from the tortious conduct of another if he does one of

three things:

> a) does a tortious act in concert with the other or pursuant to a
> common design with him; b) knows that the other's conduct
> constitutes a breach of duty and gives substantial assistance or
> encouragement to the other so to conduct himself; or c) gives
> substantial assistance to the other in accomplishing a tortuous
> result and his own conduct, separately considered, constitutes a
> breach of duty to a third person.

*Gililand v. Hergert*, No. 2:05-cv-01059, 2007 WL 4105223, at * 19-20 (W.D. Pa. Nov. 15, 2007)

(quoting *Koken v. Steinberg*, 825 A.2d 723, 731 (Pa. Commw. 2003)). *See also* Restatement (2d)

of Torts § 876.

Plaintiffs provide absolutely no explanation as to why or how Mr. Minnotte is supposedly

liable under Section 876. That lack of explanation alone demonstrates that Plaintiffs' claim fails

to meet the pleading standards set by the federal rules. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) ("Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in ***order to 'give the defendant fair***

***notice of what the...claim is and the grounds upon which it rests.'***").

Regardless of what Plaintiffs' theory might be, it is plain that the facts alleged do not

support a claim under Section 876.

Clause (a) of Section 876 allows for liability against one who "does a tortious act in

concert with the other or pursuant to a common design with him." The comments to Section 876

explain that: "Parties are acting in concert when they act ***in accordance with an agreement*** to

cooperate in a particular line of conduct or to accomplish a particular result." Restatement (2d) of

Torts § 876, cmt. (a) (emphasis added). The Complaint does not allege that there was any agreement between Mr. Minnotte and any other party to commit a tort (nor did such an agreement actually exist). Moreover, the Complaint does not allege that Mr. Minnotte himself committed a tort at all, let alone in concert with someone else. Plaintiffs' only claim against Mr. Minnotte is aiding and abetting violations committed by others. Based on these facts, there can be no liability under clause (a).

Clause (b) allows for liability where a defendant "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." The Complaint does not allege that Mr. Minnotte knew any other party was breaching a duty. Indeed, given that Mr. Minnotte himself invested in OneJet, such an allegation is illogical.  For that reason alone, there can be no liability under clause (b).

Moreover, the facts do not, and cannot, support a finding of "substantial assistance" in someone else's breach of duty. The District Court for the Western District of Pennsylvania has identified six factors that courts should consider when determining whether a defendant provided "substantial assistance" in the context of Section 876: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) his presence or absence at the time of the tort; (4) his relation to the other; (5) his state of mind; and (6) the duration of the assistance provided. *Gilliland*, 2007 WL 4105223, at * 8 (citing *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 127 (3d Cir. 1999). *See also* Restatement (2d) of Torts § 876, cmt. (d). As stated above, the only facts alleged against Mr. Minnotte involve his status as a board member for the Airport Authority and the bald assertion that he solicited unidentified individuals (not any Plaintiff) for investments. The Complaint does not allege any act by Mr. Minnotte that could be deemed

assistance at all, let alone substantial assistance. For this reason as well, there can be no liability under clause (b).

Clause (c) of Section 876 allows for liability where a defendant "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to a third person." The comments to Section 876 explain:

> When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result, irrespective of his knowledge that his act or the act of the other is tortious.

Restatement (2d) of Torts § 876, cmt. (e). Here, there is no allegation that Mr. Minnotte breached any duty that he owed to another person. Mr. Minnotte was not in any position of trust with any of the Plaintiffs—he was a fellow investor. Therefore, there can be no duty at all, and no facts are pled that support any finding of a breach of any such duty. Additionally, for the reasons set forth above, there are no facts supporting "substantial assistance" or an agreement between Mr. Minnotte and any other defendant. For these reasons, there can be no liability under clause (c).

Plaintiffs have failed to plead the most basic elements of aiding and abetting liability under Restatement 2d of Torts § 876. That claim, therefore, should be dismissed.

**C.    *Alternatively, to the extent any claims survive, Minnotte moves for a more definite statement under Federal Rule of Civil Procedure 12(e).***

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading…which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must "point out the defects complained of and the details desired." *Id.* Here, not one of the fifty-plus plaintiffs have explained how Mr. Minnotte's alleged conduct caused his/her specific damages, making it impossible for him to assess whether or not each of the individual plaintiffs have standing to sue. Mr. Minnotte

PHDATA 6976483_2

therefore demands that each plaintiff identify the specific facts that purportedly give rise to his or her unique claim for damages.

It is hornbook law that, in order to state a justiciable claim for damages, a plaintiff must demonstrate standing to sue by, among other things, identifying an injury that is "concrete and particularized" and "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (describing standing as an "irreducible constitutional minimum"). *See also Meyer v. CUNA Mut. Group*, 2006 WL 197122, at *13 (W.D. Pa. Jan. 25, 2006) ("individual standing is a prerequisite for the maintenance of all actions…"). But based on the generalized allegations in the Complaint, Mr. Minnotte cannot tell which, if any, of the Plaintiffs were actually injured by his purported conduct.

