## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                    Bankruptcy No. 18-24070-GLT

ONEJET, INC.,                             Adversary No. 19-02134-GLT

       Debtor.

_____

WOODY PARTNERS; ALOE
BROTHERS, LLC; DAVID ALOE;
KEVIN ALTOMARI; ROBERT          Related to Document Numbers 1 and
AURAY, JR. and MARION AURAY;    201
CLEMONT R. AUSTIN; B5S, LLC;
WILLIAM BENTER; RICHARD
BERGLUND; BLAIR OAK
INVESTMENTS, LP; RONALD
CINDRICH; CLARIOT NEW ALBANY,
LLC; EUGENE K. CONNORS and
TINA K. HOUMIS; ANDREW J.
CONSTANTAKIS; NICHOLAS P.
CONSTANTAKIS; VERONICA
CONSTANTAKIS; COWEN OJ
INVESTMENT, LLC; DELMETRO,
INC.; ROBERT DENOVE; CORINA
DIEHL; STEPHEN EINHORN;
FLIGHTHAWK, LLC; JOHN A.
GEORGE; CAROLYN D. GEORGE;
GREG HARDING-BROWN and
CAROL HARDING-BROWN AS
TRUSTEES OF THE HARDING-
BROWN FAMILY TRUST; TIMOTHY
HOEKSEMA; WILLIAM E. HUNT;
JEFFREY JOERRES; JAMES R.
JOHNSON; MATTHEW JOHNSON;
SCOTT KERN; KEITH KRONK;
DENNIS J. KUESTER; MICHAEL J.
LEWIS; JAMES LIKEN; RANDY
LUETH; DAVID MATTER; KENNETH
C. McCRORY; MITCHELL ELIAS
NAHRA, M.D.; WILLIAM
NASGOVITZ; NORTH STAR COAL
COMPANY NON-BARGAINING
EMPLOYEES PROFIT SHARING

PLAN; ORTTECH, LTD.; ROBERT A.
PIETANDREA; JAMES J. RESTIVO;
GAIL RESTIVO; SUSAN ROSEN;
JAMES V. SACCO; WILLIAM
SARRIS; 7TH STREET PROPERTIES,
LP; SHEERTEX FABRICS, LLC;
JACK W. SHILLING; STEVEN G.
SMITH; DAVID TESONE GROUP,
INC.; DEREK J. THOMAS; TRIAD
INVESTMENTS, INC.; ROBERT
JOSEPH VADAS AS TRUSTEE OF
THE CHRISTIAN LUKE RONALD
VADAS 2016 TRUST; BONNY SUE
YOUNG-VADAS AS TRUSTEE OF
THE SIMON ISAAC YOUNG VADAS
2016 TRUST; VIKING REINSURANCE
COMPANY; JERRY R. WHITAKER;
MICHAEL H. WHITE; STEPHEN J.
ZENCZAK AS CO-TRUSTEE OF THE
GREGORY S. ZENCZAK FAMILY
DYNASTY TRUST; and GREGORY S.
ZENCZAK AS CO-TRUSTEE OF THE
STEPHEN J. ZENCZAK FAMILY
DYNASTY TRUST

       **Plaintiffs,**

  **v.**

MATTHEW R. MAGUIRE, PATRICK
MAGUIRE, BOUSTEAD SECURITIES,
LLC, MELVIN PIRCHESKY, ROBERT
CAMPBELL, ROBERT LEWIS and
DAVID MINNOTTE,

       **Defendants.**

### AMENDED COMPLAINT

**AND NOW**, the Plaintiffs, by their attorneys, Robert O Lampl, James R. Cooney, David L. Fuchs, Ryan J. Cooney and Sy O. Lampl, file the within Amended Complaint pursuant to the Order of Court entered September 27, 2019:

**Background:**

1.      Plaintiffs originally filed the within action in the Court of Common Pleas of Allegheny County on December 6, 2018, at GD-18-015969.

2.      On January 8, 2019, David Minnotte filed a Notice of Removal of the case to the United States District Court for the Western District of Pennsylvania based on the assertion that the within case "is related to" OneJet's Chapter 7 bankruptcy case which is pending at No. 18-24070-GLT. The other Defendants joined in Minnotte's Notice of Removal.

3.      Plaintiffs filed a Motion for Remand and/or Abstention with the district court. By Opinion and Order entered June 16, 2019, the Honorable Marilyn J. Horan denied the Motion for Remand and/or Abstention, and referred the case to this Honorable Court for disposition.

4.      All Defendants filed Motions to Dismiss the Complaint pursuant to *Fed. R. Civ. P.* 12 (b). Argument upon the Motions was held before this Honorable Court on September 26, 2019.

5.      By Order entered September 27, 2019, this Honorable Court ordered Plaintiffs to file an Amended Complaint on or before October 28, 2019.

6.      The Plaintiffs now file the within Amended Complaint pursuant to the Order.

**The Parties:**

7.      The Plaintiffs are shareholders and/or noteholders of OneJet, Inc. (OneJet), a California corporation. The Plaintiffs purchased stock and/or notes of OneJet, as is more fully set forth below.

1)    Woody Partners is a general partnership with offices at 132 Hartwood Drive, Pittsburgh, PA 15208. Woody Partners purchased shares of Series B Preferred Stock from Melvin Pirchesky on November 16, 2017 for $200,000.00.

2)    Aloe Brothers, LLC, is a Pennsylvania Limited Liability Company with offices at 5540 Dunmoyle Avenue, Pittsburgh, PA 15217. Aloe Brothers, LLC purchased shares of Series B Preferred Stock from Melvin Pirchesky on June 6, 2017 for $400,000.00.

3)    David Aloe is an adult individual who resides at 504 Beaver Road, Edgeworth, PA 15143. David Aloe purchased shares of Series B Preferred Stock from Matthew Maguire on December 1, 2017 for $100,000.00.

4)    Kevin Altomari is an adult individual who resides at 1071 Parkview Boulevard, Pittsburgh, PA 15217. Kevin Altomari purchased shares of Series B Preferred Stock from Melvin Pirchesky on July 28, 2017 for $62,410.00, on September 9, 2017 for $50,000.00, and on December 12, 2017 for $50,000.00, for a total investment of $162,410.00.

5)    Robert Auray, Jr. and Marion Auray are adult individuals residing at 610 Berkshire Drive, Pittsburgh, PA 15215. Robert Auray, Jr. and Marion Auray purchased shares of Series B Preferred Stock from Melvin Pirchesky on September 27, 2017 for $125,000.00 and also purchased a OneJet Term Note from Melvin Pirchesky on January 4, 2018 for $75,000.00, for a total investment of $200,000.00.

6)    Clemont R. Austin is an adult individual who resides at 3700 Drexel

Drive, Erie, PA 16506. Clemont R. Austin purchased a OneJet Term Note from Matthew Maguire on February 13, 2018 for $150,000.00.

7)      B5S, LLC is a limited liability company with a mailing address of 2085 Saint Andrews Drive, Presto, PA 15142. B5S, LLC purchased shares of Series B Preferred Stock from Matthew Maguire on September 29, 2016 for $250,000.00.

8)      William Benter is an adult individual with offices at 223 Fourth Avenue, Suite 1800, Pittsburgh, PA 15222. William Benter purchased a OneJet Term Note from Matthew Maguire on December 12, 2017 for $150,000.00.

9)      Richard Berglund is an adult individual who resides at 444 Dorseyville Road, Pittsburgh, PA 15215.  Richard Berglund purchased a OneJet Term Note from Matthew Maguire on April 23, 2018 for $150,000.00.

10)      Blair Oak Investments, LP is a limited partnership with offices at 1121 Boyce Road, Pittsburgh, PA 15241.  Blair Oak Investments, LP purchased shares of Series B Preferred Stock from Melvin Pirchesky on March 10, 2017 for $500,000.00 and a OneJet Term Note from Matthew Maguire on December 19, 2017 for $150,000.00, for a total investment of $650,000.00.

11)      Ronald Cindrich is an adult individual who resides at 8473 Bay Colony Drive, Unit 901, Naples, FL 34108. Ronald Cindrich purchased a OneJet Term Note from Matthew Maguire on April 12, 2018 for $150,000.00.

12)      Clariot New Albany, LLC is a Limited Liability Company with offices in New Albany, Ohio and a mailing address of 191 W. Nationwide Blvd, Suite 600, Columbus, OH 43215, attention, Andrew Bohutinsky.  Clariot New Albany,

LLC purchased a OneJet Term Note from Matthew Maguire on February 1, 2018 for $300,000.00.

13)     Eugene K. Connors and Tina K. Houmis are adult individuals who reside at 907 Cambridge Drive, Presto, PA 15142. Eugene K. Connors and Tina K. Houmis purchased shares of Series B Preferred Stock from Melvin Pirchesky on July 26, 2017 for $62,500.00 and on December 12, 2017 for $50,000.00, for a total investment of $112,500.00.

14)     Andrew J. Constantakis is an adult individual who resides at 3994 Pere Marquette Drive, Allison Park, PA 15101.  Andrew Constantakis purchased shares of Series B Preferred Stock from Melvin Pirchesky on July 21, 2017 for $50,000.00.

15)     Nicholas P. Constantakis and Veronica Constantakis are adult individuals residing at 4660 Vitullo Drive, Allison Park, PA 15101. Nicholas P. Constantakis and Veronica Constantakis purchased shares of Series B Preferred Stock from Melvin Pirchesky on July 26, 2017 for $200,000.00, and a OneJet Term Note from Matthew Maguire on December 7, 2017 for $150,000.00, for a total investment of $350,000.00

16)     Cowen OJ Investment, LLC is a limited liability company with offices at 599 Lexington Avenue, New York, NY 10022. Cowen OJ Investment, LLC purchased shares of Series A-2 Preferred Stock from Matthew Maguire on February 25, 2015 for $1,375,000.00 and on June 22, 2015 for $625,000.00, for a total investment of $2,000,000.00.

17)     DelMetro, Inc. is a corporation with offices at 9650 Strickland Road,

Suite 103-155, Raleigh, NC 27615. DelMetro, Inc. purchased a OneJet Term Note from Matthew Maguire on October 3, 2017 for $100,000.00.

18)     Robert Denove is an adult individual residing at 740 Gramac Lane, Pittsburgh, PA 15235. Robert Denove purchased a OneJet Term Note from Matthew Maguire on April 18, 2018 for $75,000.00.

19)     Corina Diehl is an adult individual with offices at 258 Pittsburgh Road, Butler, PA 16001. Corina Diehl purchased a OneJet Term Note from Matthew Maguire on March 26, 2018 for $150,000.00.

20)     Stephen Einhorn is an adult individual who resides at 8205 North River Road, Milwaukee, WI 53217. Stephen Einhorn purchased shares of Series B Preferred Stock from Matthew Maguire on October 13, 2016 for $100,000.00 and a OneJet Term Note from Matthew Maguire on July 18, 2017 for $50,000.00, for a total investment of $150,000.00.

21)     Flighthawk, LLC is a Pennsylvania limited liability company with offices at 209 Fourth Avenue, Pittsburgh, PA 15222. Flighthawk, LLC purchased a OneJet Term Note from Melvin Pirchesky on April 4, 2018 for $150,000.00.

22)     John A. George and Carolyn D. George are adult individuals who reside at 100 Denniston Street, Unit #80, Pittsburgh, PA 15206.  John A. George and Carolyn D. George purchased shares of Series B Preferred Stock from Mel Pirchesky on December 12, 2017 for $225,000.00.

23)     The Harding-Brown Family Trust is a Trust administered by its Trustees, Greg Harding-Brown and Carol Harding-Brown, who are adult individuals residing at 2320 Ortega Ranch Road, Santa Barbara, CA 93108.  The

Harding-Brown Family Trust purchased shares of Series B Preferred Stock from Matthew Maguire on January 18, 2017 for $50,000.00.

24)     Timothy Hoeksema is an adult individual who resides at 27421 Hidden River Court, Bonita Springs, FL 34134. Timothy Hoeksema purchased shares of Series B Preferred Stock from Matthew Maguire on September 28, 2016 for $50,000.00.

25)     William E. Hunt is an adult individual who resides at 5300 Wilkins Avenue, Pittsburgh, PA 15217.  William E. Hunt purchased shares of Series B Preferred Stock from Matthew Maguire on October 16, 2017 for $250,000.00 and a OneJet Term Note from Melvin Pirchesky on March 12, 2018 for $150,000.00, for a total investment of $400,000.00.

26)     Jeffrey Joerres is an adult individual residing at 102 North Water Street, Unit 802, Milwaukee, WI 53201.  Jeffrey Joerres purchased shares of Series B Preferred Stock from Matthew Maguire in September of 2016 for $150,000.00.

27)     James R. Johnson and Matthew Johnson are adult individuals with offices at 285 Kappa Drive, Pittsburgh, PA 15238. James R. Johnson and Matthew Johnson purchased shares of Series B Preferred Stock (as tenants in common) from Melvin Pirchesky on March 30, 2017 for $500,000.00.

28)     James R. Johnson is an adult individual with offices at 285 Kappa Drive, Pittsburgh, PA 15238. James R. Johnson purchased a OneJet Term Note from Matthew Maguire on December 8, 2017 for $150,000.00.

29)     Scott Kern is an adult individual who resides at 5362 Wolf Road,

8

Erie, PA 16506. Scott Kern purchased a OneJet Term Note from Matthew Maguire on February 23, 2018 for $150,000.00.

30)     Keith Kronk is an adult individual with offices at One North Shore Center, 12 Federal Street, Pittsburgh, PA 15212. Keith Kronk purchased a OneJet Term Note from Matthew Maguire on April 5, 2018 for $150,000.00.

31)     Dennis J. Kuester is an adult individual who resides at 10 Seagate Drive, Naples, FL 34103. Dennis Kuester purchased shares of Series B Preferred Stock from Matthew Maguire on September 27, 2016 for $100,000.00.

32)     Michael J. Lewis is an adult individual residing at 5043 Alta Vista Drive, Clairton, PA 15025.  Michael J. Lewis purchased shares of Series B Preferred Stock from Melvin Pirchesky on October 16, 2017 for $250,000.00 and a OneJet Term Note from Matthew Maguire on June 15, 2018 for $350,000.00, for a total investment of $600,000.00.

33)     James Liken is an adult individual who resides at 5 Deer Spring Lane, Pittsburgh, PA 15238. James Liken purchased shares of Series B Preferred Stock from Melvin Pirchesky on March 24, 2017 for $500,000.00 and a OneJet Term Note from Melvin Pirchesky on December 4, 2017 for $150,000.00, for a total investment of $650,000.00.

34)     Randy Lueth is an adult individual who resides at 106 Nevin Drive, McMurray, PA 15317. Randy Lueth purchased a OneJet Term Note from Matthew Maguire on May 9, 2018 for $75,000.00.

35)     David Matter is an adult individual who resides at 201 McLean Place, Pittsburgh, PA 15217. David Matter purchased a OneJet Term Note from

Matthew Maguire on May 30, 2018 for $50,000.00.

36) Kenneth C. McCrory is an adult individual with offices at 20 Stanwix Street, Pittsburgh, PA 15222. Kenneth C. McCrory purchased shares of Series B Preferred Stock from Matthew Maguire on November 1, 2017 for $100,000.00.

37) Mitchell Elias Nahra, M.D. is an adult individual with offices at 9500 Mentor Avenue, Mentor, OH 44060. Mitchell Elias Nahra, M.D. purchased shares of Series B Preferred Stock from Matthew Maguire on December 29, 2017 for $50,000.00 and a OneJet Term Note from Matthew Maguire on December 15, 2017 for $100,000.00, for a total investment of $150,000.00.

38) William Nasgovitz is an adult individual who resides at 4470 N. Lake, Milwaukee, WI 53211. William Nasgovitz purchased shares of Series B Preferred Stock from Matthew Maguire on August 9, 2016 for $500,000.00.

39) North Star Coal Company Non-Bargaining Employees Profit Sharing Plan is a non-profit organization with offices at 3700 Water Street, Suite 100, Pittsburgh, PA 15203. North Star Coal Company Non-Bargaining Employees Profit Sharing Plan purchased shares of Series B Preferred Stock from Matthew Maguire on October 15, 2017 for $100,000.00.

40) Orttech Ltd. is a corporation with offices at 32425 Aurora Road, Solon, OH 44139. Orttech Ltd. purchased shares of Series B Preferred Stock from Melvin Pirchesky on June 12, 2017 for $100,000.00 and on December 12, 2017 for $100,000.00, for a total investment of $200,000.00.

41) Robert A. Pietandrea is an adult individual who resides at 2540 Longmount Drive, Wexford, PA 15090. Robert A. Pietandrea purchased shares

of Series B Preferred Stock from Melvin Pirchesky on December 22, 2017 for $75,000.00 and a OneJet Term Note from Melvin Pirchesky on December 29, 2017 for $150,000.00, for a total investment of $225,000.00.

42)     James J. Restivo and Gail Restivo are adult individuals residing at 124 Driftwood Drive, Canonsburg, PA 15317. James J. Restivo and Gail Restivo purchased shares of Series B Preferred Stock from Melvin Pirchesky on July 21, 2017 for $62,500.00 and on December 11, 2017 for $50,000.00, for a total investment of $112,500.00.

43)     Susan Rosen is an adult individual who resides at 414 Royal Court, Pittsburgh, PA 15234. Susan Rosen purchased a OneJet Term Note from Matthew Maguire on March 27, 2018 for $75,000.00.

44)     James V. Sacco is an adult individual residing at 2085 Saint Andrews Drive, Presto, PA 15142. James V. Sacco purchased a OneJet Term Note from Matthew Maguire on April 18, 2018 for $75,000.00.

45)     William Sarris is an adult individual who resides at 360 Christy Road, Eighty-Four, PA 15330. William Sarris purchased shares of Series B Preferred Stock from Matthew Maguire in November 2017 for $200,000.00.

46)     7th Street Properties, LP is a limited partnership with offices at 335 East 7th Avenue, Homestead, PA 15120.  7th Street Properties, LP purchased a OneJet Term Note from Matthew Maguire on February 7, 2018 for $150,000.00.

47)     Sheertex Fabrics, LLC is a limited liability company with offices at 6401 Penn Avenue, Pittsburgh, PA 15206. Sheertex Fabrics, LLC purchased a OneJet Term Note from Matthew Maguire on July 3, 2018 for $150,000.00.

11

48)     Jack W. Shilling is an adult individual who resides at 3108 Deerfield Court, Murrysville, PA 15668. Jack W. Shilling purchased a OneJet Term Note from Matthew Maguire on May 4, 2018 for $150,000.00.

49)     Steven G. Smith is an adult individual who resides at 505 Washington Avenue, Pittsburgh, PA 15106. Steven G. Smith purchased a OneJet Term Note from Matthew Maguire on May 11, 2018 for $150,000.00.

50)     David Tesone Group, Inc. is a corporation with offices at 1251 Russellton Road, Cheswick, PA 15024. David Tesone Group, Inc. purchased a OneJet Term Note from Matthew Maguire on May 29, 2018 for $150,000.00.

51)     Derek J. Thomas is an adult individual residing at 137 Darlington Lane, Sewickley, PA 15143. Derek J. Thomas purchased a OneJet Term Note from Matthew Maguire on February 7, 2018 for $150,000.00.

52)     Triad Investments, Inc. is a corporation with offices at 32425 Aurora Road, Solon, OH 44139. Triad Investments, Inc. purchased shares of Series B Preferred Stock from Melvin Pirchesky on June 12, 2017 for $300,000.00, and on December 12, 2017 for $50,000.00, for a total investment of $350,000.00.

53)     The Christian Luke Ronald Vadas 2016 Trust is a Trust administered by Robert Joseph Vadas, Trustee who resides at 45125 Fairmount Boulevard, Hunting Valley, OH 44022. The Trust purchased shares of Series B Preferred Stock from Matthew Maguire on December 29, 2017 for $50,000.00, and a OneJet Term Note from Matthew Maguire on December 26, 2017 for $25,000.00, for a total investment of $75,000.00.

54)     The Simon Isaac Young Vadas 2016 Trust is a Trust administered

12

by Bonny Sue Young-Vadas, Trustee who resides at 45125 Fairmount Boulevard, Hunting Valley, OH 44022. The Trust purchased shares of Series B Preferred Stock from Matthew Maguire on December 29, 2017 for $50,000.00, and a OneJet Term Note from Matthew Maguire on December 26, 2017 for $25,000.00, for a total investment of $75,000.00.

55)   Viking Reinsurance Company is located at 109 Dark Hollow Road, Oakmont, PA 15139. Viking Reinsurance Company purchased shares of Series B Preferred Stock from Matthew Maguire on March 29, 2017 for $100,000.00, and a OneJet Term Note from Matthew Maguire on November 20, 2017 for $150,000.00, for a total investment of $250,000.00.

56)   Jerry R. Whitaker is an adult individual who resides at 24 Paw Paw Way, Sunset, SC 29685. Jerry R. Whitaker purchased shares of Series B Preferred Stock from Matthew Maguire on June 12, 2017 for $100,000.00.

57)   Michael H. White is an adult individual with offices at P.O. Box 245020, Milwaukee, WI 53224. Michael H. White purchased shares of Series B Preferred Stock from Matthew Maguire on September 23, 2016 for $250,000.00.

58)   The Gregory S. Zenczak Family Dynasty Trust is a Trust administered by Stephen J. Zenczak, Co-Trustee, who resides at 1185 Fox Hill Drive, Gates Mills, OH 44040. The Trust purchased shares of Series B Preferred Stock from Melvin Pirchesky on June 9, 2017 for $50,000.00.