Notably, "standing may not be 'dispensed in gross.'" *Adams v. Governor of Del.*, 922 F.3d 166, 174 (3d Cir. 2019) (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. --, 137 S. Ct. 1645, 1650 (2017)). Meaning that "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. --, 137 S. Ct. 1645, 1651 (2017). And the Supreme Court has held that where (as here) each plaintiff seeks his own individual monetary damages, standing must be established for each plaintiff. *Id.* at 1652 ("If [intervenor] wants only a money judgment of its own running directly against the [defendant], then it seeks damages different from those sought by [plaintiff] and must establish its own Article III standing in order to intervene."). Although the Complaint is ambiguous, the damages asserted appear to be the value of each plaintiff's investment.

Plaintiffs attempt to avoid their basic pleading and standing requirements by making one combined claim on behalf of all Plaintiffs and claiming only generally that Mr. Minnotte aided and abetted unidentified violations of Pennsylvania securities law. To the extent that any

individual Plaintiff could have a claim against Mr. Minnotte, however, he/she must allege a causal connection between Mr. Minnotte's conduct and his/her particular injury. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (holding that the Federal Rules of Civil Procedure require a Complaint to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'"). If Plaintiff Woody Partners, for example, believes it can allege that Mr. Minnotte aided and abetted the actions of the Maguire Defendants and Boustead Defendants in soliciting *its* investment, it must so allege in the Complaint. Plaintiff Woody Partners has no claim against Mr. Minnotte for helping to solicit investments by others.

To the extent the Court believes that any claims against Mr. Minnotte should proceed, in order to demonstrate standing and an ability to meet the basic elements of their claims, Plaintiffs should be required to identify the particular violations Mr. Minnotte is alleged to have aided and abetted and the particular plaintiffs who claim to have suffered an injury as a result of any conduct of Mr. Minnotte. The claims of any plaintiff who cannot make such allegations should be dismissed. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 487 (3d Cir. 1998) (affirming dismissal of plaintiff's securities claims for lack of standing because relationship between the alleged injury and to alleged securities fraud was too tenuous). Each plaintiff making such a claim should set forth the basic elements of his/her claim in a separate count within the Complaint.

## IV.    Conclusion

For the reasons described above, Mr. Minnotte's motion to dismiss pursuant to Rule 12(b)(6) should be granted and all of Plaintiffs' claims against him should be dismissed.

PHDATA 6976483_2

Alternatively, Plaintiffs should be required to provide a more definite statement pursuant to Rule 12(e) by setting forth separate counts for any plaintiff who alleges that he or she was injured as a result of Mr. Minnotte's conduct and by identifying Mr. Minnotte's specific conduct that allegedly caused that injury.

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

Dated:  August 14, 2019

*/s/ Stephanie A. Short*
Keith E. Whitson (PA ID No. 69656)
kwhitson@schnader.com
Stephanie A. Short (PA ID No. 324023)
sshort@schnader.com
120 Fifth Avenue, Suite 2700
Pittsburgh, Pennsylvania 15222
Telephone:  (412) 577-5200
Facsimile:  (412) 765-5190

*Attorneys for David Minnotte*

PHDATA 6976483_2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2019, a copy of the foregoing *Motion to Dismiss and, Alternatively, for a More Definite Statement* was electronically filed and served via this Court's CM/ECF system as follows:

James R. Cooney
jcooney@lampllaw.com
Robert O. Lampl
rol@lampllaw.com
Ryan J. Cooney
rcooney@lampllaw.com
John P. Lacher
jlacher@lampllaw.com
David L. Fuchs
dfuchs@lampllaw.com
Sy O. Lampl
slampl@lampllaw.com
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222
*(Counsel for Plaintiffs)*

Andrew R. Shedlock
Andrew.shedlock@kutakrock.com
Christopher Parrington
Christopher.Parrington@kutakrock.com
Kutak Rock, LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103

*and*

Daniel Carmeli
Daniel.Carmeli@kutakrock.com
1801 California St., Suite 3000
Denver, CO 80202
*(Counsel for Boustead Securities, LLC and Robert Campbell)*

Patrick K. Cavanaugh
pcavanauqh@dsclaw.com
William S. Stickman, IV
wstickman@dsclaw.com
Zachary N. Gordon
zgordon@dcslaw.com
Del Sole, Cavanaugh & Stroyd
Three PPG Place
Suite 600
Pittsburgh, PA 15222
*(Counsel for Robert Lewis)*

Brian W. Bisignani
BBisignani@postschell.com
John N. Joseph
jjoseph@postschell.com
Post & Schell, P.C.
1869 Charter Lane, Suite 102
Lancaster, PA 17601
*(Counsel for Matthew R. Maguire and Patrick Maguire)*

Emma R. Donahey
edonahey@mcquirewoods.com
Gerald J. Stubenhofer, Jr.
gstubenhofer@mcquirewoods.com
McGuire Woods
Tower Two-Sixty
260 Forbes Ave., Suite 1800
Pittsburgh PA 15222
*(Counsel for Melvin Pirchesky)*

*/s/ Stephanie A. Short*