59)   The Stephen J. Zenczak Family Dynasty Trust is a Trust administered by Gregory S. Zenczak, the Co-Trustee, who resides at 1185 Fox Hill Drive, Gates Mills, OH 44040. The Trust purchased shares of Series B

Preferred Stock from Melvin Pirchesky on June 9, 2017 for $50,000.00.

8.      The Defendant, Matthew R. Maguire, is an adult individual with an address of 1909 Waterfront Place #512, Pittsburgh, Pennsylvania 15222.

9.      The Defendant, Patrick Maguire, is an adult individual with an address of 1465 Sandpiper Spit, Richmond, California 94801-4100. Patrick Maguire is the father of Matthew Maguire.

10.     The Defendant, Boustead Securities, LLC (Boustead Securities), is a limited liability company organized and existing under the laws of the state of California with a principal place of business at 6 Venture, Suite 325, Irvine, California 92618. Boustead Securities is a Broker-Dealer as defined by the Pennsylvania Securities Act of 1972, *70 P.S. 1-201 et seq. (*the Act).

11.     The Defendant, Melvin Pirchesky (Pirchesky), is an adult individual with an address of 400 South Highland Avenue, Apartment 3, Pittsburgh, Pennsylvania 15206. Pirchesky is an Agent of Boustead Securities as defined by the Act.

12.     The Defendant, Robert Campbell (Campbell), is an adult individual with offices at 6 Venture, Suite 325, Irvine, California 92618.  Campbell is an Agent of Boustead Securities as defined by the Act.

13.     The Defendant, Robert Lewis (Lewis), is an adult individual with offices at 1344 Fifth Avenue, Pittsburgh, PA 15219.  Lewis is Vice Chairman of the Allegheny County Airport Authority. In addition, Lewis is a shareholder of OneJet and is (or was) on the Board of Directors of OneJet.

14.     The Defendant, David Minnotte (Minnotte), is an adult individual

with offices at 1 Minnotte Square, Pittsburgh, PA 15220-5492. Minnotte is the Chairman of the Allegheny County Airport Authority. In addition, Minnotte is a shareholder of OneJet.

**Jurisdiction and Venue:**

15.    This court has jurisdiction over this action pursuant to the Order entered on June 2, 2019 by Judge Horan.

16.    Venue of this action is appropriate in the Western District of Pennsylvania since the cause of action arose in Allegheny County and the vast majority of the Defendants' actions giving rise to the Plaintiffs' claims occurred in Allegheny County. See, *28 U.S.C 1391 (b) (2); 17 Moore's Federal Practice – Civil, Section 110.01.*

**OneJet:**

17.    OneJet is a California corporation which was formed by Matthew and Patrick Maguire in 2007.  The company was originally known as PRIMAIR, Inc. and Patrick Maguire was listed as the registered corporate agent. In 2014, the Maguires changed the company name to OneJet, Inc.

18.    OneJet is a Pittsburgh-based airline transportation business which touted itself as specializing in convenient and affordable nonstop air service in regional air markets.

19.    OneJet's business plan was intended to take advantage of the elimination of nonstop services between many mid-sized cities caused by the consolidation of major airlines.

**Start of flight operations:**

20.     OneJet began its flight operations on April 6, 2015, with flights between Indianapolis and Milwaukee.

21.     At or about the same time, OneJet secured ticketing and operations space at Pittsburgh International Airport.

22.     Starting on or about May 4, 2015, OneJet began service from Pittsburgh to Milwaukee and Pittsburgh to Indianapolis.

23.     As of August of 2017, OneJet was offering non-stop flights from Pittsburgh to Albany, Cincinnati, Hartford, Indianapolis, Louisville, Milwaukee, Nashville and Richmond.

**The Loan from the Commonwealth of Pennsylvania Department of Community and Economic Development:**

24.     In early 2016, Matthew and Patrick Maguire submitted an application to the Commonwealth of Pennsylvania Department of Community and Economic Development (DCED) for a low interest loan to be made to OneJet under the "Pennsylvania First Program."

25.     The Maguires' application was granted, and on May 12, 2016, OneJet entered into a Loan Agreement with the Pennsylvania DCED.

26.     Pursuant to the Loan Agreement, the Pennsylvania DCED loaned OneJet the sum of $500,000, for a seven (7) year term at the rate of three (3%) percent per annum.

27.     Under the Loan Agreement, OneJet agreed, among other things, that:

A.     It would create 80 new, full time jobs at the Pittsburgh International

Airport.

B.     It would invest at least $1,500,000 in private matching funds.

C.     It would operate at the Pittsburgh International Airport for a minimum period of seven (7) years.

28.     Patrick Maguire personally guaranteed repayment of the loan to the Pennsylvania DCED.

29.     The Defendants touted the fact that the Pennsylvania DCED had "approved" OneJet's operations as a marketing tool to solicit investments in OneJet.

**The Grant from the Allegheny County Airport Authority:**

30.     On June 10, 2016, OneJet entered into an Airport Operations Agreement and Terminal Lease (the Lease) with the Allegheny County Airport Authority (the Airport Authority).

31.     The Lease was executed by Matthew Maguire, as the CEO of OneJet, and David Minnotte, as Chairman of the Airport Authority.

32.     On the same day, OneJet entered into an Economic Development Distribution Program Agreement with the Airport Authority.

33.     Pursuant to the Economic Development Distribution Program Agreement, OneJet received a grant from the Airport Authority in the amount of $1,000,000.

34.     The Plaintiffs believe and therefore aver that Defendants, David Minnotte and Robert Lewis, used their positions on the Board of the Airport Authority to influence the Authority's use of grant money for the benefit of

17

OneJet.

35.     Minnotte and Lewis touted the fact that the Airport Authority had "approved" OneJet's operations, as a marketing tool to solicit investments in OneJet.

**The Loan from the Allegheny County Regional Development Authority:**

36.     At or about the same time, OneJet also secured a low interest, economic development loan from the Allegheny County Regional Development Authority in the amount of $1,500,000.

37.     The Plaintiffs believe and therefor aver that Patrick Maguire and Robert Lewis guaranteed the repayment of the Allegheny County Regional Development Authority loan on behalf of OneJet.

38.     The Defendants touted the fact that the Allegheny County Regional Development Authority had "approved" OneJet's operations, as a marketing tool to solicit investments in OneJet.

A.     On October 31, 2017, Melvin Pirchesky sent an email to Thomas Lippard (as a representative of Woody Partners) which used the loan from Allegheny County as a marketing tool to solicit investments in OneJet. Substantially similar emails were sent to others to induce their investments in OneJet. Among others, the email contained the following representations:

(1)     "The Commonwealth of Pennsylvania and Allegheny County extended a $1M low-interest loan (7 years, 3%), which was used as subordinated debt to fund 20% - 30% of the acquisition cost of three additional aircraft."

(2)     "This type of low-interest loan is one of the incentives the Company

may receive from cities that are experiencing low utilization of their airports similar to that of Pittsburgh."

**Plaintiffs were solicited to invest in OneJet:**

39.     Plaintiffs were solicited by various defendants to invest in OneJet.

40.     Plaintiffs were also provided with periodic updates, including financial documents and information regarding OneJet operations that were materially misleading.

41.     Solicitation and updates took the form of emails, text messages, in-person meetings and phone calls, as is more fully set out below.

1)     Woody Partners

A.     Melvin Pirchesky solicited Woody Partners' investment in OneJet.

B.     On October 31, 2017, Thomas Lippard on behalf of Woody Partners received four emails soliciting Woody Partners' investment in OneJet, Inc. from Melvin Pirchesky. The emails contained solicitation materials including the "Confidential Investment Summary" dated August 2017 and profit and loss statements for the first two quarters of 2017. Among others, the emails and attachments provided the following representations:

(1)     "This is an attractive investment because the Company is well into experiencing its revenue growth with about $1M of revenue in each of August and September."

(2)     "The Company's revenue has been increasing and bottom line losses have been decreasing every month this year."

(3)     "March had a positive EBITDA."

(4)     "In September, the Company had $1M of revenue, up more than 25% over that of June, and had $17K of positive P&L."

(5)     "Today, One Jet is operating five aircraft and has two in reserve, both of which will be deployed to operations in early November. The CEO plans to have eight aircraft flying by year-end. After taking about six weeks from service introduction to reach breakeven and another six weeks or so to reach a consistent load factor of 83% (six out of seven seats occupied) on its flights, each aircraft is currently generating about $55k of monthly gross margin dollars (most importantly, actual monthly gross profit dollars per aircraft achieved Forecast in June) and, in the longer term after scaling, is expected to generate about $1M of EBITDA per year."

(6)     "The Company's revenue and bottom line has been trending upward over the last year. In One Jet's first quarter P&L statement, March had a positive EBITDA, albeit minimal at $5K. In June, the Company had positive EBITDA of $56K and is estimated to have greater than $100K of EBITDA in September."

(7)     "The Company's actual overhead has averaged $185,000 per month in the second quarter, about what was forecasted."

(8)     "During the six months ended June 30, revenue rose every month. The $780K of revenue in June was a little more than double the $386K reported for January. $780K equates to a little better than a $9M annualized revenue run-rate."

(9)     "Projected EBITDA of $6.7 million by yearend 2017 and $30.5

million by yearend 2018."

(10)    "15M has been deployed since inception as part of the Company's certification, DOT proving period, infrastructure development, and base deployment from Pittsburgh."

B.     On November 10, 2017, Thomas Lippard, Michael Coslov, Phillip Siegel and James Elliot, on behalf of Woody Partners, received an email from Melvin Pirchesky including Robin Artz as a recipient. The email included assurances that the documentation provided by OneJet "meets FINRA requirements," and that the investors will receive OneJet's financial reports and quarterly updates. The purpose of the email was to solicit Woody Partners to invest in OneJet.

C.     On December 21, 2017, Melvin Pirchesky attempted to solicit Woody Partners to further its investment in OneJet by purchasing a OneJet Term Note.

D.     While soliciting Woody Partners' investment, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

2)    Aloe Brothers, LLC

A.     Matthew Maguire and Melvin Pirchesky solicited Aloe Brothers, LLC to invest in OneJet.

B.     On February 9, 2017, Mark Aloe (a representative of Aloe Brothers, LLC), received an email from Melvin Pirchesky. The email from Pirchesky solicited Aloe Brothers, LLC's investment in OneJet and represented that OneJet

had a "current revenue run-rate of $5M, One Jet is close to breakeven" and "pre-money valuation is approximately $20M."

C.      On February 12, 2017, Melvin Pirchesky sent an email to Mark Aloe, including a copy of OneJet's Executive Briefing dated February 2017, to further solicit Aloe Brothers, LLC's investment in OneJet.

D.      On February 13, 2017, a meeting was held with Mark Aloe, Matthew Maguire and Melvin Pirchesky. The purpose of the meeting was to solicit Aloe Brothers, LLC's investment in OneJet. During the meeting, Matthew Maguire and Melvin Pirchesky provided materially misleading representations regarding OneJet's financial viability in an attempt to induce the investment.

E.      On February 16, 2017, Matthew Maguire sent an email to Mark Aloe providing additional information to solicit investments in OneJet. The email provided solicitation information including the OneJet Executive Briefing for February 2017.

F.      On February 20, 2017, Melvin Pirchesky sent an email to Mark Aloe providing additional information to solicit investments in OneJet.

G.      On March 5, 2017, Matthew Maguire sent an email to Mark Aloe including OneJet's profit and loss monthly breakdown and balance sheets from 2015 and 2016. The purpose of the email was to solicit Aloe Brothers, LLC's investment in OneJet.

H.      On May 19, 2017, Melvin Pirchesky sent an email to Mark Aloe which included Matthew Maguire, Robert Campbell, and Robin Artz as recipients. The May 19, 2017 email was sent to solicit Aloe Brothers, LLC to close its

investment and stated "OneJet's progress over the last few months has increased my enthusiasm for an investment." Among others, the email from Pirchesky listed the following statements regarding OneJet:

(1)     Operated with positive EBITDA in March and an even greater EBITDA in April and, possibly, although not assured until the statements are completed, it may have approached P&L breakeven in April (statements are prepared quarterly).

(2)     Had an $8M annualized revenue run-rate in April that is expected to increase in May if the Albany destination is added this month.

(3)     Has recent monthly statements showing that the business model makes sense (approaching a 30% GP%), is scalable and can be profitable.

(4)     Has improving results that increasingly demonstrate Matt's [Maguire's] track record of taking a concept and converting it in to (1), (2) and (3), while at the same time, overcoming significant challenges.

I.      On June 20, 2018, Mark Aloe attended a meeting at the Duquesne Club. At the meeting, Melvin Pirchesky and Matthew Maguire repeated the above materially misleading representations regarding OneJet in an attempt to solicit Aloe Brothers, LLC's investment.

J.      While soliciting Aloe Brothers, LLC to invest, Matthew Maguire and Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

3)      David Aloe

A.      David Aloe received solicitation information from Mark Aloe (Aloe

Brothers, LLC) regarding investing in OneJet prior to purchasing shares of Series B Preferred Stock from Matthew Maguire.

B.      The solicitation information provided by Mark Aloe was received from Melvin Pirchesky and Matthew Maguire.

C.      The solicitation information was provided by Matthew Maguire and Melvin Pirchesky to induce investments and contained material misrepresentations regarding OneJet's financial viability.

4)      Kevin Altomari

A.      Melvin Pirchesky solicited Kevin Altomari's investment in OneJet.

B.      On July 21, 2017, Kevin Altomari received four emails soliciting an investment in OneJet from Melvin Pirchesky. The emails from Pirchesky contain a number of representations regarding OneJet's financials, Matthew Maguire as OneJet's founder and CEO, and OneJet's operations. The emails contained solicitation documents including the OneJet Executive Briefing and OneJet financials for the first quarter of 2017. The purpose of the emails sent on July 21, 2017 by Pirchesky was to solicit Kevin Altomari's investment in OneJet. Among others, the emails contained the following representations:

(1)      "The Company's revenue has been trending upward over the last year. In the Company's first quarter P&L Statement, March [2017] had a positive EBITDA"

(2)      "Timothy Hoeksema, former Chairman of Midwest Airlines (which grew from two aircraft to 90 under Tim's leadership before being sold to Republic Airlines), alongside corporate leaders from the Milwaukee community, invested

$1M in One Jet's current financing round."

(3)     "What else is significant is that Tim Hoeksema, expected to be elected to One Jet's Board following the Series B financing, not only led a group making a significant investment in the Company, he also brings years of direct experience growing an airline from a near startup to a successful exit."

(4)     "Later this year, based on our forecasted ability to use corporate cash flow, we will purchase four more aircraft increasing our fleet to 12 units. We plan to increase the number of segments flown per plane and we forecast generating an annual revenue run-rate of approximately $35M+ at year-end."

(5)     "Please know that if you have some concerns about investing in One Jet, then we should chat before you make a final decision. It's been my experience that sometimes prospective investors have misperceived or misunderstood one or more aspects of this opportunity that then get clarified in a dialogue between us."

(6)     "When I first started raising equity for the Company in March, Matt [Maguire] had me tell prospective investors that he thought he would achieve 80% of the $30M+ annualized revenue run-rate projected in the Forecast for December 2017. About two weeks ago, Matt began saying that he now believes that he will achieve the $30M+ annualized revenue run-rate in the Forecast for this December."

C.     On December 21, 2017, Melvin Pirchesky sent an email to Kevin Altomari to solicit the purchase of a OneJet Term Note. Among others, Pirchesky's email contained the following statements:

(1)     "The use of proceeds of the loans being summarized below is to refurbish additional aircraft the Company is buying to meet demand."

(2)     "I recently completed a $7M fully-subscribed equity placement and the Company is profitable."

D.     While soliciting Kevin Altomari's investment, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

5)     Robert Auray, Jr. and Marion Auray

A.     Melvin Pirchesky solicited Robert Auray, Jr. and Marion Auray's investment in OneJet.

B.     On May 15, 2017, Melvin Pirchesky sent an email to Robert Auray, Jr. forwarding an email from Matthew Maguire regarding OneJet's route expansion to Milwaukee. Pirchesky's email stated, "This further validates his [Matthew Maguire] strategy of negotiating with each base city that OneJet elects to expand into that they will provide low-cost financing to acquire more aircraft." The purpose of the email was to solicit an investment in OneJet.

C.     On August 15, 2017, Melvin Pirchesky sent an email to Robert Auray, Jr. The purpose of the email was to solicit an investment in OneJet. Among others, the email made the following representations:

(1)     OneJet "has a balance of risk and reward that is easily understood"

(2)     OneJet "operated at close to P&L breakeven this past June with a $26K P&L loss and $56K EBITDA profit"

(3)     "July's annualized revenue run-rate exceeded $9M/year"

(4)     "The Company forecasts having an annualized revenue run-rate of $30M/year or more by yearend 2017 with substantial profit. Just yesterday, Matt Maguire, the CEO/founder, reaffirmed his forecast of yearend revenue run-rate."

(5)     Provided a list of investors including (1) Former CEO of Northwest Airlines and Boeing Commercial Aircraft, (2) Former CEO of Midwest Airlines, (3) Jim Rohr, (4) Thomas Tull, (5) Mark Aloe and other local investors.

D.     On August 19, 2017, Melvin Pirchesky sent an email to Robert Auray, Jr. providing information about OneJet's revenue and profit and loss trends. The purpose of the email was to solicit an investment in OneJet. Among others, the email provided the following statements:

(1)     "The Company's revenue and bottom line has been increasing every month this year. In OneJet's first quarter P&L Statement, March had $518K of revenue with three aircraft in service and a positive EBITDA"

(2)     "A fourth aircraft was brought into service in the last week of June. For that month, the Company grossed $780K of revenue, up 50% over that of March and it had positive EBITDA of $56K and a $26K P&L loss."

E.     On August 21, 2017, Melvin Pirchesky sent an email to Robert Auray, Jr. providing information regarding OneJet's financials, including monthly profit and loss for April, May and June 2017, and pre-money valuation. The purpose of the email was to solicit an investment in OneJet.

F.     While soliciting Robert Auray, Jr. and Marion Auray to invest, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

6)    Clement R. Austin

A.    Matthew Maguire communicated with Clement R. Austin over the telephone to solicit his investment in OneJet.

B.    While soliciting Clement R. Austin's investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

7)    B5S, LLC

A.    B5S, LLC's investment in OneJet was solicited by Matthew Maguire and Robert Lewis.

B.    James V. Sacco (a representative of B5S, LLC) was introduced to Matthew Maguire and OneJet by Robert Lewis. On September 17, 2016, Robert Lewis sent James Sacco contact information for Matthew Maguire.

C.    On September 14, 2016, Robert Lewis sent a text message to James Sacco, stating, "Jim, Do you think you can get 200k by Friday. Matt is working on leasing equipment."

D.    On August 31, 2016, a meeting was held with Matthew Maguire and James Sacco. The purpose of the meeting was to solicit an investment in OneJet. At the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability in an attempt to induce the investment.

E.    On September 2, 2016, Matthew Maguire sent an email to James Sacco, stating, "Please find attached the Series B investment documents, as well as our executive briefing deck. These are the same terms as those subscribed to by Mr. Tull and Mr. Rohr." The purpose of the email was to solicit an investment in OneJet.

F.      On September 19, 2016, Matthew Maguire sent an email to James Sacco. The purpose of the email was to solicit an investment in OneJet. Included on the email was Robert Lewis. The email stated, "We'll be investing this capital into an aircraft transaction which will allow expanded service to two additional cities from Pittsburgh."

G.      While soliciting B5S, LLC to invest, Matthew Maguire and Robert Lewis continually provided material misrepresentations regarding OneJet's financial viability.

8)      William Benter

A.      William Benter received solicitation information from Kenneth C. McCrory regarding OneJet prior to his purchase of a OneJet Term Note from Matthew Maguire.

B.      The solicitation information provided by Kenneth C. McCrory was received from Matthew Maguire.

C.      The solicitation information was provided by Matthew Maguire to induce investments and contained material misrepresentations regarding OneJet's financial viability.

9)      Richard Berglund

A.      Matthew Maguire solicited Richard Berglund's investment in OneJet.

B.      On April 21, 2018, Robert Denove sent an email to Richard Berglund forwarding the OneJet Naples Club Membership Guide provided by OneJet employee Matthew Anderson and contact information for Matthew

Maguire.

C.     On April 21, 2018 Matthew Maguire sent an email to Richard Berglund providing information about the OneJet Naples Program and soliciting Richard Berglund to purchase a OneJet Term Note.

D.     On April 22, 2018 at 3:30pm, there was a phone call between Richard Berglund and Matthew Maguire. The purpose of the phone call was to solicit an investment in OneJet.

E.     Matthew Maguire sent follow up emails and made phone calls to Richard Berglund to solicit his investment.

F.     Matthew Maguire agreed to modify the Naples Program to include West Palm Beach, at Berglund's request, and changed the wording of Berglund's Note to reflect the same.

G.     Matthew Maguire agreed to permit Richard Berglund to bring 2 dogs on the flights, and changed the wording of Berglund's Note to reflect the same.

H.     Matthew Maguire pushed Richard Berglund to close on his purchase, stating that there were only 2 units left for sale.

I.     While soliciting Richard Berglund's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

10)    Blair Oak Investments, LP

A.     Matthew Maguire and Melvin Pirchesky solicited Blair Oak Investments, LP to invest in OneJet.

B.      On February 9, 2017, Melvin Pirchesky sent an email to Steve Wright and Thomas Wright Jr. to solicit an investment in OneJet. Among others, the email made the following representations:

(1)     "Having started the Company three years ago, [Matthew Maguire] took a concept and turned it into a successfully functioning airline by overcoming challenging government bureaucracy in multiple agencies and departments, putting together a senior team with deep experience in operations, distribution channels, revenue optimization and finance, recruiting a prestigious list of senior advisors, and raising $16 million from a number of prominent business leaders."

(2)     "With a current revenue run-rate of $5M, One Jet is close to breakeven and moving into the black."

C.      Attached to the email sent by Melvin Pirchesky on February 9, 2017 was a document entitled "Confidential Investment Summary February 2017." Among others, the document contains the following representations:

(1)     "OneJet has attracted a very talented and experienced management team, board and investor list" which includes:

(2)     Fred Reid, Founding CEO of Virgin America and former President of Delta (member, OneJet Board of Directors).

(3)     Douglas Steenland, Chairman AIG and former GEO of Northwest Airlines (Senior Advisor).

(4)     James Albaugh, former CEO of Boeing Commercial Aircraft; Senior Advisor to Blackstone (Senior Advisor).

(5)     George Ackert, former Head of Global Transportation Banking,

Merrill Lynch (Senior Advisor).

(6)     Ray LaHood, former Secretary of the U.S. Department of Transportation (Senior Advisor)

(7)     John Pistole, former TSA Administrator and former Deputy Director of the FBI (Senior Advisor)

(8)     ames Rohr, former Chairman of PNC Bank (shareholder)

(9)     Thomas Tull, co-owner Pittsburgh Steelers; former Chairman – Legendary Pictures (shareholder)

(10)    "Use of proceeds is to help finance additional aircraft acquisitions and general corporate purposes."

D.     On February 12, 2017, Melvin Pirchesky sent an email to Thomas Wright Jr. (Blair Oak Investments, LP) regarding OneJet for the purpose of soliciting an investment in OneJet. Among others, the email made the following representations:

(1)     "Attached is OneJet's PowerPoint Executive Briefing. My Boustead partner, Bob Campbell, and I just finished our review of this an hour ago. As you would realize, our diligence involves independently verifying everything in it as being accurate."

(2)     "As I mentioned in my earlier email, Bob Campbell will also be joining us on Tuesday. I brought Bob in as a partner of mine for this Offering as he has a significant amount of knowledge about the airline business. Thus, he serves as my diligence expert."

E.     On February 14, 2017 at 3:00 pm, a meeting was held at the offices

32

of Eckert Seamans Cherin & Mellott located at 600 Grant Street, 44th Floor, Pittsburgh, PA 15219. Matthew Maguire, Robert Campbell and Melvin Pirchesky led the meeting for the purpose of soliciting investments in OneJet. Also in attendance were Thomas Wright Jr. (Blair Oak Investments, LP) and Anthony Florence. At the meeting it was represented to Thomas Wright Jr. that all proceeds being raised by OneJet would go towards acquiring aircraft.

F.      On February 16, 2017, Matthew Maguire sent an email to Thomas Wright Jr. providing information about OneJet for the purpose of soliciting an investment in OneJet.

G.      On February 20, 2017, Melvin Pirchesky sent an email to Thomas Wright Jr. with additional information regarding OneJet for the purpose of soliciting an investment in OneJet.

H.      On February 26, 2017, Melvin Pirchesky sent an email to Steven Wright, Thomas Wright Jr., Matthew Maguire and Robert Campbell providing additional information regarding OneJet's financials. The purpose of the email was to solicit an investment in OneJet.

I.      On March 4, 2017, an email was sent by Melvin Pirchesky to Thomas Wright Jr. for the purpose of soliciting an investment in OneJet. Among others, the email made the following representations:

(1)      "Use of proceeds: We will add an additional 8 aircraft over the next two quarters, increasing our annual revenue runrate to approximately $30M. Current tranche: $1.5M – aircraft capex. $0.5M other capex associated with near term growth. Remainder to be added to reserve for future use."

J.     On March 5, 2017, Melvin Pirchesky forwarded an email from Matthew Maguire to Thomas Wright Jr. for the purposes of soliciting an investment in OneJet.

K.     On September 6, 2017, Melvin Pirchesky sent an email to Thomas Wright Jr. and Steve Wright regarding remaining Series B stock to be placed in an attempt to solicit financing of an airplane. The email stated, "I'd like to place the $750K I have left before one of the out-of-town groups commit to taking it. Please let me know if your client would like me to call."

L.     On September 21, 2017, Matthew Maguire had a phone call with Thomas Wright Jr. in which he attempted to solicit financing for an aircraft. During the call, Matthew Maguire represented that OneJet's plan was for an investor to buy the aircraft and lease it to OneJet on a 5 year lease paying 10% rate of return plus amortization based on the number of hours flown.

M.     On December 14, 2017, Matthew Maguire sent an email to Steve Wright for the purpose of soliciting an additional investment in OneJet through the purchase of a OneJet Term Note and Charter Agreement.

N.     On May 30, 2018, Matthew Maguire sent an email to Steve Wright and Thomas Wright, Jr. including One Jet financial forecasts and projections. The purpose of the email was to solicit an additional investment in OneJet.

O.     On May 30, 2018, Matthew Maguire sent an email to Steve Wright and Thomas Wright, Jr. providing copies of OneJet warrant investment documents. The purpose of the email was an attempt to solicit an additional investment in OneJet.

P.    On May 31, 2018 at 11:00 am, there was a phone call between Matthew Maguire and Steve Wright to discuss the OneJet warrant investment. The purpose of the phone call was to solicit an additional investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability.

Q.    While soliciting Blair Oak Investments, LP to invest, Matthew Maguire and Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

11)    Ronald Cindrich

A.    Matthew Maguire solicited Ronald Cindrich to invest in OneJet.

B.    While soliciting Ronald Cindrich's investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

12)    Clariot New Albany, LLC

A.    Matthew Maguire solicited Clariot New Albany, LLC to invest in One Jet.

B.    On January 18, 2018, Matthew Maguire met with Andrew Bohutinsky (a representative of Clariot New Albany, LLC) to solicit an investment in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

C.    Matthew Maguire advised Andrew Bohutinsky that Tom del Valle and Dale Darcy had recently been employed by OneJet. This statement was false.

D.    On January 19, 2018, Andrew Bohutinsky sent an email to Matthew Maguire requesting information for his due diligence. One item requested was "Audited (or the like) financial statements for 2015 and 2016." Matthew Maguire responded on January 24, 2018 by email stating, "Please find the 2017 monthly results attached, including the preliminary report for Q4. 2015 and 2016 financials are also attached." At no point did Matthew Maguire advise that the financials provided were not audited and in fact, had been created by Matthew Maguire himself.

E.    All of the historical financial information which Matthew Maguire provided to Andrew Bohutinsky was materially false and misleading. For example, the Q42017 financial statements represented that OneJet was profitable and had positive EBITDA of $332,000.00. This was completely false.

F.    On January 24, 2018, Matthew Maguire sent an email to Andrew Bohutinsky including various financial documents and information regarding OneJet for the purpose of soliciting an investment in OneJet. Among others, the email provided the following representations:

(1)    2018 Financial Plan: "Each ERJ [aircraft] is estimated to add $5M in annual EBITDA; Targetting run rate revenue 2018 ending of $120M and $50M EBITDA; Plan to add an additional 10 ERJ's during 2019."

G.    While soliciting Clariot New Albany, LLC to invest, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

36

13)    Eugene K. Connors and Tina K. Houmis

A.    Matthew Maguire and Melvin Pirchesky solicited Eugene K. Connors and Tina K. Houmis to invest in OneJet.

B.    On July 19, 2017 at 12:00pm, a phone conference was led by Matthew Maguire and Melvin Pirchesky for the purpose of soliciting investments in OneJet. The conference attendees included Eugene K. Connors and James J. Restivo. During the meeting, Matthew Maguire and Melvin Pirchesky provided material misrepresentations regarding OneJet's financial viability to induce the investment.

C.    On July 20, 2017, Melvin Pirchesky sent an email to Eugene K. Connors for the purpose of soliciting an investment in OneJet.

D.    On July 21, 2017, Melvin Pirchesky sent an email to Eugene K. Connors for the purpose of soliciting an investment in OneJet. Among others, the email included the following statement, "Dave [Minnotte] made a significant investment several months ago and a like amount a few months ago." The purpose of the above statement was to induce Mr. Connors to invest in OneJet based on Mr. Minnotte's endorsement and investment in OneJet. Significantly, Minnotte's participation was a substantial factor in Connors' decision to invest in OneJet.

E.    On December 8, 2017, a meeting was held with Matthew Maguire, Melvin Pirchesky, James J. Restivo and Eugene K. Connors. The purpose of the meeting was to solicit additional investments in OneJet. During the meeting, Matthew Maguire and Melvin Pirchesky provided material misrepresentations

regarding OneJet's financial viability to induce the investment.

F.      While soliciting Eugene K. Connors and Tina K. Houmis to invest, Matthew Maguire and Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

14)    Andrew J. Constantakis

A.      Andrew J. Constantakis received solicitation information from Nicholas P. Constantakis regarding OneJet prior to purchasing shares of Series B Preferred Stock from Melvin Pirchesky.

B.      The solicitation information provided by Nicholas P. Constantakis was received from Melvin Pirchesky.

C.      The solicitation information was provided by Melvin Pirchesky to induce investments and contained material misrepresentations regarding OneJet's financial viability.

D.      On August 13, 2017, Melvin Pirchesky sent an email to Andrew J. Constantakis and Nicholas P. Constantakis. Included on the email was Robert Campbell. The email stated, "Bob Campbell is another Boustead registered rep. He is a partner of mine in the One Jet financing as he had a significant amount of knowledge about aircraft operations where I did not. He was my initial and ongoing diligence 'expert'." Campbell's involvement, as a so-called aviation expert, lent a false sense of legitimacy to OneJet's operations.

15)    Nicholas P. Constantakis and Veronica Constantakis

A.      Melvin Pirchesky and Matthew Maguire solicited investments in OneJet by Nicholas P. Constantakis and Veronica Constantakis.

B.      One July 12, 2017, Melvin Pirchesky sent 4 emails to Nicholas P. Constantakis. Among other things, the emails stated that:

(1)      "I believe it's rare that an investment is available in an early stage opportunity that has demonstrated all the above, where the CEO concurrently has logic that forecasts an upside potential of a pre-revenue company."

(2)      In the second email, Pirchesky analyzed the reported revenue for each month from January 2017 to June 2017 and the Balance Sheet dated December 31, 2016. The numbers were supplied by Matthew Maguire and were not accurate, but rather were "made up" by Maguire.

(3)      In the fourth email, Pirchesky noted that the Commonwealth of Pennsylvania and Allegheny County have extended low interest loans to the company. He also pointed out that the former Chairman of Midwest Airlines plus corporate leaders from the Milwaukee community have invested in the company. Pirchesky went on to analyze addition financial numbers which were not actual but just made up by Matthew Maguire. These emails were shared with Andrew Constantakis.

C.      On July 19, Melvin Pirchesky hosted a conference call between himself, Matthew Maguire, Andrew Constantakis and Nicholas P. Constantakis. During the call, Matthew Maguire provided materially misleading representations regarding OneJet in an attempt to induce the Constantakis' investments.

D.      On August 12, 2017 and September 9, 2017, Melvin Pirchesky sent emails to Nicholas P. Constantakis and Andrew Constantakis discussing OneJet's operations and financial information supplied by Matthew Maguire. The

numbers provided by Matthew Maguire were not accurate, and the Constantakis

believe that Maguire simply made the numbers up.

E.      On November 28, 2017, Matthew Maguire sent an email to

Nicholas P. Constantakis and Andrew Constantakis summarizing the OneJet's

financial operations. Maguire reported that "I am pleased to report that we

achieved bottom line corporate profitability during Q3". This information was not

accurate and the Constantakis believe that Maguire simply made it up.

F.      A meeting took place on or about November 30, 2017 between

Matthew Maguire and Nicholas P. Constantakis. At the meeting, Matthew

Maguire provided materially misleading representations regarding OneJet in an

attempt to induce the Constantakis' investment.

16)     Cowen OJ Investment, LLC

A.      Matthew Maguire solicited Cowen OJ Investment, LLC to invest in

OneJet.

B.      On February 6, 2015, a meeting was held with Matthew Maguire,

Mark Shulte and Kevin Raidy. The purpose of the meeting was to introduce

Matthew Maguire to Kevin Raidy who was responsible for pursuing private

investments at Cowen OJ Investment, LLC, and to solicit an investment. During

the meeting, Matthew Maguire provided material misrepresentations regarding

OneJet's financial viability to induce the investment.

C.      On February 9, 2015, Matthew Maguire sent an email to Mark

Schulte for the purpose of soliciting an investment from Cowen OJ Investment,

LLC. The email provided solicitation documents including the OneJet Executive

Briefing for January 2015. Among others, the Executive Briefing provided the following representations:

(1)     OneJet has an "industry leading team with experience in key functional areas of business" including:

a.     Michael Durham – former president of Sabre.

b.     Douglas Steenland – Chairman of Travelport, former CEO of Northwest Airlines.

c.     Ninan Chacko – CEO of PR Newswire, former Chief Commercial Officer of Worldspan.

d.     Terry Jones – Founder of Travelocity, former chairman of Kayak.com.

e.     Danny Hood – Former CEO of BCD Travel (3rd largest TMC behind Amex/Carlson).

f.     Dr. Barry Smith – Former chief scientist of Sabre.

g.     Dr. Cynthia Barnhart – Chancellor of MIT, Director of Transportation at MIT.

h.     Fred Reid – Former CEO of FlexJet, former President of Delta Airlines, Founding CEO of Virgin America.

i.     Jack Pelton – Former CEO of Cessna Aircraft Company, former Chairman of General Aircraft Manufacturers' Association.

(2)     "Three issued patents on enabling technology; strategic partnership, revenue-sharing agreements in place with key GDS and TMC partners."

(3)     "Forecasting a cash burn of approximately $1.4m, over a 6 month period, to reach cash flow neutral operations."

D.     On February 12, 2015 at 10:30am, a phone meeting was held with Matthew Maguire, Timothy Anderson and Kevin Raidy. The purpose of the meeting was to solicit an investment in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

E.     On February 17, 2015, Matthew Maguire sent an email to Timothy Anderson. The purpose of the email was to solicit an investment in OneJet. The email provided OneJet's financial model.

F.     On February 18, 2015 at 11:00am, a meeting was held at Cowen OJ Investment, LLC located at 599 Lexington Avenue, 27th Floor, New York, NY 10022. Attendees included Matthew Maguire, Timothy Anderson, Peter Cohen, Jeffrey Solomon, Kevin Raidy, Cathie Melchionna, and Mark Schulte. The purpose of the meeting was to solicit an investment from Cowen OJ Investment, LLC. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

G.     On May 21, 2015, Matthew Maguire sent an email to Timothy Anderson, Mark Schulte, and Kevin Raidy for the purpose of soliciting an additional investment from Cowen OJ Investment, LLC. The email provided solicitation information including the OneJet Executive Briefing for May 2015. Among others, the email contained the following representations:

(1)     "Strong and increasing usage by name brand corporate clients,

including FedEx, Anthem, and PNC."

(2)    "Present yields tracking within 10% of break-even levels. At our current traction growth rate, we expect to achieve break-even yields within a three month time horizon."

H.    On May 21, 2015, Matthew Maguire sent an email to Timothy Anderson with what he called OneJet's "standard email teaser" that Maguire sent to potential investors. Among others, the email contained the following representations:

(1)    "The program has been several years in the making, including significant cooperation at the highest levels of the Department of Transportation and MIT's Global Airline Research Program."

(2)    "In partnership with American Express Travel, Carlson Wagonlit, and others."

(3)    "Notable team members: Doug Steenland, former CEO of Northwest Airlines; Fred Reid, former President Delta and CEO of Virgin America; Dr. Barry Smith, former Chief Scientist of Sabre; John Porcari, former U.S. Deputy Secretary of Transportation; Michael Durham, former President of Sabre; Cynthia Barnhart, Chancellor of MIT and former head of Transportation@MIT; John Pistole, former Administrator of TSA."

I.    On September 21, 2015, Matthew Maguire sent an email to Timothy Anderson providing a copy of the OneJet Financial Model from August 2015. Among others, the email contained the following representations:

(1)    "$900k burn [rate] October-November."

43

(2)     "Forecasted EBITDA break-even end of Q1 2016."

(3)     "Total cash burn from now to break-even is <$2M."

J.     On October 8, 2015, Matthew Maguire sent an email to Timothy Anderson providing OneJet's financial information including copies of OneJet's bank statements, profit & loss statement, and balance sheet. Among others, the email contained the following representation: "Bank statements. Shows current monthly burn [rate] at approximately $700k."

K.     On December 23, 2015, Matthew Maguire sent an email to Timothy Anderson and Kevin Raidy providing an update on OneJet's financials and operations. Among others, the email contained the following representation: "Revenue – 10% monthly growth rate in unit revenue, positive contribution upon introduction of financed aircraft platform; Q2 2016 corporate profitability."

L.     On February 18, 2016, a meeting took place with Matthew Maguire and Timothy Anderson. The purpose of the meeting was an attempt to solicit an additional investment from Cowen OJ Investment, LLC. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability in an attempt to induce the additional investment.

M.     On March 15, 2016, Matthew Maguire sent an email to Timothy Anderson in an attempt to solicit an additional investment from Cowen OJ Investment, LLC.

N.     While soliciting Cowen OJ Investment, LLC to invest, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

17)     DelMetro, Inc.

A.      DelMetro, Inc. was solicited by Matthew Maguire to invest in OneJet.

B.      While soliciting DelMetro's investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

19)     Robert Denove

A.      Matthew Maguire solicited Robert Denove's investment in OneJet.

B.      On March 2, 2018, Robert Denove attended a meeting that was held at the Duquesne Club. Matthew Maguire led the meeting for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investments.

C.      On March 14, 2018, a meeting was held with Matthew Maguire, Robert Denove and James V. Sacco. The purpose of the meeting was to solicit investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investments.

D.      On March 19, 2018, Matthew Maguire sent an email to Robert Denove and James V. Sacco for the purpose of soliciting investments in OneJet. The email provided OneJet's financial forecasts for 2018 and OneJet's profit & loss statements and balance sheets for 2017.

E.      On March 19, 2018, Matthew Maguire sent an email to Robert Denove and James V. Sacco for the purpose of soliciting investments in OneJet.

Among others, the email contained the following representations:

(1)     "Our revenue forecasting models have been fairly accurate –
they're prepared by Dr. Barry Smith, American Airlines' former Chief Scientist,
and our team at MIT."

(2)     "No, we haven't used auditors in the past given [our] relatively small
scale. We will be adding a third party auditing during Q2."

F.      On March 21, 2018, Matthew Maguire sent an email to Robert
Denove regarding the inaugural launch of OneJet Plus service from Pittsburgh
with video links. The purpose of the email sent to Robert Denove was to solicit an
investment in OneJet.

G.      On April 2, 2018, Matthew Maguire sent an email to Robert Denove
and James V. Sacco for the purpose of soliciting investments in OneJet.

H.      On April 5, 2018, Matthew Maguire sent an email to Robert Denove
and James V. Sacco for the purpose of soliciting investments in OneJet.

I.      While soliciting Robert Denove's investment, Matthew Maguire
continually provided material misrepresentations regarding OneJet's financial
viability.

19)     Corina Diehl

A.      Matthew Maguire solicited Corina Diehl to invest in OneJet.

B.      Phone calls took place prior to Corina Diehl's investment in which
Matthew Maguire provided solicitation information inducing her investment.

C.      While soliciting Corina Diehl's investment, Matthew Maguire
materially misrepresented the financial viability of OneJet.

46

20)    Stephen Einhorn

A.    Stephen Einhorn's investment in OneJet was solicited by Matthew Maguire.

B.    On August 26, 2016 at 11:30am, Stephen Einhorn attended a meeting held at Heartland Advisors, Inc., located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

C.    Stephen Einhorn was provided with solicitation materials by Matthew Maguire including the OneJet Milwaukee Investment Briefing dated August 2016. Among others, the Briefing provided the following representations:

(1)    "Profile at exit: Model franchised to 5-7 focus cities; Aggregate system size = 30-50 aircraft; Annualized EBITDA = $50-$75M ($1.5M per aircraft added to system); EBITDA multiplier = 10x or greater."

D.    While soliciting Stephen Einhorn's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

21)    Flighthawk, LLC

A.    Melvin Pirchesky solicited Flighthawk, LLC to invest in OneJet.

B.    On February 2, 2018, Melvin Pirchesky sent an email to John Tippins (a representative of Flighthawk, LLC) for the purpose of soliciting an investment in OneJet, specifically soliciting the OneJet Term Note and Charter

Agreement. Among others, the email contained the following representation: "The use of proceeds of the loans I am placing is to refurbish additional aircraft the Company is buying to meet demand."

C.      On February 8, 2018, Melvin Pirchesky sent a text message to John Tippins for the purpose of soliciting an investment in OneJet.

D.      On February 8, 2018, Melvin Pirchesky sent an email to John Tippins providing background information regarding OneJet.  The purpose of the email was to solicit an investment in OneJet. Among others, the email provided the following representations:

(1)      "This was an attractive investment because the Company is well into experiencing its revenue growth with about $1M of revenue in each of July, August and September, a little less than $1.2M of revenue in October, revenue of about $1.25M in November and revenue in December of about $1M."

(2)      "OneJet's unaudited financials are reported quarterly."

(3)      "Per the attached unaudited quarterly statement also located on the 4th page from the end of the attached OneJet Subscription Agreement, in Q3, the Company had $3.1M of revenue, up 48% over that of Q2, and had $30K of positive pretax unaudited P&L for the quarter. The company's unaudited Balance Sheet as of the end of Q3 can be found on the 5th page from the end of the attached OneJet Subscription Agreement."

E.      On February 23, 2018, Melvin Pirchesky sent an email to John Tippins forwarding an email from Matthew Maguire regarding the inaugural flight and formal launch of the Naples Club. The purpose of the email was to solicit an

investment in OneJet.

F.      On February 27, 2018, Melvin Pirchesky sent an email to John Tippins containing a list of equity investors in OneJet. The purpose of the email was to solicit an investment in OneJet. The list of equity investors named included:

(1)      "Former CEO of Northwest Airlines and Boeing Commercial Aircraft."

(2)      "Tim Hoeksema, former CEO of Midwest Airlines, who grew Midwest from two aircraft to 90 followed by a $450M sale to TPC Capital and Northwest Airlines. Tim led a group of Milwaukee-based leaders that made a >$1M equity investment in OneJet. He is expected to be elected to One Jet's Board of Directors."

(3)      Jim Rohr.

(4)      Sy Holzer.

(5)`     Thomas Tull.

(6)      "Mark Aloe, a local entrepreneur, also invested in the recent equity round. He thoroughly understood the investment opportunity with over 7,000 hours as a private pilot and the owner of several aircraft over his lifetime."

(7)      "Other local entrepreneurs *besides myself* who have invested include Rick Brown, Chuck Hammel, Jim Johnson, Bob Lewis, Michael Lewis, Jim Liken, Dave Minnotte, Bob Pietandrea, Jim, Chuck and Dan Snyder, Alex Speyer, and Steve and Tom Wright."

(8)      "Several attorneys including Tom Freyvogel III from Reed Smith,

David Lehman from K&L Gates and Ron Frank from Blank Rome."

G.      On March 13, 2018, Melvin Pirchesky sent an email to John Tippins with additional OneJet financial information. The purpose of the email was to solicit an investment in OneJet. Among others, the email contained the following statements:

(1)      "I do not have a January 31, 2018 Balance Sheet as Matt [Maguire] produces only quarterly statements at this point."

(2)      "The $3.7M also includes thirteen $150K units of unsecured debt, totaling $1.95M, that is being used to upgrade the 30-passenger aircraft that I referred to in my email to you with respect to the Note Offering with Charter Benefits."

(3)      "You'll also note that the Company had $290K of EBITDA profit."

H.      On June 5, 2018, Melvin Pirchesky sent an email to John Tippins regarding OneJet's announcement to acquire Ultimate Jet Charters. The email stated, "By the end of 2018, the combined entity is projected to generate nearly $100M in annualized revenue run-rate, serving 22 destinations in the eastern U.S., with a combined fleet of 25 aircraft."

I.      While soliciting Flighthawk, LLC to invest, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

22)      John A. George and Carolyn D. George

A.      Melvin Pirchesky and Matthew Maguire solicited John A. George and Carolyn D. George to invest in OneJet.

B.      On August 12, 2017, Matthew Maguire sent an email to John A. George regarding OneJet's Q2 Performance Overview and Q3 and Q4 outlook. The email also included OneJet's Balance Sheet from July 2017 and Profit & Loss Statement for April-June 2017. The purpose of the email sent to John A. George was to solicit an investment in OneJet.

C.      On November 28, 2017, Matthew Maguire sent an email to John A. George regarding OneJet's Q3 Performance Overview. The email also included OneJet's Balance Sheet from September 2017 and Profit & Loss Statement for July-September 2017. The purpose of the email sent to John A. George was to solicit an investment in OneJet.

D.      While soliciting John A. George and Carolyn D. George to invest, Melvin Pirchesky and Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

23)     The Harding-Brown Family Trust

A.      Matthew Maguire solicited The Harding-Brown Family Trust investment in OneJet.

B.      On January 2, 2017, Matthew Maguire sent an email to Gregory Harding-Brown for the purpose of soliciting an investment in OneJet. The email included an Executive Briefing entitled, Program and Financial Overview – December 2016. Among others, the Executive Briefing provided the following representations:

(1)     "Team includes seasoned leaders from across the transportation industry, including distribution, revenue optimization, and operational experts:

Ray LaHood, former U.S. Secretary of Transportation; John Porcari, former U.S. Department Secretary of Transportation; Jack Pelton, former CEO of Cessna Aircraft Company; Terrell Jones, former Chairman of Kayak.com; Dr. Barry Smith, former Chief Scientist, Sabre; Dr. Cynthia Barnhart, Chancellor MIT, former Head of Transportation at MIT."

(2)     "Pennsylvania now providing low cost capital to expand PIT operations: $1M debt, 7 year term at 2% interest, $1M grant."

(3)     "Revenue growing 10% or more monthly."

(4)     "Profile at exit: Model franchised to 5-7 focus cities; Aggregate system size = 30-50 aircraft; Annualized EBITDA = $30-$50M ($1M per aircraft added to system); EBITDA multiplier = 10x or greater."

(5)     "$100k investment in recent Series B round yielded the following projected returns: $300M exit = $1.1M return or 11X multiple; $500M exit = $1.8M return or 18X multiple."

C.     On January 9, 2017, Matthew Maguire sent an email to Gregory Harding-Brown providing a list of 10 city destinations that OneJet would pursue. The purpose of the email was to solicit an investment in OneJet.

D.     While soliciting the Harding-Brown Family Trust to invest, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

24)     Timothy Hoeksema

A.     Matthew Maguire solicited Timothy Hoeksema to invest in OneJet.

B.     On August 25, 2016, Matthew Maguire sent an email to William

Nasgovitz and Timothy Hoeksema providing a summary entitled, "Milwaukee Nonstop Air Service Expansion – One Jet Investment Profile." The purpose of the email and summary was to solicit investments in OneJet. Among others, the Investment Profile provided the following representations:

(1)     "The Company recently completed a $2.5M financing transaction with the State of Pennsylvania and private investors to expand its basing and nonstop routings from Pittsburgh."

(2)     "Series B Preferred Stock issued at $20M pre-money valuation."

C.     On August 26, 2016 at 11:30am, Timothy Hoeksema attended a meeting held at Heartland Advisors, Inc. located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

D.     In December 2015, a meeting was held with Matthew Maguire, William Nasgovitz, Michael H. White, Jeffrey Joerres and Timothy Hoeksema. The purpose of the meeting was to solicit investments in OneJet.  During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

E.     While soliciting Timothy Hoeksema's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

25)    William E. Hunt

A.     Matthew Maguire and Melvin Pirchesky solicited William E. Hunt to invest in OneJet.

B.     On October 3, 2017, Matthew Maguire sent an email to William E. Hunt for the purposes of soliciting an investment in OneJet. The email contained information regarding OneJet's financials and, among other things, stated:

(1)    "Company forecasted to end 2017 at $25M in annualized revenue and $6M in EBITDA."

(2)    "Plan to exit position within approximately three years, with a fleet size of 40-50 aircraft and forecasted EBITDA of approximately $40-$50M annually; forecasted exit value $300M-$400M."

C.     On January 23, 2018, Melvin Pirchesky sent an email to William E. Hunt for the purpose of soliciting an investment in OneJet, specifically, a OneJet Term Note. Among others, the email contained the following representations:

(1)    "The use of proceeds of the loans being summarized below is to refurbish additional Embraer ERJ-135 business jets the Company is acquiring to meet demand."

D.     While soliciting William E. Hunt's investment, Matthew Maguire and Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

26)    Jeffrey Joerres

A.     Matthew Maguire solicited Jeffrey Joerres to invest in OneJet.

B.     In December 2015, a meeting was held with Matthew Maguire,

William Nasgovitz, Michael H. White, Jeffrey Joerres and Timothy Hoeksema. The purpose of the meeting was to solicit investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

C.      On August 26, 2016 at 11:30am, Jeffrey Joerres attended a meeting held at Heartland Advisors, Inc. located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

D.      On September 3, 2016, Jeffrey Joerres sent an email to Matthew Maguire regarding the Subscription Agreement for OneJet Series B Preferred stock stating, "I am concerned regarding Exhibit A, the last paragraph. I was under the impression that the Series B proceeds would be used to lease/purchase planes not for 'repayment of the bridge loan indebtedness and owing to the Founding Shareholders.'"

E.      On September 3, 2016, Matthew Maguire responded to Jeffrey Joerres' email stating, "My apologies – that is a versioning error. Prior to completing our financing deal with Pennsylvania earlier this year, we had looked at conducting a transaction with a large equity fund – this is a relic of that deal." Further Matthew Maguire stated, "To be clear, the presently raised funds will be used to acquire additional aircraft equipment and other capital needs, not repayment of loans."

F.      Jeffrey Joerres received solicitation documents from Matthew Maguire including the OneJet Executive Briefing titled "Milwaukee Investment Briefing – August 2016." Among others, the document contained the following representations:

(1)     "Targeting exit within 2-3 years."

(2)     "Profile at exit:

a.      Model franchised to 5-7 focus cities

b.      Aggregate system size = 30-50 aircraft.

c.      Annualized EBITDA = $50-$75M ($1.5M per aircraft added to system).

d.      EBITDA multiplier = 10x or greater."

G.      Jeffrey Joerres received solicitation documents from Matthew Maguire including the OneJet Investment Profile titled "Milwaukee Nonstop Service Expansion" dated August 24, 2016. Among others, the document contained the following representation:

(1)     "The Company's current investors and board members include: Douglas Steenland, Chairman AIG and former CEO of Northwest Airlines; James Albaugh, Former CEO of Boeing Commercial Aircraft, Senior Advisor to Blackstone; George Ackert, Former Head of Global Transportation Banking, Merrill Lynch; James Rohr, Former Chairman of PNC Bank; Fred Reid, Founding CEO of Virgin America and former President of Delta (Board Member)."

H.      While soliciting Jeffrey Joerres to invest, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial

56

viability.

      27)    James R. Johnson and Matthew Johnson

      A.    Melvin Pirchesky solicited James R. Johnson and Matthew Johnson to invest in OneJet. James R. Johnson and Matthew Johnson purchased shares of Series B Stock as tenants in common.

      B.    On March 28, 2017, Melvin Pirchesky sent two emails to James R. Johnson which were then forwarded by James R. Johnson to Matthew Johnson. Attached to one of the emails was the Confidential Investment Summary for OneJet from February 2017. Among others, the emails and attachment made the following representations:

      (1)    "The last four months have had positive EBITDA."

      (2)    "February's revenue run-rate was $6M/year."

      (3)    "Based on reasonable logic of additional planes and base cities, in December 2016, the CEO/founder forecasted a revenue run-rate of $30M/year by yearend 2017 with substantial profit. He recently said he's on track to achieve 80% of that."

      (4)    "OneJet has attracted a very talented and experienced management team, board and investor list – OneJet's senior management team includes people with experiences such as the former Managing Director, Corporate Finance, of Northwest Airlines; the former Chief Scientist of Sabre Holdings (largest airline technology company); the former SVP of Account Management at Carlson Wagonlit; and the former VP of Operations at US Airways Express."

C.      While soliciting James R. Johnson and Matthew Johnson to invest, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

28)      James R. Johnson

A.      Matthew Maguire solicited James R. Johnson to invest in OneJet. James R. Johnson invested individually by purchasing a OneJet Term Note.

B.      On November 28, 2017, James Johnson received an email from Matthew Maguire summarizing Q3 performance and OneJet's strategic update. The email included OneJet's Profit & Loss Statement for July-September 2017 and Balance Sheet for September 2017.

C.      While soliciting James R. Johnson to invest, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

29)      Scott Kern

A.      Matthew Maguire solicited Scott Kern to invest in OneJet.

B.      On or about February 15, 2018, a phone call took place between Matthew Maguire and Scott Kern. The purpose of the phone call was to solicit an investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

C.      On February 15, 2018, Matthew Maguire sent an email to Scott Kern for the purpose of soliciting an investment in OneJet. The email included the OneJet Naples Club Membership Guide.

D.     While soliciting Scott Kern's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

30)    Keith Kronk

A.     Matthew Maguire solicited Keith Kronk's investment in OneJet.

B.     On or about April 3, 2018, a phone call took place between Matthew Maguire and Keith Kronk. The purpose of the phone call was to solicit Keith Kronk's investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

C.     On April 3, 2018, Matthew Maguire sent an email to Keith Kronk for the purpose of soliciting an investment in OneJet. The email contained solicitation information including: OneJet Financial Forecast for FY2018; Profit & Loss Statements for January-March 2017, April-June 2017, July-September 2017, and October-December 2017; Balance Sheets for March 2017, July 2017, September 2017, and December 2017.

D.     While soliciting Keith Kronk's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

31)    Dennis J. Kuester

A.     Matthew Maguire solicited Dennis J. Kuester to invest in OneJet.

B.     On August 25, 2016, Dennis J. Kuester received an email from Timothy Hoeksema forwarding an email from Matthew Maguire. The email

provided a summary entitled, "Milwaukee Nonstop Air Service Expansion – One Jet Investment Profile." The purpose of Matthew Maguire's email and the summary provided was to solicit investments in OneJet. Among others, the Investment Profile provided the following representations:

(1)     "The Company recently completed a $2.5M financing transaction with the State of Pennsylvania and private investors to expand its basing and nonstop routings from Pittsburgh."

(2)     "Series B Preferred Stock issued at $20M pre-money valuation."

C.     On August 26, 2016 at 11:30am, Dennis J. Kuester attended a meeting held at Heartland Advisors, Inc. located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability in an attempt to induce investments.

D.     While soliciting Dennis J. Kuester's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

32)     Michael J. Lewis

A.     Michael J. Lewis was solicited by Matthew Maguire and Melvin Pirchesky to invest in OneJet.

B.     While soliciting Michael J. Lewis' investment, Matthew Maguire and Melvin Pirchesky materially misrepresented the financial viability of OneJet.

33)     James Liken

A.      Melvin Pirchesky solicited James Liken to invest in OneJet.

B.      On March 6, 2017, Melvin Pirchesky sent an email to James Liken for the purpose of soliciting his investment in OneJet. Attached to the email was the Confidential Investment Summary of OneJet from February 2017. Among others, the email and attachment contained the following statements:

(1)     "The Company's revenue is growing such that it has had a positive EBITDA in November, December and January."

(2)     "The CEO is executing on the results of a study that was jointly conducted by the U.S. Dept. of Transportation and MIT's Transportation Department to determine how best to serve those cities that lack and need direct flights within their region."

(3)     "With a current revenue run-rate of $6M and growing, One Jet is projecting nearing breakeven."

(4)     "In addition to the $16M already invested/loaned, the CEO has placed but not yet closed on another $2M. About a month ago, he asked my firm, Boustead Securities, to assist him with raising, what he believes, will be the last $2M of his financing so that he can focus his time on other aspects of the business."

(5)     "OneJet has attracted a very talented and experienced management team, board and investor list – OneJet's senior management team includes people with experiences such as the former Managing Director, Corporate Finance, of Northwest Airlines; the former Chief Scientist of Sabre

Holdings (largest airline technology company); the former SVP of Account Management at Carlson Wagonlit; and the former VP of Operations at US Airways Express."

C.      On March 6, 2017, Melvin Pirchesky sent an email to James Liken for the purpose of soliciting his investment in OneJet. The email provided performance summaries from January and February 2017 along with purported questions from prospective investors that Matthew Maguire answered.

D.      While soliciting James Liken's investment, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

34.      Randy Lueth

A.      Matthew Maguire and Melvin Pirchesky solicited Randy Lueth's investment in OneJet.

B.      Randy Lueth received an email from Dan Lynch forwarding an email from Melvin Pirchesky. The email from Melvin Pirchesky was sent on January 26, 2018 for the purpose of soliciting Dan Lynch to invest in OneJet. Among others, the email provides the following representations:

(1)      "The use of proceeds of the loans being summarized below is to refurbish additional aircraft the Company is buying to meet demand."

(2)      "The CEO and I recently completed the last half of a $15M fully-subscribed-to equity placement and the Company is profitable."

C.      Prior to Randy Lueth's investment, a phone call took place in which Matthew Maguire provided solicitation information inducing Randy Lueth's

investment. During the call, Matthew Maguire assured Randy Lueth that the OneJet financial statements were accurate and that OneJet was already profitable.

D.       While soliciting Randy Lueth's investment, Matthew Maguire and Melvin Pirchesky materially misrepresented the financial viability of OneJet.

35)    David Matter

A.       David Matter was asked to join in the Naples Club membership of John Paul, another OneJet investor.

B.       David Matter agreed to take one third of John Paul's $150,000 Note for the payment of $50,000.00.

C.       David Matter received the Note, wiring instructions and other information from Matthew Maguire.

D.       Matthew Maguire failed to advise David Matter of OneJet's financial difficulties, and in fact, Maguire advised David Matter of plans to expand the Naples Program to include additional days and flights.

E.       In exchange for his $50,000.00 investment, David Matter was able to make one round trip on the Naples Shuttle with his wife.

F.       In August of 2018, David Matter called to confirm a Naple shuttle reservation that he had already paid for, but was advised that the Naples Program had been terminated.

36)    Kenneth C. McCrory

A.       Matthew Maguire solicited Kenneth C. McCrory to invest in OneJet.

B.       In October of 2017, a meeting was held with Matthew Maguire and

Kenneth C. McCrory for the purpose of soliciting an investment in OneJet. At the meeting, Matthew Maguire represented that OneJet was profitable and expanding.

C.      Kenneth C. McCrory received solicitation documents from Matthew Maguire including OneJet's Profit & Loss statement for April-June 2017, OneJet's Profit & Loss statement for July-August 2017, and OneJet's Profit & Loss Forecast for October 2017-September 2018.

D.      On October 23, 2017, Jim Roddey forwarded an email to Kenneth C. McCrory that Jim Roddey received from Matthew Maguire. The purpose of Maguire's email was to solicit an investment in OneJet. Among others, the email included the following statements:

(1)      "Company forecasted to end 2017 at $25M in annualized revenue and $6M in EBITDA."

(2)      "Plan to exit position within approximately three years, with a fleet size of 40-50 aircraft and forecasted EBITDA of approximately $40M-$50M annually; forecasted exit value $300-$400M, assuming average multiples for growth stage companies in the transportation space."

F.      While soliciting Kenneth McCrory's investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

37)      Mitchell Elias Nahra, M.D.

A.      Matthew Maguire solicited Mitchell Elias Nahra, M.D. to invest in OneJet.

B.      On or about December 12, 2017, a meeting was held with Matthew

Maguire, Robert Lewis and Robert Vadas for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

C.     Robert Vadas sent a follow up email on December 13, 2017 requesting that the OneJet investment documents be sent to Mark McGrievy, Esq., the private attorney for Mr. Vadas and Dr. Nahra.

D.     On December 14, 2017, Matthew Maguire sent an email to Robert Vadas, Mark McGrievy and Robert Lewis. The purpose of the email was to solicit investments in OneJet.

E.     On December 21, 2017, Matthew Maguire sent an email to Dr. Nahra and Mark McGrievy, providing OneJet's financial documents including Q1 and Q2 2017 financials and FY 2018 financial forecast. Additionally, the email provided a copy of OneJet's Certificate of good standing from the State of California. The purpose of the email was to solicit investments in OneJet and provided copies of solicitation information including OneJet's Profit & Loss Statement for July-September 2017 and OneJet's Balance Sheet for September 2017. Among others, the email provided the following representations:

(1)     "Net income before taxes was $9K for Q3 vs. a net loss of $110K reported in Q2."

(2)     "Revenue for Q3 was $3.07M, up 47% over the $2.09M reported for Q2."

(3)     "We expect to end the year with an annualized revenue run-rate of $17M-$19M."

65

(4)    "Our expectation is that we'll add 5 more aircraft in the first half of 2018. Each of these is expected to add an additional $3 million of annualized revenue run-rate."

F.    On December 22, 2017, Matthew Maguire sent an email to Mark McGrievy and Robert Vadas. The purpose of the email was to solicit investments in OneJet.

G.    While soliciting Mitchell Elias Nahra, M.D. to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

38)    William Nasgovitz

A.    Matthew Maguire solicited William Nasgovitz to invest in OneJet.

B.    In December 2015, a meeting was held with Matthew Maguire, William Nasgovitz, Michael H. White, Jeffrey Joerres and Timothy Hoeksema. The purpose of the meeting was to solicit investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding the financial viability of OneJet to induce investments.

C.    William Nasgovitz was provided with solicitation materials by Matthew Maguire including the OneJet Executive Briefing dated December 2015, the OneJet Preferred Equity Financing Overview dated December 2015, and the OneJet Milwaukee Briefing dated January 2016. Among others, the Executive Briefings provided the following representations:

(1)    "Team includes seasoned leaders from across the transportation industry, including distribution, revenue optimization, and operational experts: Ray LaHood, former U.S. Secretary of Transportation; John Porcari, former U.S.

Department Secretary of Transportation; Jack Pelton, former CEO of Cessna Aircraft Company; Terrell Jones, former Chairman of Kayak.com; Dr. Barry Smith, former Chief Scientist, Sabre; Dr. Cynthia Barnhart, Chancellor MIT, former Head of Transportation at MIT."

(2)     "Flight operation activities currently generating break-even revenue performance; company forecast to achieve corporate profitability Q2 of 2016." (Executive Briefing December 2015).

(3)     "Forecasted use of funds from January 2016 to positive operational cash flow." (Executive Briefing January 2016).

(4)     "At current revenue rate, monthly corporate burn rate = $350k."

D.     On August 25, 2016, Matthew Maguire sent an email to William Nasgovitz and Timothy Hoeksema providing a summary entitled, "Milwaukee Nonstop Air Service Expansion – One Jet Investment Profile." The purpose of the email and summary was to solicit investments in OneJet. Among others, the Investment Profile provided the following representations:

(1)     "The Company recently completed a $2.5M financing transaction with the State of Pennsylvania and private investors to expand its basing and nonstop routings from Pittsburgh."

(2)     "Series B Preferred Stock issued at $20M pre-money valuation."

E.     On August 26, 2016 at 11:30am, William Nasgovitz attended a meeting held at Heartland Advisors, Inc. located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire

provided material misrepresentations regarding the financial viability of OneJet to induce investments.

F.      While soliciting William Nasgovitz to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

39)     North Star Coal Company Non-Bargaining Employees Profit Sharing Plan

A.      Matthew Maguire solicited North Star Coal Company Non-Bargaining Employees Profit Sharing Plan's investment in OneJet.

B.      While soliciting North Star Coal Company Non-Bargaining Employees Profit Sharing Plan to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

40)     Orttech Ltd.

A.      Orttech Ltd.'s investment in OneJet was solicited by Melvin Pirchesky and Matthew Maguire.

B.      On December 7, 2017, Stephen Zenczak and Gregory Zenczak had a lunch meeting with Matthew Maguire in Cleveland.

C.      During the meeting, Matthew Maguire falsely advised the Zenczaks that:

(1)     OneJet would have EBITDA of $40 million by the end of 2018.

(2)     The Maguire family owned 40% of OneJet's stock.

(3)     The sale value of the Company would be 10 x EBITDA.

D.      Ortech relied on these statements in making its investment in OneJet.

41)     Robert A. Pietandrea

A.      Melvin Pirchesky solicited Robert A. Pietandrea's investments in OneJet.

B.      On December 13, 2017, Melvin Pirchesky sent four emails to Robert A. Pietandrea for the purpose of soliciting an investment in OneJet. Among others, the emails contained the following representations:

(1)     "This is an attractive investment because the Company is well into experiencing its revenue growth with about $1M of revenue in each of July, August and September, a little less than $1.2M of revenue in October, and a monthly run-rate in November and December of about $1.3M."

(2)     "In this year's first quarter P&L Statement, Q1 had $1.4M of revenue and an operating loss of $180K. A fourth aircraft was introduced into service in the last week of June. For Q2, the Company grossed $2.1M of revenue, up 50% over that of Q1 and it reported a $110K P&L loss."

(3)     "Per the attached quarterly statement, in Q3, the Company had $3.1M of revenue, up 48% over that of Q2, and had $9K of positive pretax P&L for the quarter."

C.      While soliciting Robert A. Pietandrea's investment, Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

42)     James J. Restivo and Gail Restivo

A.      Melvin Pirchesky and Matthew Maguire solicited James J. Restivo and Gail Restivo to invest in OneJet.

B.     On July 14, 2017, Melvin Pirchesky sent four emails to James J. Restivo for the purpose of soliciting an investment in OneJet. The emails contained information regarding OneJet's financials, Matthew Maguire as CEO, and OneJet's business plan. Among others, the email contained the following representations:

(1)     "With revenue steadily growing monthly, this year's 2nd quarter is expected to be profitable."

(2)     "May's annualized revenue run-rate approximated $9M/year."

(3)     "Matt Maguire, the CEO/founder, forecasted last December that the Company would have an annualized revenue run-rate of $30M/year or more by yearend 2017 with substantial profit. He reaffirmed that expectation just a few weeks ago."

(4)     "Investors include: Former CEO's of Northwest Airlines, Midwest Airlines and Boeing Commercial Aircraft; Jim Rohr, former CEO of PNC; Thomas Tull, Steelers co-owner and former Chairman of Legendary Pictures (Batman series); Mark Aloe, a local entrepreneur that I've known for years, recently made a significant investment. He thoroughly understood the opportunity with over several thousand hours flying as a private pilot and the owner of several aircraft over his lifetime. His vetting and then investing in the Company was meaningful to me given his knowledge in the field; other local entrepreneurs who have invested include Jim Liken, Steve and Tom Wright, Chuck Hammel, Bob Lewis and Dave Minnotte."

C.     On July 19, 2017 at 12:00pm, a phone conference was led by

Matthew Maguire and Melvin Pirchesky for the purpose of soliciting investments in OneJet. The conference attendees included James J. Restivo and Eugene K. Connors. During the call, Matthew Maguire and Melvin Pirchesky provided material misrepresentations regarding OneJet's financial viability to induce investments.

D.      On December 8, 2017, a meeting was held with Matthew Maguire, Melvin Pirchesky, James J. Restivo and Eugene K. Connors. The purpose of the meeting was to solicit additional investments in OneJet. During the meeting, Matthew Maguire and Melvin Pirchesky provided material misrepresentations regarding OneJet's financial viability to induce investments.

E.      On December 21, 2017, Melvin Pirchesky sent an email to James J. Restivo in an attempt to solicit an additional investment in OneJet, specifically soliciting a OneJet Term Note.

F.      While soliciting James J. Restivo and Gail Restivo to invest, Matthew Maguire and Melvin Pirchesky continually provided material misrepresentations regarding OneJet's financial viability.

43)     Susan Rosen

A.      Matthew Maguire solicited Susan Rosen to invest in OneJet.

B.      On March 2, 2018, Susan Rosen attended a meeting that was held at the Duquesne Club. Matthew Maguire led the meeting for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability.

C.      Prior to investing, Susan Rosen had a dinner meeting with Matthew

Maguire in Naples, FL. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability.

D.      Additionally, on or about March 27, 2018 Matthew Maguire went to Susan Rosen's home in Pittsburgh, PA to solicit her investment in OneJet. This final meeting is when Susan Rosen purchased the OneJet Term Note. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability.

E.      When soliciting Susan Rosen's investment, Matthew Maguire represented that OneJet would establish additional routes to Martha's Vineyard that would be similar to the Naples Club Program.

F.      While soliciting Susan Rosen's investment, Matthew Maguire continually provided material misrepresentations regarding OneJet's financial viability.

44)    James V. Sacco

A.      James V. Sacco's investment in OneJet was solicited by Matthew Maguire and Robert Lewis.

B.      James V. Sacco was introduced to Matthew Maguire and OneJet by Robert Lewis. On September 19, 2016 an email from Matthew Maguire to James V. Sacco says, "I understand from Bob [Lewis] that you and Chris will be subscribing $100k each."

C.      On August 31, 2016, a meeting was held with Matthew Maguire and James V. Sacco. The purpose of the meeting was to solicit an investment in OneJet. During the meeting, Matthew Maguire provided material

misrepresentations regarding OneJet's financial viability to induce the investment.

D.      On September 2, 2016, Matthew Maguire sent an email to James V. Sacco stating, "Please find attached the Series B investment documents, as well as our executive briefing deck. These are the same terms as those subscribed to by Mr. Tull and Mr. Rohr." The purpose of the email was to solicit an investment in OneJet.

E.      On September 19, 2016, Matthew Maguire sent an email to James V. Sacco. The purpose of the email was to solicit an investment in OneJet. Included on the email was Robert Lewis. The email stated, "We'll be investing this capital into an aircraft transaction which will allow expanded service to two additional cities from Pittsburgh."

F.      On October 17, 2016, Matthew Maguire sent an email to James Sacco stating, "Bob [Lewis] and I are going to place an additional $500k in equity locally. Let's think about who else we want partnered with us on this."

G.      On October 29, 2016 and on November 15, 2016, Matthew Maguire sent an email to James V. Sacco including the OneJet Executive Briefing for October 2016. The purpose of the email was to solicit an investment in OneJet.

H.      On February 15, 2017, Matthew Maguire sent an email to James Sacco with the OneJet Executive Briefing from February 2017.

I.      On May 26, 2017, Matthew Maguire sent an email to James Sacco with OneJet's June 2017 forecasts and capital projects. Among others, the email provided the following representation:

(1)　　"Our current roadmap will have us ending 2017 with a total fleet of 10 aircraft, producing approximately $40M in annualized revenue and $10M EBITDA."

J.　　On June 7, 2017, Matthew Maguire sent an email to James Sacco for the purpose of soliciting an investment in OneJet.

K.　　On July 9, 2017, Matthew Maguire sent an email to James Sacco for the purpose of soliciting an investment in OneJet.

L.　　On March 2, 2018, James Sacco attended a meeting that was held at the Duquesne Club. Matthew Maguire led the meeting for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

M.　　On March 2, 2018, Matthew Maguire sent an email to James Sacco for the purpose of soliciting an investment in OneJet. The email provided a copy of the OneJet Naples Club Program Guide.

N.　　On March 15, 2018, a meeting was held with Matthew Maguire, Robert Denove and James Sacco. The purpose of the meeting was to solicit investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

O.　　On March 19, 2018, Matthew Maguire sent an email to Robert Denove and James Sacco for the purpose of soliciting an investment in OneJet. The email provided OneJet's financial forecasts for 2018 and OneJet's profit & loss statements and balance sheets for 2017.

P.      On March 19, 2018, Matthew Maguire sent an email to Robert Denove and James Sacco for the purpose of soliciting an investment in OneJet. Among others, the email contained the following representations:

(1)      "Our revenue forecasting models have been fairly accurate – they're prepared by Dr. Barry Smith, American Airlines' former Chief Scientist, and our team at MIT."

(2)      "No, we haven't used auditors in the past given [our] relatively small scale. We will be adding a third party auditor during Q2."

Q.      On March 21, 2018, Matthew Maguire sent an email to Robert Denove and James Sacco regarding the inaugural launch of OneJet Plus service from Pittsburgh with video links. The purpose of the email was to solicit investments in OneJet.

R.      On April 2, 2018, Matthew Maguire sent an email to Robert Denove and James Sacco for the purpose of soliciting investments in OneJet.

S.      On April 5, 2018, Matthew Maguire sent an email to Robert Denove and James Sacco for the purpose of soliciting investments in OneJet.

T.      On April 5, 2018, a phone call took place between Matthew Maguire and James Sacco for the purpose of soliciting an investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability.

U.      While soliciting James V. Sacco's investment, Matthew Maguire and Robert Lewis continually provided material misrepresentations regarding OneJet's financial viability.

45)     William Sarris

A.      William Sarris received solicitation information from Kenneth C. McCrory regarding OneJet prior to purchasing shares of Series B Preferred Stock from Matthew Maguire.

B.      The solicitation information provided by Kenneth McCrory was received from Matthew Maguire.

C.      The solicitation information was provided by Matthew Maguire to induce investments and contained material misrepresentations regarding OneJet's financial viability.

46)     7th Street Properties, LP

A.      Matthew Maguire solicited 7th Street Properties, LP to invest in OneJet.

B.      On February 6, 2018, Matthew Maguire sent multiple emails to Joseph Leonello (a representative of 7th Street Properties, LP) for the purposes of soliciting an investment in OneJet.

C.      While soliciting 7th Street Properties' investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

47)     Sheertex Fabrics, LLC

A.      Matthew Maguire solicited Sheertex Fabrics, LLC to invest in OneJet.

B.      While soliciting Sheertex Fabrics' investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

48)    Jack W. Shilling

A.    In April of 2018, Jack W. Shilling had a discussion with a friend, Mark Sullivan, regarding a potential investment in OneJet. Mark Sullivan said that he had some information regarding OneJet that "he would pass along."

B.    On April 4, 2018, Mark Sullivan forwarded information which he had received from Matthew Maguire to Jack W. Shilling. The information included an email from Maguire dated February 21, 2018 as well as the OneJet Naples Club Membership Guide.

C.    On April 5, 2018, Mark Sullivan forwarded additional OneJet information to Jack W. Shilling, including the OneJet Executive Briefing dated August 2016.

D.    The OneJet Executive Briefing dated August 2016 contained the following representations regarding OneJet:

(1)     "Team includes seasoned leaders from across the transportation industry, including distribution, revenue optimization, and operational experts: Ray LaHood, former U.S. Secretary of Transportation; John Porcari, former U.S. Department Secretary of Transportation; Jack Pelton, former CEO of Cessna Aircraft Company; Terrell Jones, former Chairman of Kayak.com; Dr. Barry Smith, former Chief Scientist, Sabre; Dr. Cynthia Barnhart, Chancellor MIT, former Head of Transportation at MIT."

(2)    "Pennsylvania now providing low cost capital to expand PIT operations: $1M debt, 7 year term at 2% interest, $1M grant."

(3)    "Targeting exit within 2-3 years."

(4)     "Profile at exit:

    a.     Model franchised to 5-7 focus cities.

    b.     Aggregate system size = 30-50 aircraft.

    c.     Annualized EBITDA = $50-$75M ($1.5M per aircraft added to system).

    d.     EBITDA multiplier = 10x or greater."

E.     On June 18, 2018, Matthew Maguire sent an email to Jack W. Shilling which attempted to solicit an additional investment from Jack W. Shilling. Matthew Maguire's email provided OneJet warrant investment documents and solicitation information, including a OneJet Executive Summary dated June 2018, OneJet capital table, OneJet exit analysis and OneJet financial forecasts.

49)     Steven G. Smith

A.     Matthew Maguire solicited Steven G. Smith's investment in OneJet.

B.     On April 11, 2018, Matthew Maguire introduced Steven Smith to Sylvan Holzer, another OneJet investor, for the purpose of soliciting Steven Smith to invest in OneJet.

C.     On April 18, 2018, Matthew Maguire sent an email to Steven Smith to solicit his investment in OneJet.

D.     While soliciting Steven G. Smith to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

50)     David Tesone Group, Inc.

A.     Matthew Maguire solicited David Tesone Group, Inc. to invest in OneJet.

B.     While soliciting David Tesone Group's investment, Matthew

Maguire materially misrepresented the financial viability of OneJet.

51)   Derek J. Thomas

A.     Matthew Maguire solicited Derek J. Thomas to invest in OneJet.

B.     On February 6, 2018, a phone call took place with Matthew Maguire and Derek J. Thomas. The purpose of the phone call was to solicit an investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

C.     On June 11, 2018, a phone call took place between Matthew Maguire and Derek J. Thomas. The purpose of the phone call was an attempt to solicit an additional investment in OneJet. During the call, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce the investment.

D.     On June 12, 2018, Matthew Maguire sent an email to Derek J. Thomas providing warrant investment documents, OneJet's exit multiple analysis and OneJet financial forecasts. The purpose of the email was an attempt to solicit an additional investment in OneJet. Among others, the email contained the following representation, "Based on the forecast average exit price, we expect a total return of 4-6X on this tranche."

E.     While soliciting Derek J. Thomas to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

52)   Triad Investments, Inc.

A.     Melvin Pirchesky and Matthew Maguire solicited Triad Investments,

Inc. to invest in OneJet.

B.     On December 7, 2017, Stephen Zenczak and Gregory Zenczak had a lunch meeting with Matthew Maguire in Cleveland.

C.     During the meeting, Matthew Maguire falsely advised the Zenczaks that:

(1)     OneJet would have EBITDA of $40 million by the end of 2018.

(2)     The Maguire family owned 40% of OneJet's stock.

(3)     The sale value of the Company would be 10 x EBITDA.

D.     Triad Investments relied on these statements in making its investment in OneJet.

53)     The Christian Luke Ronald Vadas 2016 Trust

A.     Matthew Maguire solicited the investment made by The Christian Luke Ronald Vadas 2016 Trust.

B.     On or about December 12, 2017, a meeting was held with Matthew Maguire, Robert Lewis and Robert Vadas for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire and Robert Lewis provided material misrepresentations regarding OneJet's financial viability.

C.     On December 13, 2017, Robert Vadas sent an email to Matthew Maguire requesting the OneJet investment documents be sent to Mark McGrievy, Esq. who is the private attorney for Mr. Vadas and Mitchell Elias Nahra, M.D.

D.     On December 14, 2017 Matthew Maguire sent an email to Robert Vadas, Mark McGrievy and Robert Lewis. The purpose of the email was to solicit investments in OneJet.

E.     On December 21, 2017, Matthew Maguire sent an email to Dr. Nahra and Mark McGrievy, providing OneJet's financial documents including Q1 and Q2 2017 financials and FY 2018 financial forecast. Additionally, the email provided a copy of OneJet's Certificate of good standing from the State of California. The purpose of the email was to solicit investments in OneJet. The email provided copies of solicitation information including OneJet's Profit & Loss Statement for July-September 2017 and OneJet's Balance Sheet for September 2017. Among others, the email provided the following representations:

(1)     "Net income before taxes was $9K for Q3 vs. a net loss of $110K reported in Q2."

(2)     "Revenue for Q3 was $3.07M, up 47% over the $2.09M reported for Q2."

(3)     "We expect to end the year with an annualized revenue run-rate of $17M-$19M."

(4)     "Our expectation is that we'll add 5 more aircraft in the first half of 2018. Each of these is expected to add an additional $3 million of annualized revenue run-rate."

F.     On December 22, 2017, Matthew Maguire sent an email to Mark McGrievy and Robert Vadas. The purpose of the email was to solicit investments in OneJet.

G.     While soliciting the investment by The Christian Luke Ronald Vadas 2016 Trust, Matthew Maguire materially misrepresented the financial viability of OneJet.

81

54)    The Simon Isaac Young Vadas 2016 Trust

A.    Matthew Maguire solicited the investment made by The Simon Isaac Young Vadas 2016 Trust.

B.    On or about December 12, 2017, a meeting was held with Matthew Maguire, Robert Lewis and Robert Vadas for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire and Robert Lewis provided material misrepresentations regarding OneJet's financial viability.

C.    On December 13, 2017, Robert Vadas sent an email to Matthew Maguire requesting that the OneJet investment documents be sent to Mark McGrievy, Esq., the private attorney for Mr. Vadas and Mitchell Elias Nahra, M.D.

D.    On December 14, 2017, Matthew Maguire sent an email to Robert Vadas, Mark McGrievy and Robert Lewis. The purpose of the email was to solicit investments in OneJet.

E.    On December 21, 2017, Matthew Maguire sent an email to Dr. Nahra and Mark McGrievy, providing OneJet's financial documents including Q1 and Q2 2017 financials and FY 2018 financial forecast. Additionally, the email provided a copy of OneJet's Certificate of good standing from the State of California. The purpose of the email was to solicit investments in OneJet. The email provided copies of solicitation information including OneJet's Profit & Loss Statement for July-September 2017 and OneJet's Balance Sheet for September 2017. Among others, the email provided the following representations:

(1)    "Net income before taxes was $9K for Q3 vs. a net loss of $110K reported in Q2."

(2)      "Revenue for Q3 was $3.07M, up 47% over the $2.09M reported for Q2."

(3)      "We expect to end the year with an annualized revenue run-rate of $17M-$19M."

(4)      "Our expectation is that we'll add 5 more aircraft in the first half of 2018. Each of these is expected to add an additional $3 million of annualized revenue run-rate."

F.       On December 22, 2017, Matthew Maguire sent an email to Mark McGrievy and Robert Vadas. The purpose of the email was to solicit investments in OneJet.

G.       While soliciting the investment by The Simon Isaac Young Vadas 2016 Trust, Matthew Maguire materially misrepresented the financial viability of OneJet.

55)      Viking Reinsurance Company

A.       Matthew Maguire solicited Viking Reinsurance Company to invest in OneJet.

B.       On March 7, 2017 at 2:30pm, a meeting was held with Matthew Maguire and Anthony Folino (a representative of Viking Reinsurance Company). The purpose of the meeting was to solicit Viking Reinsurance Company's investment in OneJet. During the meeting, Matthew Maguire materially misrepresented the financial viability of OneJet.

C.       On March 6, 2017, Matthew Maguire sent two emails to Anthony Folino, Ken Urish and John Constantino providing solicitation information

including the OneJet Executive Briefing from March 2017 and the Profit & Loss Statement for January-December 2016. The purpose of the emails and financials provided was to solicit Viking Reinsurance Company's investment in OneJet. Among others, the Executive Briefing provided the following representations:

(1)   "Team includes seasoned leaders from across the transportation industry, including distribution, revenue optimization, and operational experts: Ray LaHood, former U.S. Secretary of Transportation; John Porcari, former U.S. Department Secretary of Transportation; Jack Pelton, former CEO of Cessna Aircraft Company; Terrell Jones, former Chairman of Kayak.com; Dr. Barry Smith, former Chief Scientist, Sabre; Dr. Cynthia Barnhart, Chancellor MIT, former Head of Transportation at MIT."

a.   "Revenue growing 5-10% monthly."

b.   "Targeting 11-18X exit multiplier for Series B investors."

c.   "$1M non aircraft related debt obligation to State of Pennsylvania, amortizing over 7 year period, at 3% interest."

d.   "Targeting exit within 2-3 years."

e.   "Profile at exit:

1.   Model franchised to 5-7 focus cities.

2.   Aggregate system size = 30-50 aircraft.

3.   Annualized EBITDA = $50-$50M ($1M per aircraft added to system).

4.   EBITDA multiplier = 10x or greater."

D.   On May 30, 2017, Matthew Maguire sent an email to Anthony

Folino for the purposes of soliciting an investment in OneJet. The email provided information about both OneJet's Series B Preferred Stock and Term Note Agreements.

E.      While soliciting Viking Reinsurance Company to invest, Matthew Maguire materially misrepresented the financial viability of OneJet.

56)    Jerry R. Whitaker

A.      Matthew Maguire solicited Jerry R. Whitaker's investment in OneJet.

B.      On June 9, 2017, Matthew Maguire sent an email to Jerry R. Whitaker for the purpose of soliciting an investment in OneJet. Among others, the email contained the following statements:

(1)      "The Series B price of $9.67/share is the same as it was in January 2016, when James Rohr from PNC initiated his subscription."

(2)      "The current share price of $9.67 is modeled to deliver an 8-12X return at exit, less discount for accrued dividends"

(3)      "We are targeting an exit during 2019 – so "all in", I would calculate a cumulative forecasted discount of 10% + 1% (2017-2019) to account for this, adjusting targeted exit multiple to 7-10.5X for the Series B investment."

C.      While soliciting Jerry R. Whitaker's investment, Matthew Maguire materially misrepresented the financial viability of OneJet.

57)    Michael H. White

A.      Matthew Maguire solicited Michael H. White to invest in OneJet.

B.      In December 2015, a meeting was held with Matthew Maguire,

William Nasgovitz, Michael H. White, Jeffrey Joerres and Timothy Hoeksema. The purpose of the meeting was to solicit investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

C.      On August 26, 2016 at 11:30am, Michael H. White attended a meeting held at Heartland Advisors, Inc. located at 789 North Water Street, Milwaukee, WI 53202. The meeting was led by Matthew Maguire for the purpose of soliciting investments in OneJet. During the meeting, Matthew Maguire provided material misrepresentations regarding OneJet's financial viability to induce investments.

D.      While soliciting Michael H. White's investment, Matthew Maguire continually provided material misrepresentations regarding financial viability of OneJet.

58)      Gregory S. Zenczak Family Dynasty Trust

A.      Melvin Pirchesky and Matthew Maguire solicited the investment in OneJet by the Gregory S. Zenczak Family Dynasty Trust.

B.      On December 7, 2017, Stephen Zenczak and Gregory Zenczak had a lunch meeting with Matthew Maguire in Cleveland.

C.      During the meeting, Matthew Maguire falsely advised the Zenczaks that:

(1)      OneJet would have EBITDA of $40 million by the end of 2018.

(2)      The Maguire family owned 40% of OneJet's stock.

(3)      The sale value of the Company would be 10 x EBITDA.

D.     The Gregory S. Zenczak Family Dynasty Trust relied on these statements in making its investment.

59)     Stephen J. Zenczak Family Dynasty Trust

A.     Melvin Pirchesky and Matthew Maguire solicited the investment in OneJet by the Stephen Gregory S. Zenczak Family Dynasty Trust.

B.     On December 7, 2017, Stephen Zenczak and Gregory Zenczak had a lunch meeting with Matthew Maguire in Cleveland.

C.     During the meeting, Matthew Maguire falsely advised the Zenczaks that:

(1)     OneJet would have EBITDA of $40 million by the end of 2018.

(2)     The Maguire family owned 40% of OneJet's stock.

(3)     The sale value of the Company would be 10 x EBITDA.

D.     The Stephen J. Zenczak Family Dynasty Trust relied on these statements in making its investment.

**The Maguires made materially misleading statements to the Plaintiffs:**

42.     Matthew Maguire and Patrick Maguire began soliciting investments in OneJet from the public in October of 2014.

43.     The Plaintiffs believe and therefor aver that the Maguires initially targeted potential investors in Milwaukee, Indianapolis and New York.

44.     In addition, the Maguires solicited investments from James Rohr, the CEO of PNC Bank, and other PNC officials.

45.     The Maguires represented that the "Maguire family" (Matthew, Patrick and others) had invested in excess of $9,000,000 of their own money in

OneJet. However, the Plaintiffs believe and therefor aver that such representation was false, and that either the Maguire family never made such investment, or that the Maguire family was repaid the funds invested in OneJet, to the detriment of all investors and creditors.

46.    The Maguires have advised the Plaintiffs that the records, which would establish their investments in OneJet, have been "destroyed."

47.    The Maguires made several misstatements of material fact to the Plaintiffs.  Among other things:

A.    The Maguires misrepresented the operating costs of OneJet, including its leasing rates.

B.    The Maguires substantially misrepresented OneJet's "burn rate."

C.    The Maguires represented that OneJet had a seasoned "advisory board" made up of former U.S. Department of Transportation officials, including Ray LaHood and John Porcari. In fact, the Maguires brought Mr. LaHood and Mr. Porcari to meetings with potential investors. The Maguires also represented that Jack Pelton, the former CEO of Cessna Aircraft Company, and Dr. Cynthia Barnhart, the head of transportation at MIT, were "part of the OneJet team." These statements were false. There was no OneJet "team."

D.    The Maguires represented that OneJet had an "outstanding management team" that included senior executives from major airlines and other travel-related companies. The Maguires represented that their management team had "deep experience in operations, distribution channels, revenue optimization and aircraft financing." These statements were false. There was no

OneJet "team."

E.     The Maguires represented that they had secured investments from several well-respected, local business leaders who could contribute to the ultimate success of OneJet, including James Rohr, Chairman of PNC Bank.

F.     The Maguires asserted that David Minnotte and Robert Lewis, who were both on the Board of the Allegheny County Airport Authority, had invested in OneJet and that they could secure favorable treatment for OneJet with the Airport Authority.

G.     The Maguires sent inaccurate and misleading financial statements and projections to potential investors. In fact, the Plaintiffs have learned that the numbers contained in OneJet's financial statements were simply "made up."

H.     The Maguires represented that OneJet had accurate and complete financial and accounting records. However, the Plaintiffs later discovered that the accounting records were woefully inadequate and/or nonexistent, and that none of the expected financial safeguards were in place.

I.     The Maguires represented that OneJet had a talented and experienced Board of Directors, which included Timothy Hoeksema, the former Chairman of Midwest Airlines. In fact, Mr. Hoeksema was never on OneJet's Board. Similarly, the Maguires represented that Fred Reid, the former president of Delta Airlines, was joining OneJet's Board, and that Reid "has brought a lot of capital to the table…putting his money where his mouth is." This statement was also false. In fact, the Plaintiffs believe and therefore aver that OneJet never had any meetings of its Board of Directors.

J.      The Maguires represented that OneJet owned valuable intellectual property, including patents and trademarks. The Plaintiffs later discovered that these representations were false.

K.      The Maguires projected that OneJet would have a positive EBITDA for 2017 and 2018, and would own 42 aircraft by the end of 2018. These statements were false.

L.      The Plaintiffs believe and therefore aver that the Maguires paid themselves "finder's fees" for the securities that they sold. However, the Maguires failed to disclose such payments to the Plaintiffs.

M.      The Maguires told the Plaintiffs that their investments would be used to acquire additional planes (30 to 50). In fact, OneJet did not purchase *any planes.*

48.      The Maguires provided OneJet's financial documents to potential and existing investors. The Plaintiffs believe and therefore aver that these financial documents were woefully inaccurate, false and/or misleading. Such financial documents include the following:

A.      OneJet Financial Model – August 2015

B.      OneJet Financial Model – January 2016

C.      OneJet Financial Model – September 2018

D.      OneJet Executive Briefing – August 2015

E.      OneJet Executive Briefing – September 2015

F.      OneJet Board Meeting and Briefing – October 2015

G.      OneJet Status Briefing – January 2016

H.   OneJet Status Briefing (Updated) – January 2016

I.   OneJet Executive Briefing – February 2016

J.   OneJet Executive Briefing – October 2016

K.   OneJet Executive Briefing – Program and Financial Overview – December 2016

L.   OneJet Executive Briefing – February 2017

M.   OneJet Executive Briefing – NYC Investor Update – December 2017

N.   OneJet Executive Briefing – OneJet Ultimate Jet Acquisition – September 2018

O.   OneJet Executive Briefing – 8-24-18 Update Meeting

P.   OneJet Bank Statements from April 1, 2015 – September 30, 2015

Q.   OneJet Profit and Loss Statement – January-March 2015

R.   OneJet Profit and Loss Statement – January-December 2015

S.   OneJet Profit and Loss Statement – January-December 2016

T.   OneJet Profit and Loss Statement – January-March 2017

U.   OneJet Profit and Loss Statement – April-June 2017

V.   OneJet Profit and Loss Statement – July-September 2017

W.   OneJet Profit and Loss Statement – October-December 2017

X.   PrimAir [OneJet] Balance Sheet – September 30, 2015

Y.   OneJet Balance Sheet – December 31, 2015

Z.   OneJet Balance Sheet – YE 2016

AA.  OneJet Balance Sheet – March 2017

BB.  OneJet Balance Sheet – July 2017

CC.  OneJet Balance Sheet – September 2017

DD.  OneJet Balance Sheet – December 2017

EE.  OneJet Actual vs. Forecast Adjusted – Three Months Ended March 31, 2017

FF.  OneJet Financial Forecast – June-December 2017

GG.  OneJet Financial Forecast – March 2018

HH.  OneJet Financial Forecast – FY2018

II.   OneJet Income Forecast – 2017

JJ.  OneJet Profit and Loss Forecast – October 2017-September 2018

KK.  OneJet Profit and Loss Forecast – FY 2018-2019

LL.  OneJet Cash Flow Forecast – FY 2018-2019

MM. Ultimate Jet Charters Profit and Loss Forecast – 2018-2019

NN.  OneJet September (2015) Performance Overview

OO.  OneJet Investment Profile – Milwaukee Nonstop Air Service Expansion

PP.  OneJet Capital Table – January 11, 2016

QQ.  OneJet Capital Table – June 2018

RR.  OneJet Exit Projections – June 2018

SS.  OneJet Naples Club Program Guide

TT.  Press Release – Ultimate Jet Charters acquisition

UU.  Due Diligence Review – Proposed Purchase of Ultimate Jetcharters, LLC by One Jet, Inc. – Prepared for One Jet, Inc. Management/Ownership by Matthew McDaniel, CPA – June 2018

VV.  Combined Profit and Loss Projection – OneJet/Ultimate Jetcharters – FY 2019-2021

WW. OneJet/Ultimate  Jetcharters  Capital  Structure  Projection  – September 2018

XX.  Route Plan Profit & Loss Projections – September 2018

YY.  Combined  Cash  Flow  Forecast  (OneJet/Ultimate  Jetcharters)  – September 2018

ZZ.  Capital  Structure  Projection  –  Ultimate  Jetcharters  Purchase  – September 2018

49.    The Maguires continued to misrepresent the financial stability and projected profitability of OneJet through September of 2018, even though OneJet was already in serious financial trouble.

**The retention of Boustead Securities:**

50.    In February of 2017, the Maguires engaged Boustead Securities to assist them in securing investors and investment capital for OneJet.

51.    On March 6, 2017, Melvin Pirchesky sent an email to James Liken stating, "About a month ago, [Matthew Maguire] asked my Firm, Boustead Securities, to assist him with raising, what he believes, will be the last $2M of financing so that he can focus his time on other aspects of the business."

52.    Boustead Securities is a registered broker-dealer with the Financial Industry Regulatory Authority (FINRA). Accordingly, Boustead Securities is subject to the Rules and Regulations of FINRA, which rules are intended to protect investors and to ensure that the sellers of securities operate in a fair and

honest manner.

53.     The Maguires agreed to pay Boustead Securities a 10% Finder's Fee for all OneJet securities that it sold. The Finder's Fee for each sale was divided among Boustead Securities and its sales agents, Campbell and Pirchesky.

A.     On May 22, 2017, Melvin Pirchesky sent an email to Gregory Zenczak discussing the 10% Finder's Fee received by Boustead. The email stated, "The fee is paid to Boustead Securities, the Placement Agent, by the Company. The Investor's wire transfer is only for the amount they are investing in the Company. I receive 60% of the fee with the remaining 40% going to Boustead and another registered representative of Boustead who is a partner of mine in this financing."

B.     On January 23, 2018, Melvin Pirchesky sent an email to Nicholas P. Constantakis and Matthew Maguire stating, "This is to confirm in writing with you that Matt and I both have, in fact, agreed that Boustead Securities (and thus myself as Boustead's registered representative) is to be paid a fee under the 'tail' provision of the Placement Agent Agreement between One Jet and Boustead Securities."

54.     Following its retention by the Maguires, Boustead Securities designated Campbell and Pirchesky to solicit investments for OneJet.  Boustead promoted Campbell's alleged expertise in aviation operations which projected a false sense of legitimacy of OneJet's operations.

55.     Campbell and Pirchesky solicited investors by means of phone

calls and direct emails to several prospective investors in the Pittsburgh area.

56.     As part of its solicitation efforts, Boustead Securities, through its agents, Campbell and Pirchesky, sent OneJet financial documents to potential and existing investors. The Plaintiffs believe and therefore aver that these financial documents were woefully inaccurate, false and/or misleading. Such financial documents include the following:

A.  OneJet's 2015 Tax Return

B.  OneJet FY 2017/2018 Financial Forecast

C.  Confidential Investment Summary dated February 2017

D.  Confidential Investment Summary dated August 2017

E.  OneJet Profit and Loss Statement – FY 2016

F.  OneJet Profit and Loss Statement – January-March 2017

G.  OneJet Profit and Loss Statement – April-June 2017

H.  OneJet Profit and Loss Statement – July-September 2017

I.   OneJet Balance Sheet – March 2017

J.  OneJet Balance Sheet – as of June 30, 2017

K.  OneJet Balance Sheet – September 2017

L.  OneJet Actual vs. Forecast Adjusted – Three Month Ended March 31, 2017

M. OneJet Executive Briefing – August 2017

57.     In addition, Campbell and Pirchesky conducted several meetings at the Duquesne Club and similar venues in the Pittsburgh area, in an effort to sell the securities of OneJet, which included both stock and notes, to the Pittsburgh

market. At these meetings, Campbell and Pirchesky conducted slide show presentations which touted OneJet as a "solid investment opportunity."

58.     Boustead Securities, through its agents, Campbell and Pirchesky, repeated many of the material misstatements made by the Maguires in order to solicit investors for OneJet. In addition, Boustead analyzed the false financial information provided by the Maguires, which created the false impression that such financial information was genuine.   Among other things, Campbell and Pirchesky represented that:

A.     OneJet had an "outstanding management team" that included senior executives from major airlines and other travel-related companies. OneJet's team allegedly had "deep experience in operations, distribution channels, revenue optimization and aircraft financing." These statements were false.

B.     OneJet had accurate and complete financial and accounting records. However, the Plaintiffs later discovered that the accounting records were woefully inadequate and/or nonexistent and that none of the expected financial safeguards were in place.

C.     OneJet had a talented and experienced Board of Directors. However, the Plaintiffs believe and therefore aver that OneJet never had a "real" Board of Directors or any board meetings.

D.     OneJet was "an attractive investment" because OneJet was "experiencing revenue growth," and by September of 2017, its operations were "in the black." The Plaintiffs later discovered that that these statements were

false.

E.     OneJet's "revenue has been increasing and bottom line losses have been decreasing every month this year" (2017). These statements were false.

F.     OneJet had a "positive EBITDA" for every month after March of 2017. These statements were false.

G.     The Maguire family had invested more than $9 million dollars of their own money in OneJet. These statements were false.

H.     OneJet owned valuable intellectual property, including patents and trademarks. These representations were false.

I.     The investments would be used by OneJet to purchase additional planes. These representations were false.

59.     In addition, Boustead Securities sent email solicitations and "executive summaries" to potential investors which:

A.     Falsely indicated that OneJet's operations were "profitable" during the third quarter of 2017.

B.     Falsely indicated that OneJet's "revenues were increasing at the rate of 5% to 10% per month."

C.     Asserted that the participation of well-known local investors, such as "Jim Rohr, Bobby Lewis and Dave Minnotte," virtually guaranteed success in the Pittsburgh market.

D.     Falsely asserted that OneJet had "invested substantially (seven figures) in IT and operational systems."

E.      Claimed that OneJet "plans to eventually be operating 30 – 50 aircraft."

60.     The Plaintiffs believe and therefor aver that Boustead Securities, Campbell and Pirchesky failed to exercise reasonable diligence to verify the truth or falsity of the representations that they made regarding the financial viability of OneJet.

61.     Boustead Securities' registration with FINRA vested the representations of Campbell and Pirchesky with an air of authority and authenticity in the eyes of the Plaintiffs.

62.     In fact, in an email to potential investors, Pirchesky stated that his registration with FINRA virtually ensured the reliability of his statements. As stated by Pirchesky:

> *As I mentioned, since I am a registered representative of a broker-dealer, all of the financings I lead must meet the documentation requirements of the Financial Industry Regulatory Authority (FINRA; formerly the NASD). And, following discovery of the Bernie Madoff scheme and implementation of the requirements of the Patriot Act, FINRA has become extremely demanding in terms of documenting information on each entity and their underlying investors when a broker-dealer is involved.*

(emphasis added).

63.     Similarly, on February 12, 2017, Melvin Pirchesky sent an email to Thomas Wright Jr. (and other potential investors) regarding Boustead Securities' role in reviewing OneJet's solicitation documents and financials sent to potential investors. Among others, the email provided the following representations:

A.      "Attached is OneJet's PowerPoint Executive Briefing. My Boustead

partner, Bob Campbell and I just finished our review of this an hour ago. *As you would realize, our diligence involves independently verifying everything it is as being accurate.*"

B.      "We are not done with our diligence on the Company's financials (balance sheet, 2016 P&L and the next two years' forecast) and the rest of the Offering documents. Like the PowerPoint, *Bob and I agreed we would not give these out until we have completed our diligence on them by reviewing them thoroughly.*"

(emphasis added).

64.     It is significant that Boustead (Pirchesky and Campbell) analyzed OneJet's financial information and provided their analysis to the Plaintiffs and other investors. This helped to give credence to OneJet's financial information in the eyes of the Plaintiffs.

65.     The Plaintiffs have since discovered that the representations of Boustead Securities, Campbell and Pirchesky regarding the viability of OneJet were false, and that Boustead Securities, Campbell and Pirchesky would have known of such falsity if they had exercised reasonable diligence.

66.     In an email to OneJet investors dated July 23, 2018, Pirchesky advised that:

> … we were told that Matt McDaniel presented an
> an analysis of financial matters that left the Board
> members extremely concerned that OneJet's
> recent financial statements and related information
> that have been previously presented to them (and
> presumably, to Boustead, you and us) are
> materially inaccurate.

67.   Following the email, Boustead directed Pirchesky "not to speak" with any of the investors that he brought into OneJet.

**Robert Lewis and David Minnotte solicit investors:**

68.   Robert Lewis provided potential investors with a business card that stated that he was a Director of OneJet.

69.   Robert Lewis invested in OneJet. However, the Plaintiffs believe and therefor aver that Robert Lewis was repaid some or all of the funds invested in OneJet, to the detriment of all investors and creditors.

A.   On June 6, 2018, Robert Lewis sent a text message to James V. Sacco stating, "Ok Jimmie I am waiting for a while to raise more money. I have 1.6 M invested myself."

B.   On December 11, 2018, Robert Lewis sent a text message to James V. Sacco stating, "I lost over 800k myself."

70.   Robert Lewis and David Minnotte solicited investments from potential investors.

71.   On September 7, 2016 at 12:26pm, Robert Lewis sent a text message to James V. Sacco stating, "Since I invested 500. I would like to be able to lease a few more planes. Every 50 gets a lease for 6 months. Both Dave [Minnotte] and I are working on this to make sure it's a success for us."

72.   Robert Lewis played a key role in soliciting investors in the Pittsburgh area.

A.    On October 17, 2016, Matthew Maguire sent an email to James V. Sacco stating, "Bob [Lewis] and I are going to place an additional $500k in equity

locally. Let's think about who else we want partnered with us on this."

B.      In an E-mail to John W. Paul dated November 9, 2016, Matthew Maguire stated that "I was pleased to hear from Bobby [Lewis] yesterday that you'll be joining the team…"

C.      In an E-mail to James Sacco dated May 30, 2017, Matthew Maguire stated that "I further want to offer a special word of thanks to Bob Lewis for leading the charge last year to initiate and lead the private investment syndicate – well done and thank you, Bob."

73.      Additionally, Robert Lewis held meetings at his office with Matthew Maguire and potential investors for the purpose of soliciting investments in OneJet. One such meeting took place on December 12, 2017 with Robert Vadas. During the meeting, Matthew Maguire and Robert Lewis solicited Vadas' investments in OneJet.

74.      Robert Lewis asked other OneJet investors to assist in promoting and soliciting investments for OneJet. On September 15, 2016, Robert Lewis sent a text message to James V. Sacco asking, "Are you going to help me promote this concept? Money is one thing but we need market savvy individuals."

75.      Robert Lewis continued to present himself as a Director and solicit investments despite concerns regarding Matthew Maguire and the financial viability of OneJet.

A,      On March 15, 2018, Robert Lewis sent a text message to James V. Sacco. In reference to Matthew Maguire, Robert Lewis stated, "I have been trying to get this guy straight for a year."

B.      On March 30, 2018, Robert Lewis sent a text message to James V. Sacco that said, "Is it agreed that we need the numbers to decide what our options are and if we have any other liability [than] lost money?"

C.      On August 9, 2018, Robert Lewis sent text messages to James V. Sacco. Among other things, the text messages stated:

(1)      "Jimmie the airport is filing on One Jet today for lack of payment."

(2)      "I tried to call you a few times. There has been a lot of misinformation on One Jet. I just wanted to let you know before it's out. Please call me if you have time."

(3)      "One Jet Matt [Maguire] is going to have some real problems in the next 6 weeks."

D.      On December 11, 2018, Robert Lewis sent text messages to James V. Sacco. Among other things, the text messages stated:

(1)      "I told you Jim that [Matthew Maguire] was not meeting his debt obligation at the airport."

(2)      "The Naples operation was a sham from day 1."

(3)      "We were worried about [Matthew Maguire] at the end of [20]16. I tried to get everybody to take over operations but no one wanted to be aggressive."

**The "Naples Club":**

76.      As part of their scheme to solicit investors, the Maguires established the "Naples Club" (also known as the "Naples Program").

77.      Under the Naples Program, any investors who purchased a

minimum of $150,000 in OneJet Notes could avail themselves of private, chartered flights to Naples, Florida. The Maguires assured the Plaintiffs that the funds raised for the Naples Program would be kept separate and apart from OneJet's operating funds. This statement was false.

78.     Significantly, Jan Rea, who was a member of the Board of the County Airport Authority, purchased OneJet Notes to become a part of the Naples Club.

79.     Several of the Plaintiffs (and other investors) purchased OneJet Notes to become a part of the Naples Club.

80.     However, despite the representation of the Maguires, members of the Naples Club were often unable to get the flights that they were promised when they invested in the Notes.

81.     On December 11, 2018, Robert Lewis sent a text message to James V. Sacco, stating that: "The Naples operation was a sham from day 1."

**OneJet announces plan to acquire Ultimate JetCharters:**

82.     On May 1, 2018, OneJet announced plans to acquire Ultimate JetCharters, LLC (Ultimate), a small airline specializing in public charter flights, with headquarters in North Canton, Ohio.

83.     At or about the same time, OneJet entered into a charter contract agreement with Ultimate, under which Ultimate agreed to fly some of OneJet's established routes for a monthly fee.

84.     Matthew Maguire advised the Plaintiffs (and other investors and potential investors) that OneJet planned to close on the purchase of Ultimate in

early 2019, with $10 million dollars in "third party debt financing."

85.    On August 21, 2018, Rick Pawlak, the managing director of Ultimate, announced that the deal with OneJet was "dead." However, Maguire continued to misrepresent that OneJet would acquire Ultimate in the near future.

86.    In an email to the Plaintiffs (and other investors) dated August 30, 2018, Matthew Maguire continued to solicit additional funds for the acquisition of Ultimate. As stated by Maguire:

> Ultimate today generates approximately $36M in annualized revenue, $4.4M EDITBA. The current negotiated price is $12.5M. For this, OneJet and its investors will wholly own UJC, including its FAA certificate, ten existing 30 seat planes, and all other operating infrastructure. We will plan to operate all services under the Ultimate brand moving forward.

However, Maguire's pitch for additional funds to acquire Ultimate failed to mention that Ultimate had already rejected OneJet's offer, or that OneJet had already decided to cease all operations.

87.    In an email to the Plaintiffs (and other investors) dated September 8, 2018, Matthew Maguire solicited the Plaintiffs to invest additional funds "to participate in the Ultimate acquisition investment." McGuire concealed the fact that OneJet's proposal to acquire Ultimate had been rejected several weeks earlier.

**OneJet defaults on its obligations to vendors:**

88.    By June of 2018, OneJet began to default on its obligations to vendors, suppliers and others.

89.    On or about June 28, 2018, AVI Sales & Leasing Services, LLC

(AVI) repossessed one of the jets that it had leased to OneJet.

90.     The Defendants concealed AVI's action from the Plaintiffs and other prospective investors.

91.     In fact, the Defendants continued to offer the OneJet securities for sale to investors after the repossession of OneJet's aircraft by AVI.

**OneJet defaults on its obligations to the Airport Authority:**

92.     At or about the same time, OneJet began to cancel scheduled flights from Pittsburgh International Airport.

93.     OneJet also defaulted under its agreements with the Airport Authority.

94.     Among other things:

A.      OneJet failed to timely pay airline fees and charges as well as other obligations due to the Airport Authority.

B.      OneJet failed to establish air routes to at least 10 destinations as required by the Economic Development Distribution Program. In fact, as of August of 2018, OneJet was only providing 2 routes from the Airport.

95.     As a result of OneJet's breaches, on August 10, 2018, the Airport Authority filed a Complaint in Civil Action against OneJet in the Court of Common Pleas of Allegheny County at GD-18-010368.

96.     In its Complaint, the Airport Authority is seeking the return of all or part of the $1,000,000 grant extended to OneJet pursuant to the Economic Development Distribution Agreement.

**OneJet fails to pay its taxes:**

97.    Unknown to the Plaintiffs, OneJet also failed to pay the IRS taxes that were due, which failure began in the third quarter of 2015 and which continues to the present date.

98.    As a result, on August 14, 2018, the IRS filed a Notice of Federal Tax Lien with the Department of Court Records of Allegheny County at FTL-18-603.

**OneJet ceases operations:**

99.    In early August of 2018, OneJet sold two of its Hawker Jets to "cover immediate operating expenses."

100.    In late August of 2018, OneJet completely suspended its operations at Pittsburgh International Airport.

101.    In a press release posted on OneJet's website on August 29, 2018, OneJet announced that:

> OneJet will be transitioning its operations to a fully-owned 135 operating certificate over the next 8 weeks. During this transition, we will be suspending scheduled services on current routes. Please accept our apologies for any inconvenience caused by this disruption; the result of this transition will be a more robust and reliable operation for our customers from the fourth quarter forward.

102.    By his email dated September 27, 2018, Matthew Maguire advised OneJet investors that:

> All resources have been exhausted to sustain any further efforts under OneJet and have been for the past several weeks. Subject to any changes in situation, OneJet as a corporate entity will be wound up. As of Friday, all contractor and other employment

agreements have been terminated due to lack of funds.

103.    As a result, the OneJet securities purchased by the Plaintiffs are now totally worthless.

104.    At the same time, the Maguires were able to burn through in excess of $60 million dollars in investors' funds in less than 18 months, with little or no explanation of how the money was spent.

105.    By all accounts, Matthew Maguire paid himself excessively and improperly used OneJet funds to finance his lavish personal expenses.

**The Involuntary Chapter 7 Petition**

106.    On October 17, 2018, three of OneJet's creditors filed an Involuntary Chapter 7 Petition against OneJet in the United States Bankruptcy Court for the Western District of Pennsylvania at No. 18-24070-GLT.

107.    The Involuntary Chapter 7 Petition against OneJet is pending before this Honorable Court.

108.    On November 13, 2018, the Honorable Gregory L. Taddonio found that OneJet had failed to timely respond to the Involuntary Chapter 7 Petition. Based upon the same, Judge Taddonio granted the involuntary petition and issued an Order for Relief under Chapter 7 of the Bankruptcy Code.

109.    On November 13, 2018, Rosemary C. Crawford was appointed as the Interim Trustee for OneJet.

110.    On the same date, Judge Taddonio designated Matthew Maguire as the "principal operating officer" of OneJet, and directed Matthew Maguire to file Schedules and a Statement of Financial Affairs on behalf of OneJet.

111.     The 341 Meeting of Creditors was held on January 14, 2019. At the
Meeting, Matthew Maguire testified that:

A.     The information contained in OneJet's schedules is correct.

B.     He did not know if OneJet filed all required tax returns.

C.     He was the only person on OneJet's Board of Directors.

D.     OneJet *never* owned any airplanes.

E.     He did not know how much money had been invested in OneJet.

F.     OneJet's only officers were Matthew and Patrick Maguire.

G.     He did not recall if OneJet ever had any board meetings.

H.     Patrick Maguire, through one of his entities, had invested
approximately $10.5 million in OneJet.

I.     Matthew Maguire was the sole signatory for OneJet's bank
accounts.

J.     He worked with Robert Campbell and Melvin Pirchesky to solicit
investors for OneJet.

K.     Mr. Pirchesky is a shareholder of OneJet.

L.     OneJet never employed any pilots.

M.     OneJet never employed any maintenance workers.

N.     OneJet leased a plane from OneJet Aircraft Holdings, LLC, a
company which is owned by Patrick Maguire.

**COUNT 1: Plaintiffs v. Matthew Maguire and Patrick Maguire**

*Violation of Section 501 of the*
*Pennsylvania Securities Act: 70 P.S. §1-501*

112.   The plaintiffs hereby incorporate the averments of Paragraphs 1 through 111 above by reference as if set forth in their entirety.

113.   Section 1-501 of the Pennsylvania Securities Act, *70 P.S. 1-501,* provides a private right of action for the violation of the Pennsylvania Securities Act. Thus, *70 P.S. 1-501* provides in relevant part, that:

> **Any person** who . . . (ii) offers or sells a security in violation of sections 401, 403, 404 *or otherwise* by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading to the purchaser not knowing of the untruth or omission, and **who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person** purchasing the security from him. . . .

(emphasis added).

114.   In *Kronenberg v. Katz,* 2004 Del. Ch. LEXIS 77, 872 A. 2d 568 (2004), the Delaware Chancery Court held that Section 1-501 creates a stand-alone cause of action for *any violation* of the Act. The Court specifically held that the sale of securities, by means of misstatements or omissions, constituted a stand-alone claim under Section 1-501. As stated by the Court:

> Section 1-501(a) of the Pennsylvania Act is modeled on § 410(a)(2) of the Uniform Act, which is in turn modeled on § 12(2) of the 1933 Act. Importantly, § 1-501(a) is written in the disjunctive: It not only provides a civil remedy against "any person who . . . offers or sells a security in violation of section[] 401," it also clearly provides that any person who "otherwise"

> violates the terms of § 1-501(a) itself "shall be liable to
> the person purchasing the security from him." Thus,
> whether or not a 10b-5-like remedy exists for violations
> of § 1-401 -- a point on which courts have reached
> conflicting conclusions despite the plain language of
> § 1-501(a) stating just that -- § 1-501(a) expressly
> creates a separate cause of action indirectly modeled
> on § 12(2) of the 1933 Act.

See also, *In re Donald J. Trump Casino Sec. Litigation.,* 7 F.3d 357 (3d Cir.

1993).

115.    In *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan

Securities, LLC,* 19 Pa. D. & C. 5th 32 (Allegh. 2010), the Honorable R. Stanton

Wettick, Jr. of the Court of Common Pleas of Allegheny County held that the

phrase "or otherwise," was included to reach ***all sales*** of securities induced by a

misrepresentation or omission:

> The statutory text of 1-501 expressly imposes
> liability on a person who 'otherwise' sells a
> security by means of a misleading statement
> or omission.

116.    As indicated by the express wording of the Act, a seller of securities

can be held liable for both positive misstatements as well as the failure to

disclose material facts. See, *Dalicandro v. Legalguard, Inc.,* 2004 U.S, Dist.

LEXIS 2253 (E.D. Pa. 2004) (and cases cited therein). As stated by the Court:

> … the federal and Pennsylvania securities laws
> impose a duty on companies to *publicly disclose
> material information* regarding their financial well-
> being, or lack thereof….
>
> Pursuant to both Section 10 (b) of the federal
> law and Section 401 of the Pennsylvania law,
> information becomes "material" when there is
> a substantial likelihood that the disclosure of
> the omitted fact would have been viewed by

> the reasonable investor as having significantly
> altered the total mix of information made
> available.

See also, *Matrix Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 131 S. Ct. 1309, 179

L.Ed. 2d 398 (2011).

117.    In addition, projections and forecasts of future profitability are

actionable under the Act. There is considerable authority that projections,

forecasts and opinions are actionable as misleading in a variety of

circumstances. *See First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314

(5th Cir. 1977), *cert. denied*, 435 U.S. 952, 55 L. Ed. 2d 802, 98 S. Ct. 1580

(1978); *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 867 (9th Cir.

1977); *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489-90 (9th Cir. 1974);

*SEC v. Okin*, 137 F.2d 862, 864 (2d Cir. 1943); R. Jennings & H. Marsh,

*Securities Regulation* 880-85 (5th ed. 1982); Jacobs, *What is a Misleading*

*Statement or Omission under Rule 10b-5*?, 42 Fordham L. Rev. 243, 279-87

(1973). *See also Sharp v. Coopers & Lybrand*, 649 F.2d 175, 184-85 (3d Cir.

1981), *cert. denied*, 455 U.S. 938, 71 L. Ed. 2d 648, 102 S. Ct. 1427 (1982).

118.    The express purpose of Section 501 of the Act is to "prohibit false

statements and omissions of material fact in connection with the sale of

securities." *Wen v. Willis,* 117 F. Supp. 3d 673 (E.D. Pa. 2015).

119.    A plaintiff asserting a claim under Section 501 need not establish

"scienter" on the part of the defendant. This is because *70 P.S. 1-501 (a)* places

an affirmative burden on the person who makes misleading statements to prove

that he could not have known of their falsity through the exercise of reasonable

care. See, *Kronenberg v. Katz,* 2004 Del. Ch. LEXIS 77, 872 A.2d 568 (2004)

(applying Pennsylvania law). See also, *Brown v. Erie Compressor Co.,* 59 Erie

County L.J. (1976); *In re Donald J. Trump Casino Sec. Litigation.,* 7 F.3d 357 (3d

Cir. 1993).

120.   Similarly, a plaintiff asserting a claim under Section 501 need not

establish "reliance" upon the misleading statements or conduct of the defendant.

*Kronenberg v. Katz, supra.* See also, *Gilliland v. Hergert,* 2008 U.S. Dist. LEXIS

51421 (W.D. Pa. 2008), in which the U.S. District Court held that:

> … the Court agrees with the analysis in *Kronenberg*
> that the Pennsylvania Supreme Court would also
> recognize a stand-alone § 1-501 claim. The statutory
> text of § 1-501 expressly imposes liability on a person
> who "otherwise" sells a security by means of a
> misleading statement or omission.
>
> In sum, the Court agrees with the analysis set forth in
> *Kronenberg* and predicts that the Pennsylvania Supreme
> Court would recognize a distinct, separate cause of action
> under § 1-501 that does not require Plaintiffs to prove
> scienter or reliance, and requires Plaintiffs to demonstrate
> some causal relationship between the misrepresentation
> and their purchase, but not loss causation.

See also, *In re Donald J. Trump Casino Sec. Litigation.,* 7 F.3d 357 (3d Cir.

1993).

121.   In *Little v. Ressler Hardwoods & Flooring, Inc. (In re Ressler*

*Hardwoods & Flooring, Inc.)*, 427 B.R. 312 (M.D. Pa. 2010), the Chief Bankruptcy

Judge for the Middle District of Pennsylvania agreed with the holding in

*Kronenberg* that Section 1-501 shifts the burden of proof to the seller:

> This construction of the statute is supported
> by cases from jurisdictions with securities laws
> based on the USA. This model law places

> on the defendant the burden to demonstrate
> that in the exercise of reasonable care, the
> defendant could not have known the untrue
> or omitted information. *See Wicks v. O'Connell*,
> 89 Ore. App. 236, 748 P.2d 551, 553 (1988);
> *Kronenberg v. Katz*, 872 A.2d 568, 599
> (De. Ch. 2004).

See also, *Marram v. Kobrick Offshore Fund, Inc.*, 2004 Mass. LEXIS 411 (Mass. 2004):

> Thus, the act provides strong protections for a
> buyer who received misleading information
> from a seller of securities. While not imposing
> strict liability on the seller for untrue statements
> or omissions, it holds the seller to the heavy
> burden of proof "that he did not know,
> and in the exercise of reasonable care could
> not have known, of the untruth or omission."
> G. L. C. 110A, § 410 *(a)* (2). See J.C. Long,
> Blue Sky Law, *supra* at § 9:23, at 9-35
> (defendant held to "inverse negligence
> standard" that is "a very difficult defense to
> sustain").

122.     In the present case, the Maguires sold the securities of OneJet by means of both affirmative misrepresentations and omissions, as is more fully set forth above.   Accordingly, the Maguires are liable to the Plaintiffs pursuant to Section 501 of the Pennsylvania Securities Act.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendants for compensatory damages plus interest, costs of suit, statutory penalties, attorneys' fees and any other relief that is just and proper.

### COUNT 2: Plaintiffs v. Pirchesky, Campbell and
### Boustead Securities, LLC

***Violation of Sections 403 and 501 of the
Pennsylvania Securities Act: 70 P.S. §1-403 and 1-501***

123.    The plaintiffs hereby incorporate the averments of Paragraphs 1

through 122 above by reference as if set forth in their entirety.

124.    Section 1-403 of the Pennsylvania Securities Act makes it illegal for

a broker-dealer or agent to induce the sale of securities by means of any

manipulative, deceptive or fraudulent scheme or device. Thus, *70 P.S. 1-403*

provides that:

> No broker-dealer or agent shall effect any transaction
> in, or induce or attempt to induce the purchase or sale
> of, any security in this State by means of any manipulative,
> deceptive or other fraudulent scheme, device, or contrivance,
> fictitious quotation, or in violation of this act or any regulation
> or order hereunder.

125.    Similarly, Section 501 of the Act prohibits the use of false

statements or omissions of material fact in connection with the sale of securities.

126.    In addition, Section 501 provides a private cause of action against

broker-dealers or agents who violate Section 403. Thus, *70 P.S. 1-501* provides

in relevant part, that:

> **Any person** who . . . (ii) ***offers or sells a security in
> violation of sections*** 401***, 403***, 404 *or otherwise* by
> means of any untrue statement of a material fact or
> any omission…**shall be liable to the person**
> purchasing the security from him. . . .

(emphasis added).

127.    The Plaintiffs believe and therefore aver that Pirchesky, Campbell

and Boustead Securities (hereinafter the Boustead Defendants) engaged in the

use of false and misleading statements and omissions of material fact when they

offered the OneJet securities for sale to the Plaintiffs.

128.    Among other things, the Boustead Defendants:

A.      Misrepresented the financial viability of OneJet.

B.      Misrepresented the operating costs of OneJet, including its leasing

rates.

C.      Misrepresented OneJet's "burn rate."

D.      Advised the Plaintiffs that OneJet had a positive EBITDA.

E.      Advised the Plaintiffs that OneJet had full and complete financial
        records.

F.      Advised the Plaintiffs that their investments would be used to buy
        more planes (30 to 50 aircraft).

G.      Advised the Plaintiffs that the "Maguire family" (Matthew, Patrick
        and others) had invested in excess of $9,000,000 of their own
        money.

H.      Advised the Plaintiffs that OneJet had a talented and experienced
        Board of Directors.

I.      Advised the Plaintiffs that OneJet had "invested substantially
        (seven figures) in IT."

129.    The Boustead Defendants also sent inaccurate and misleading

financial statements and projections to the Plaintiffs and other potential investors.

130.    The Boustead Defendants knew or should have known that the

information that they provided to the Plaintiffs was false or misleading.

131.    In the alternative, the Boustead Defendants would have known that

such information was false or misleading if they had exercised reasonable care.

See, *70 P.S. 1-501 (a); Kronenberg v. Katz,* 2004 Del. Ch. LEXIS 77, 872 A.2d

568 (2004) (applying Pennsylvania law).

132.   The private cause of action under Section 501 clearly applies to both broker-dealers and agents. See *Fulton Bank, N.A. v. UBS Securities, LLC,* 2011 U.S. Dist. LEXIS 128820 (E.D. Pa. 2011); *Gilliland v. Hergert,* 2007 U.S. Dist. LEXIS 84508 (W.D. Pa. 2007); *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan Securities, LLC,* 19 Pa. D. & C. 5th 32 (Allegh. 2010); *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988); *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628 (3d Cir. 1989).

133.   Accordingly, Pirchesky, Campbell and Boustead Securities are liable to the Plaintiffs pursuant to *70 P.S. 1-403 and 1-501.*

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendants for compensatory damages plus interest, costs of suit, statutory penalties, attorneys' fees and any other relief that is just and proper.

**COUNT 3: Plaintiffs v. Matthew Maguire, Patrick Maguire, Pirchesky, Campbell, Boustead Securities, LLC**

***Violation of Section 503 of the Pennsylvania Securities Act: 70 P.S. §1-503***

134.   The plaintiffs hereby incorporate the averments of Paragraphs 1 through 133 above by reference as if set forth in their entirety.

135.   The Pennsylvania Securities Act provides for joint and several liability for all persons "who materially aid in an act or transaction" which constitutes a violation of the Act. Thus, *70 P.S. 1-503* provides in relevant part, that:

> Every affiliate of a person liable under section 501
> or 502, every partner, principal executive officer or
> director of such person, every person occupying a
> similar status or performing similar functions, every
> employee of such person who materially aids in the
> act or transaction constituting the violation, and every
> broker-dealer or agent who materially aids in the act
> or transaction constituting the violation, are also liable
> jointly and severally with and to the same extent as
> such person, unless the person liable hereunder
> proves that he did not know, and in the exercise of
> reasonable care could not have known, of the existence
> of the facts by reason of which the liability is alleged to
> exist.

136.    Matthew Maguire and Patrick Maguire materially aided in the violations of the Pennsylvania Securities Act by virtue of the material misstatements that they made to the Plaintiffs.

137.    The Boustead Defendants, by virtue of their positions as registered brokers under FINRA, materially aided in the sale of the OneJet securities to the Plaintiffs.

138.    The law is clear that the "aiding and abetting" cause of action under Section 503 applies to brokers and agents. See, *Jairett v. First Montauk Securities Corp.,* 153 F.Supp. 2d 562 (E.D. Pa. 2001); *Fox Int'l Rels. v. Fiserv Secs., Inc.*, 490 F. Supp. 2d 590 (E.D. Pa. 2007).  In *Gilliland v. Hergert,* 2007 U.S. Dist. LEXIS 84508 (W.D. Pa. 2007), the district court held that:

> Pursuant to the plain text of the statute, there is no
> requirement that Hergert be a "seller" to face
> liability under *Section 1-503.* It is sufficient for the
> factfinder to conclude that he was a "broker-dealer"
> or agent who materially aided in the act or transaction
> constituting the violation.

See also, *Batson v. Rim San Antonio Acquisition, LLC,* 2018 U.S. Dist. LEXIS

51576 (S.D. N.Y. 2018):

> Section 503 imposes liability on "every broker-dealer
> or agent who materially aids in the act or transaction
> constituting the violation," unless the individual "proves
> that he did not know, and in the exercise of reasonable
> care could not have known, of the existence of the facts
> by reason of which the liability is alleged to exist." 70
> Penn. Stat. § 1-503.

See also, *Touchstone Group, LLC v. Rink,* 913 F. Supp. 2d 1063 (D. Co. 2012)

(applying Pennsylvania law).

139.   Moreover, privity is not required for a 503 claim. Based upon the

same, the Boustead Defendants are liable to all Plaintiffs, including those

Plaintiffs who did not purchase directly from Boustead. See, *Jairett v. First*

*Montauk Securities Corp.,* 153 F.Supp. 2d 562 (E.D. Pa. 2001); *Sherter v. Ross*

*Fialkow Capital Partners, LLP*, 2013 Mass. Super. LEXIS 27 (2013); C*arroll v.*

*John Hancock Distributors., Inc.,* 1994 U.S. Dist. LEXIS 3077 (E.D. Pa. 1994).

140.   The Boustead Defendants were responsible for putting out material

falsehoods to the investing public and inducing sales of OneJet securities. Their

conduct induced sales both directly, i.e. people they brought into OneJet, and

indirectly, i.e. creating a sense among the public that OneJet was a legitimate

business operation.

141.   Matthew and Patrick Maguire engaged in a scheme to violate the

Pennsylvania Securities Act, and the Boustead Defendants either knew or should

have known of such scheme. Accordingly, as aiders and abettors of the

Maguires' scheme, the Boustead Defendants  are liable, either as co-

conspirators or aiders and abettors, for all damages sustained by any person

harmed by the scheme. See, *Newby v. Enron Corp. (In re Enron Corp. Sec.),* 623

F. Supp. 2d 798 (S.D. Tex. 2009); *Daniel Boone Area Sch. Dist. v. Lehman*

*Bros., Inc.*, 187 F. Supp. 2d 400 (W.D. Pa. 2002). See also, *Tunis Bros. Co. v.*

*Ford Motor Co.*, 763 F.2d 1482 (3d Cir.  1985); *In re Processed Egg Prods.*

*Antitrust Litig.,* 821 F. Supp. 2d 709 (E.D. Pa. 2011); *In re Lower Lake Erie Iron*

*Ore Antitrust Litigation,* 710 F.Supp.152 (E.D.Pa.1989).

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter

judgment in favor of the Plaintiffs and against the Defendants for compensatory

damages plus interest, costs of suit, statutory penalties, attorneys' fees and any

other relief that is just and proper.

### COUNT 4: Plaintiffs v. Matthew Maguire, Patrick Maguire
### Pirchesky, Campbell and Boustead Securities, LLC

#### *Aiding and abetting liability*
#### *under common law principles:*

142.    The plaintiffs hereby incorporate the averments of Paragraphs 1

through 141 above by reference as if set forth in their entirety.

143.    In addition to their liability under the Pennsylvania Securities Act,

Matthew Maguire, Patrick Maguire, Pirchesky, Campbell and Boustead Securities

are subject to "aiding and abetting liability" under common law principles.

144.    *Section 876* of the *Restatement (Second) of Torts* provides for

aiding and abetting liability as follows:

> For harm resulting to a third person from the tortious
> conduct of another, one is subject to liability if he:
>
> (a)    does a tortious act in concert with the other or

> pursuant to a common design with him, or
>
> (b)     knows that the other's conduct constitutes a
>          breach of duty and gives substantial assistance
>          or encouragement to the other to so conduct
>          himself, or
>
> (c)     gives substantial assistance to the other in
>          accomplishing a tortious result and his own
>          conduct, separately considered, constitutes
>          a breach of duty to the third person.

145.    In *Sovereign Bank v. Ganter,* 2006 Pa.Super. 338, 914 A.2d 415

(2006), the Superior Court adopted Section 876 as part of the common law of

Pennsylvania. As stated by the Court:

> Based upon the foregoing, we hold that concerted
> tortious action, as defined in *Section 876* of the
> *Restatement (Second) of Torts,* is a recognized
> civil cause of action under Pennsylvania law.

See also, *Koken v. Steinberg,* 2003 Pa. Commw. LEXIS 370, 825 A.2d 723

(2003).

146.    Several courts have employed Section 876 to find a stockbroker or

other agent liable, based upon aiding and abetting violations of the securities law.

In *Gilliland v. Hergert,* 2007 U.S. Dist. LEXIS 84508 (W.D. Pa. 2007), the Court

held that an attorney, who solicited investments for a company which he

represented, could be held liable under Section 876, if he provided "substantial

assistance" in the client's violation of the Pennsylvania Securities Act. The Court

reached a similar conclusion in *In re Enron Corporation Securities Litigation,* 490

F.Supp. 2d. 784 (S.D. Tex. 2007). As stated by the Court:

> The complaint … demonstrates that Merrill Lynch
> gave substantial assistance to Enron in cooking its
> books and its SEC filed reports… The complaint

> states facts that suggest Merrill Lynch acted with intent to deceive investors like Plaintiffs **or acted with reckless disregard regarding Enron's alleged untruthful or illegal activity.**

In *Retirement Program for Employees of the Town of Fairfield v. Madoff,* 2011 Conn. Super. LEXIS 3318 (2011), the Superior Court of Connecticut held that:

> … the aider or abettor must materially assist the primary violator in the offer or sale of the securities and in the violation by which the primary violator accomplished the offer or sale, which in this case is the selling of a security by means of an untrue statement of material fact…

In *Silvercreek Management v. Citigroup, Inc.* 248 F.Supp. 3d 428 (S.D. N.Y. 2017), the Court held that substantial assistance "can take many forms," such as "executing transactions" or helping a firm to present an "enhanced financial picture to others." *In re Enron Corp.*, 511 F. Supp. 2d 742, 806 (S.D. Tex. 2005). In *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 514 N.E. 2d 116 (1987), the Court held that a broker who "distributed fictitious financial projections" was liable for aiding and abetting securities fraud.  See also, *Sherter v. Ross Fialko Capital Partners, LLP,* 31 Mass. L. Rep. 98, 2013 Mass. Super. LEXIS 27 (2013) and cases cited therein.

147.   As set forth above, the Boustead Defendants provided substantial assistance to the Maguires' scheme to violate the Pennsylvania Securities Act.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendants for compensatory damages, plus interest, costs of suit and any other relief that is just and proper.

## COUNT 5: Plaintiffs v. Robert Lewis:

### *Violation of Sections 501 and 503 of the*
### *Pennsylvania Securities Act: 70 P.S. §1-501 and 1-503*

148.    The plaintiffs hereby incorporate the averments of Paragraphs 1

through 147 above by reference as if set forth in their entirety.

149.    Robert Lewis (Lewis) is a shareholder in OneJet.

150.    Lewis sat on the Board of the Allegheny County Airport Authority

(the Airport Authority).

151.    On June 10, 2016, OneJet entered into an Economic Development

Distribution Program Agreement with the Airport Authority.

152.    Pursuant to the Economic Development Distribution Program

Agreement, OneJet received a grant from the Airport Authority in the amount of

$1,000,000.

153.    The Plaintiffs believe and therefore aver that Lewis used his

position on the Board of the Airport Authority to influence the Airport Authority's

grant to OneJet.

154.    In addition, Lewis helped to negotiate a $1.5 million dollar loan from

the Allegheny County Regional Development Authority. In fact, Lewis personally

guaranteed OneJet's repayment to the Authority.

155.    Lewis touted the fact that both the Airport Authority and the

Allegheny County Regional Development Authority had "approved" OneJet's

operations, and Lewis used such approvals as a marketing tool to solicit

investments in OneJet.

156.    Lewis actively solicited investors for OneJet, including many of the

Plaintiffs in this case.

157.   Lewis provided potential investors with a business card that stated he was a Director of OneJet.

158.   Lewis conducted meetings at his office in an attempt to solicit investors in OneJet.

159.   Lewis engaged in phone calls with many of the Plaintiffs in an attempt to solicit their investments in OneJet.

160.   Lewis played a key role in soliciting investors in the Pittsburgh area:

A.   On October 17, 2016, Matthew Maguire sent an email to James Sacco stating, "Bob [Lewis] and I are going to place an additional $500k in equity locally. Let's think about who else we want partnered with us on this."

B.   In an email to John W. Paul dated November 9, 2016, Matthew Maguire stated that "I was pleased to hear from Bobby [Lewis] yesterday that you'll be joining the team…"

C.   In an email to James Sacco dated May 30, 2017, Matthew Maguire stated that "I further want to offer a special word of thanks to Bob Lewis for leading the charge last year to initiate and lead the private investment syndicate – well done and thank you, Bob."

161.   In addition, Lewis held meetings at his office with Matthew Maguire and potential investors for the purpose of soliciting investments in OneJet. One such meeting took place on December 12, 2017 with Robert Vadas, where Matthew Maguire and Robert Lewis solicited Vadas' investments in OneJet.

162.   Lewis asked other OneJet investors to assist him in promoting and

soliciting investments for OneJet. On September 15, 2016, Lewis sent a text message to James Sacco, asking, "Are you going to help me promote this concept? Money is one thing but we need market savvy individuals."

163.    The purpose of Lewis' solicitations was motivated, at least in part, by Lewis' desire to serve his own financial and economic interests.

164.    As such, Lewis is a "seller" for purposes of Sections 501 and 503 of the Pennsylvania Securities Act. See, *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988); *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628 (3d Cir. 1989).

165.    Lewis employed false and/or misleading statements, including misrepresentations regarding OneJet's financial viability, to solicit investments in OneJet.

166.    The Plaintiffs believe and therefore aver that Lewis was well aware that OneJet was not a financially viable entity and that the Maguires were engaged in violations of the Pennsylvania Securities Act. However, Lewis failed to disclose his knowledge to the Plaintiffs.

167.    In fact, Lewis continued to present himself as a Director and solicit investments, despite his concerns regarding Matthew Maguire and the financial viability of OneJet:

A.      On March 15, 2018, Lewis sent a text messages to James Sacco. In reference to Matthew Maguire, Lewis stated, "I have been trying to get this guy straight for a year."

B.      On March 30, 2018, Lewis sent a text message to James Sacco

that said, "Is it agreed that we need the numbers to decide what our options are and if we have any other liability [than] lost money?"

C.     On August 9, 2018, Lewis sent a text message to James Sacco. Among other things, the text messages stated: (1) "Jimmie the airport is filing on One Jet today for lack of payment;" (2) "I tried to call you a few times. There has been a lot of misinformation on OneJet. I just wanted to let you know before it's out. Please call me if you have time;" (3) "OneJet Matt [Maguire] is going to have some real problems in the next 6 weeks."

D.     On December 11, 2018, Lewis sent text messages to James Sacco which stated: (1) "I told you Jim that [Matthew Maguire] was not meeting his debt obligation at the airport;" (2)  "We were worried about [Matthew Maguire] at the end of [20]16. I tried to get everybody to take over operations but no one wanted to be aggressive."

168.   Significantly, in a text message to James Sacco dated December 11, 2018, Lewis stated that *"The Naples operation was a sham from day 1."*

169.   Based upon all of the above, Lewis is liable to the Plaintiffs pursuant to Sections 501 and 503 of the Pennsylvania Securities Act.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendant for compensatory damages, plus interest, costs of suit, statutory penalties, attorneys' fees and any other relief that is just and proper.

Case 19-02134-GLT   Doc 216   Filed 10/28/19   Entered 10/28/19 12:11:10   Desc Main
Document     Page 126 of 135

**COUNT 6: Plaintiffs v. Robert Lewis:**

***Aiding and abetting liability
under common law principles:***

170.    The plaintiffs hereby incorporate the averments of Paragraphs 1 through 165 above by reference as if set forth in their entirety.

171.    In the alternative, Lewis' actions, as set forth in Count 5 above, subject him to common law aiding and abetting liability under *Section 876* of the *Restatement (Second) of Torts.*

172.    By soliciting investors for OneJet, Lewis clearly provided substantial assistance to the Maguires' scheme to violate the Pennsylvania Securities Act.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendant for compensatory damages, plus interest, costs of suit and any other relief that is just and proper.

**COUNT 7: Plaintiffs v. Robert Lewis and David Minnotte:**

***Aiding and abetting liability
under common law principles:***

173.    The plaintiffs hereby incorporate the averments of Paragraphs 1 through 172 above by reference as if set forth in their entirety.

174.    Both Lewis and David Minnotte (Minnotte) are shareholders in OneJet.

175.    Lewis and Minnotte are both on the Board of the Airport Authority.

176.    On June 10, 2016, OneJet entered into an Economic Development Distribution Program Agreement with the Airport Authority.

177.    Pursuant to the Economic Development Distribution Program

Agreement, OneJet received a grant from the Airport Authority in the amount of $1,000,000.

178.   The Plaintiffs believe and therefore aver that Lewis and Minnotte used their positions on the Board of the Airport Authority to influence the Authority's grant to OneJet.

179.   Lewis and Minnotte touted the fact that the Airport Authority had "approved" OneJet's operations, and Lewis and Minnotte used such approval as a marketing tool to solicit investments in OneJet.

180.   Matthew Maguire and Melvin Pirchesky publicized the investments of Lewis and Minnotte as an inducement for others to invest in OneJet. For example, on July 21, 2017, Melvin Pirchesky sent an email to Eugene K. Connors for the purpose of soliciting an investment in OneJet. Among others, the email included the following statement, "Dave [Minnotte] made a significant investment several months ago and a like amount a few months ago." The purpose of the above statement was to induce Mr. Connors to invest in OneJet based on Mr. Minnotte's endorsement and investment in OneJet. Significantly, Minnotte's participation was a substantial factor in Connors' decision to invest in OneJet.

181.   Similarly, on February 27, 2018, Melvin Pirchesky sent an email to John Tippins containing a list of equity investors in OneJet. Among others, the list highlighted the investments of both Lewis and Minnotte.

182.   In an email to James Restivo dated July 14, 2017, Melvin Pirchesky touted the significant investments of Lewis and Minnotte as an inducement for

Mr. Restivo to make a similar investment.

183.    Matthew Maguire advised potential investors that Lewis and Minnotte, who were both on the Board of the Airport Authority, had invested in OneJet and that they could secure favorable treatment for OneJet with the Airport Authority.

184.    In solicitation emails sent to potential investors, Melvin Pirchesky asserted that the participation of well-known local investors, such as "Jim Rohr, Bobby Lewis and Dave Minnotte," virtually guaranteed success in the Pittsburgh market.

185.    In a text message to James Sacco dated September 7, 2016, Robert Lewis stated that "Since I invested 500, I would like to be able to lease a few more planes. Every 50 gets a lease for 6 months. Both Dave [Minnotte] and I are working on this to make sure it's a success for us."

186.    The Plaintiffs believe and therefore aver that both Lewis and Minnotte were aware, or should have been aware, that the Maguires were involved in an investment scheme to mislead investors, but nevertheless allowed their names to be used to promote the scheme.

187.    The involvement of Lewis and Minnotte on the Airport Authority Board served as a significant and material endorsement of OneJet in the eyes of the Plaintiffs

188.    Based upon the same, Lewis and Minnotte are liable to the Plaintiffs for aiding and abetting the Maguires' investment scheme.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendants for compensatory damages, plus interest, costs of suit and any other relief that is just and proper.

### COUNT 8: Plaintiffs v. Pirchesky, Campbell and Boustead Securities, LLC

### *Negligent Misrepresentation*

189.   The plaintiffs hereby incorporate the averments of Paragraphs 1 through 188 above by reference as if set forth in their entirety.

190.   Section *552 of the Restatement (Second) of Torts,* provides in relevant part, that:

> One, who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

191.   This tort, commonly known as negligent misrepresentation, has been adopted as part of the common law in the Commonwealth of Pennsylvania. See, *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555 (1999); *Bilt-Rite Contractors, Inc. v. Architectural Studio,* 581 Pa. 454, 866 A.2d 270 (2005).

192.   The provider of the information does not have to know that his statements are false. It is actionable if the provider fails to make a reasonable investigation to determine the truth of his statements.  See, *Bortz, supra:*

> … the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words.

See also, *Gongloff Contracting, LLC v. Robert Kimball & Associates,* 2015
Pa.Super. 149, 119 A.3d 1070 (2015).

193.    In addition, a provider of information will be held liable to those who
rely upon it, even where there is no privity of contract between the parties. See,
*Bilt-Rite Contractors, Inc. v. Architectural Studio,* 581 Pa. 454, 866 A.2d 270
(2005) and cases cited therein. As stated by the Supreme Court of Pennsylvania:

> *Section 552* imposes a duty of reasonable care
> upon the supplier of information for use by others.
> Both on its face and as a matter of logic, *Section
> 552* negates any requirement of privity…

See also, *Rich v. Brandywine Insurance Advisors, LLC,* 2017 U.S. Dist. LEXIS
34404 (E.D. Pa. 2017).

194.    Several courts have employed *Section 552* to hold a seller of
securities liable when he fails to conduct proper due diligence concerning a
company's financial integrity. See, *Gilliland v. Hergert,* 2007 U.S. Dist. LEXIS
84508 (W.D. Pa. 2007); *Kronenberg v. Katz,* 2004 Del. Ch. LEXIS 77, 872 A.2d
568 (2004) (applying Pennsylvania law); *In re Enron Corporation Securities,* 235
F.Supp. 2d. 549 (S.D. Tex. 2002).

195.    The supplier of information need not know the specific identity of
those parties that rely on the information, only that the supplier is aware that such
persons exist. See, *Bilt-Rite*, supra. Thus, Plaintiffs are not required to plead (or
prove) that the Boustead Defendants knew the identity of each specific Plaintiff.
Rather, under *Bilt-Rite*, it is enough that the Boustead Defendants knew that
such persons existed and would rely on the information distributed by the
Boustead Defendants.

196.   Boustead, through its agents Pirchesky and Campbell, was in the business of securing investors and investment capital for OneJet.

197.   The purpose of Boustead's distribution of material misstatements regarding OneJet, was to solicit investors.

198.   Further, Boustead and its agents, Pirchesky and Campbell, received Finder's Fees for all OneJet securities that they sold.

199.   As a result, the Boustead Defendants had a duty of reasonable care to insure that the statements regarding OneJet were accurate and correct.

200.   The Boustead Defendants breached their duty of care in obtaining or communicating the information regarding OneJet.

201.   Accordingly, the Boustead Defendants are liable to the Plaintiffs for negligent misrepresentation.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in favor of the Plaintiffs and against the Defendants for compensatory damages, plus interest, costs of suit and any other relief that is just and proper.

Respectfully Submitted,

_/s/ Robert O Lampl_____
ROBERT O LAMPL
PA I.D. #19809

JAMES R. COONEY
PA I.D. #32706

DAVID L. FUCHS
PA I.D. #205694

RYAN J. COONEY
PA I.D. #319213

SY O. LAMPL
PA I.D. #324741

Benedum Trees Building
223 Fourth Avenue
Fourth Floor
Pittsburgh, PA  15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)

Attorneys for the Plaintiffs

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | **Bankruptcy No. 18-24070-GLT** |
| **ONEJET, INC.,** | **Adversary No. 19-02134-GLT** |
| **Debtor.** | |
| _____ | **Related to Document Numbers 1 and 201** |
| **WOODY PARTNERS et al,** | |
| **Plaintiffs,** | |
| **v.** | |
| **MATTHEW R. MAGUIRE, PATRICK MAGUIRE, BOUSTEAD SECURITIES, LLC, MELVIN PIRCHESKY, ROBERT CAMPBELL, ROBERT LEWIS and DAVID MINNOTTE,** | |
| **Defendants.** | |

## <u>CERTIFICATE OF SERVICE</u>

I, Robert O Lampl, hereby certify that on the 28th day of October, 2019, I

served a true and correct copy of the within **Amended Complaint** upon Counsel

for the Defendants, by E-mail, addressed as follows:

Brian W. Bisignani
John N. Joseph
Yune D. Emeritz
Post & Schell, P.C.
1869 Charter Lane, Suite 102
Lancaster, PA 17601
*BBisignani@postschell.com*
*jjoseph@postschell.com*
*yemeritz@postschell.com*

(Counsel for Matthew R. Maguire and Patrick Maguire)

Keith E. Whitson
Stephanie A. Short
Schnader Harrison Segal & Lewis, LLP
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222
kwhitson@schnader.com
sshort@schnader.com

(Counsel for David Minnotte)

Christopher P. Parrington
Andrew R. Shedlock
Kutak Rock, LLP
1760 Market Street
Suite 1100
Philadelphia, PA 19103
Christopher.Parrington@kutakrock.com
Andrew.Shedlock@kutakrock.com

Jason L. Ott
Dickie, McCamey & Chilcote, P.C.
Two PPG Place
Suite 400
Pittsburgh, PA 15222
jott@dmclaw.com

(Counsel for Boustead Securities, LLC and Robert Campbell)

Patrick K. Cavanaugh
Zachary N. Gordon
Del Sole, Cavanaugh & Stroyd
Three PPG Place, Suite 600
Pittsburgh, PA 15222
pcavanaugh@dsclaw.com
zgordon@dsclaw.com

(Counsel for Robert Lewis)

Gerald J. Stubenhofer, Jr.
Emma R. Donahey
George W. Fitting
McGuire Woods
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
*gstubenhofer@mcguirewoods.com*
*edonahey@mcguirewoods.com*
*gfitting@mcguirewoods.com*

(Counsel for Melvin Pirchesky)


Date:  October 28, 2019                    */s/ Robert O Lampl*
                                           ROBERT O LAMPL
                                           PA I.D. #19809
                                           JAMES R. COONEY
                                           PA I.D. #32706
                                           DAVID L. FUCHS
                                           PA I.D. #205694
                                           RYAN J. COONEY
                                           PA I.D. #319213
                                           SY O. LAMPL
                                           PA I.D. #324741
                                           223 Fourth Avenue, 4th Fl.
                                           Pittsburgh, PA  15222
                                           (412) 392-0330 (phone)
                                           (412) 392-0335 (facsimile)
                                           Email:  rlampl@lampllaw.com