FILED
5/22/20 1:12 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | : Case No. 18-24070-GLT |
| | : |
| **ONEJET, INC.,** | : Chapter 7 |
| | : |
| *Debtor* | : |
| | : |
| **WOODY PARTNERS**, *et al.,* | : Adv. No. 19-02134-GLT |
| | : |
| *Plaintiffs,* | : Related to Dkt. Nos. 239, 244, 263, 265, |
| | : 267, 269 |
| v. | : |
| | : |
| **MATTHEW R. MAGUIRE**, *et al.,* | : |
| | : |
| *Defendants.* | : |
| | : |

**MEMORANDUM OPINION**

Plaintiffs, Woody Partners, *et al.*, filed an *Amended Complaint* asserting eight separate causes of action against seven defendants arising out of the marketing and sale of securities in OneJet, Inc., a defunct regional air transportation provider.[1]  The Defendants, Matthew and Patrick Maguire, Boustead Securities, LLC, Robert Campbell, Melvin Pirchesky, Robert Lewis, and David Minnotte, have now brought six motions to dismiss the *Amended Complaint* between them (collectively, the "Motions").[2]  Plaintiffs oppose each of the motions in

---

[1]   *Amended Complaint* at Dkt. No. 216.

[2]   The Motions to Dismiss include:  (a) *David Minnotte's Motion to Dismiss the Amended Complaint* at Dkt. No. 239; (b) *Notice of Motion and Motion to Dismiss* filed by Defendants Boustead Securities, LLC and Robert Campbell at Dkt. No. 244; (c) *Defendant Melvin Pirchesky's Motion to Dismiss the Plaintiff's Amended Complaint* at Dkt. No. 263; (d) *Motion to Dismiss* filed by Defendant Robert Lewis Dkt. No. 265; (e) *Defendant Patrick Maguire's Motion to Dismiss Plaintiffs Woody Partners, et al.'s Amended Complaint* at Dkt. No. 267; and (f) *Defendant Matthew Maguire's Motion to Dismiss Plaintiffs Woody Partners, et al.'s Amended Complaint* at Dkt. No. 269.

a consolidated brief.[3]  After conducting a hearing on this matter, the Court is now prepared to

issue a written ruling on the Motions solely for the benefit of the parties.

## I.    <u>BACKGROUND</u>[4]

OneJet was a Pittsburgh-based air transportation business formed by Matthew

Maguire and his father, the late Patrick Maguire, to provide nonstop air service to regional

markets.[5]  With Matthew Maguire as chief executive officer, OneJet began flight operations in

April 2015.[6]  Over three years later, OneJet shuttered its business.[7]  After several creditors

commenced an involuntary bankruptcy proceeding, this Court entered an order for relief against

OneJet under chapter 7 of the Bankruptcy Code.[8]  A chapter 7 trustee is now liquidating its

remaining assets.

The Plaintiffs are a collection of 64 investors who separately acquired over

$13,000,000 in OneJet securities in the three years before its demise.[9]  They commenced this

action by filing a *Complaint* in the Court of Common Pleas of Allegheny County, Pennsylvania

---

[3]     *Brief in Opposition to [the] Motions to Dismiss Amended Complaint* at Dkt. No. 300 ("Plaintiffs' Brief in Opposition").

[4]     Except where otherwise noted, all facts referenced in this *Memorandum Opinion* are taken from the averments of the *Amended Complaint* which, for the purpose of adjudicating the Motions, are assumed to be true.

[5]     <u>See</u> *Amended Complaint* at ¶¶ 17-19; *Suggestion of Death Upon the Record Pursuant to Federal Rule of Bankruptcy Procedure 7025 and Federal Rule of Civil Procedure 25(a)* at Dkt. No. 322.  The Estate of Patrick Maguire has since been substituted as a party defendant in place of Patrick Maguire.  Dkt. No. 342.

[6]     <u>See</u> *Statement of Financial Affairs*, Case No. 18-24070, Dkt. No. 60 at 85; *Amended Complaint* at ¶ 20.

[7]     <u>See</u> *Amended Complaint* at ¶ 102.

[8]     <u>See</u> Case No. 18-24070-GLT, Dkt. No. 27.  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*  All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[9]     The *Amended Complaint* references 59 separate plaintiff groupings, with five spouses or significant others.

(the "State Court") alleging violations of Pennsylvania securities laws and asserting common law claims for negligent misrepresentation and aiding and abetting violations of state securities laws against Matthew and Patrick Maguire (together, the "Maguires"); Melvin Pirchesky, Robert Campbell, and Boustead Securities, LLC (together, the "Boustead Defendants"); Robert Lewis, and David Minnotte.[10]

Plaintiffs contend that while seeking public investment in OneJet, the Maguires embarked on a scheme to violate the Pennsylvania Securities Act of 1972, 70 Pa. Stat. Ann. § 1-101, *et seq* (the "PSA"), by making a series of false statements and misrepresentations to induce investors to purchase OneJet securities.  The Maguires allegedly misrepresented the size of their personal investment in OneJet, its cash flow "burn rate," the number of planes in its fleet, and the composition of its board of directors and management team.[11]  Plaintiffs also accuse the Maguires of circulating OneJet financial statements that were "simply made up."[12]

To assist their efforts to raise investment capital, the Maguires engaged Boustead Securities, LLC ("Boustead") in February 2017.[13]  Boustead is a broker-dealer (as that term is defined by the PSA) registered with the Financial Industry Regulatory Authority ("FINRA").[14]  Melvin Pirchesky and Robert Campbell marketed and sold OneJet securities as agents of Boustead.[15]  They allegedly repeated many of the Maguires' misrepresentations while assuring

---

[10]    *Amended Complaint* at ¶ 1.

[11]    Id. at ¶¶ 45, 47.

[12]    Id. at ¶ 47.

[13]    Id. at ¶ 50.

[14]    Id. at ¶¶ 10, 52; see also 70 P.S. § 1-102(e).

[15]    See *Amended Complaint* at ¶¶ 11, 12; see also 70 P.S. § 1-102(c).

investors that OneJet's financial information was vetted for accuracy.[16]  Plaintiffs also claim the

Boustead Defendants projected a false sense of legitimacy to OneJet's operations by suggesting,

among other things, that Campbell was an aviation expert and that OneJet's financial information

comported with FINRA standards.[17]  Because Campbell and Pirchesky are not alleged to have

acted outside the scope of their agency, all claims against the pair are imputed to Boustead.

According to the *Amended Complaint*, the Boustead Defendants solicited investments from 28

plaintiffs (together, the "Broker Plaintiffs") and sold securities to at least 26 of them.[18]  The

remaining 36 plaintiffs (collectively, the "Non-Broker Plaintiffs") did not have any dealings with

the Boustead Defendants and do not claim to have received any information or materials

produced by them.[19]

---

[16]    *Amended Complaint* at ¶¶ 56-67.

[17]    Id. at ¶¶ 41(10(D)(2))), (14(D)), 54, 61-62.

[18]    See *Notice Of Motion and Motion to Dismiss* at 3; see also *Amended Complaint* at ¶ 11.  The "Broker
Plaintiffs" are: Woody Partners (*Amended Complaint* at ¶ 7(1)); Aloe Brothers, LLC (Id. at ¶ 7(2)); David
Aloe (Id. at ¶¶ 7(3), 41(3)); Kevin Altomari (Id. at ¶ 7(4)); Robert Auray, Jr. and Marion Auray (Id. at ¶
7(5)); Blair Oak Investments, LP (Id. at ¶ 7(10)); Eugene K. Connors and Tina Houmis (Id. at ¶ 7(13));
Andrew J. Constantakis (Id. at ¶ 7(14)); Nicholas P. Constantakis and Veronica Constantakis (Id. at ¶
7(15)); Flighthawk, LLC (Id. at ¶ 7(21)); John A. George and Carolyn D. George (Id. at ¶ 7(22); William E.
Hunt (Id. at ¶ 7(25)); James R. Johnson and Matthew Johnson (Id. at ¶ 7(27)); Michael J. Lewis (Id. at ¶
7(32)); James Liken (Id. at ¶ 7(33)); Randy Lueth (Id. at ¶ 7 (34), 41(34)); Orttech, Ltd. (Id. at ¶ 7(40));
Robert A. Pietandrea (Id. at ¶ 7(41)); James J. Restivo and Gail Restivo (Id. at ¶ 7(42)); Triad Investments,
Inc. (Id. at ¶ 7(52)); The Gregory S. Zenczak Family Dynasty Trust (Id. at ¶ 7(58)); and The Stephen J.
Zenczak Family Dynasty Trust (Id. at ¶ 7(59)).  Although Boustead tallies the number at 24, there are
actually 28 Broker Plaintiffs when spouses or significant others are factored in.  Each of these plaintiffs
allegedly purchased securities from Pirchesky (acting as Boustead's agent) with the exception of David
Aloe and Randy Lueth, who allegedly received Pirchesky's solicitation materials but purchased their
securities from Matthew Maguire.  *Amended Complaint* at ¶¶ 7(3), (34); 41(3), (34).  At this preliminary
stage of the proceeding, the Court finds it unnecessary to distinguish Aloe and Lueth from the other Broker
Plaintiffs.

[19]    The "Non-Broker Plaintiffs" are: Clement R. Austin, B5S, LLC, William Benter, Richard Berglund,
Ronald Cindrich, Clariot New Albany, Cowen OJ Investment, LLC, DelMetro, Inc., Robert Denove,
Corina Diehl, Stephen Einhorn, The Harding-Brown Family Trust, Timothy Hoeksema, Jeffrey Joerres,
James R. Johnson, Scott Kern, Keith Kronk, Dennis Kuester, David Matter, Kenneth McCrory, Mitchell
Elias Nahra, M.D., William Nasgovitz, North Star Coal Co. Non-Bargaining Employees Profit Sharing
Plan, Susan Rosen, James V. Sacco, William Sarris, 7th Street Properties, LP, Sheertex Fabrics, LLC, Jack
W. Shilling, Steven G. Smith, David Tesone Group, Inc., Derek J. Thomas, The Christian Luke Ronald
Vadas 2016 Trust, The Simon Isaac Young Vadas 2016 Trust, Viking Reinsurance Company, Jerry R.
Whitaker, and Michael H. White.

Robert Lewis and David Minnotte are OneJet shareholders as well as board members of the Allegheny County Airport Authority (the "Airport Authority").[20]  Both are alleged to have used their positions with the Airport Authority to steer a $1,000,000 economic development grant to OneJet and then solicited investment for the company by claiming the grant was indicia of the Airport Authority's "approval" of OneJet operations.[21]  Lewis was allegedly involved in some aspect of OneJet's operations by negotiating a $1,500,000 loan from the Allegheny County Regional Development Authority and providing a personal guaranty for the obligations.[22]  He also held himself out to investors as a director of OneJet.[23]  Lewis allegedly made false and misleading statements about OneJet's viability, but only five plaintiffs (together, the "Lewis Plaintiffs") admit to having any communications with him.[24]

The State Court action was removed to the United States District Court for the Western District of Pennsylvania and ultimately transferred to this Court for further disposition considering OneJet's pending chapter 7 case.[25]  After an initial volley of motions to dismiss, the Court ordered the Plaintiffs to file an amended complaint to provide a more definitive statement as to their claims and cure several deficiencies found in the *Complaint*.[26]  Among other things, the Court required Plaintiffs to plead certain basic facts establishing the standing of each

---

[20]    *Amended Complaint* at ¶¶ 13-14.

[21]    Id. at ¶¶ 34-35, 174-79.

[22]    Id. at ¶ 152-54.

[23]    Id. at ¶ 157.

[24]    See id. at ¶¶ 72, 165; transcript of January 10, 2020 hearing at 17:1-3 ("Jan. 2020 Trans.").  The Lewis Plaintiffs are:  B5S, LLC (*Amended Complaint* at ¶ 41(7)); Mitchell Elias Nahra, M.D. (Id. at ¶ 41(37)); James V. Sacco (Id. at ¶ 41(44)); The Christian Luke Ronald Vadas 2016 Trust (Id. at ¶ 41(53)); and The Simon Isaac Young Vadas 2016 Trust (Id. at ¶ 41(54)).

[25]    See *Opinion and Order* dated June 19, 2019, Dkt. No. 48.

[26]    See *Order* dated September 27, 2019, Dkt. No. 201.

individual plaintiff, including the type of securities acquired, where the securities were purchased, and if misrepresentations are alleged, identification of the parties alleged to have made and received the misrepresentations.[27]   If Plaintiffs failed to adequately address these deficiencies in their amended complaint, the Court cautioned that it would consider dismissing claims with prejudice at the next stage of the proceeding.[28]

The *Amended Complaint* was filed on October 28, 2019 and contains eight claims:   Count 1 – *Violation of Section 501 of the PSA* (against the Maguires); Count 2 – *Violation of Sections 403 and 501 of the PSA* (against the Boustead Defendants); Count 3 – *Violation of Section 503 of the PSA* (against the Maguires and the Boustead Defendants); Count 4 – *Aiding and Abetting Liability under Common Law* (against the Maguires and the Boustead Defendants); Count 5 – *Violation of Sections 501 and 503 of the PSA* (against Lewis); Count 6 – *Aiding and Abetting Liability under Common Law* (against Lewis); Count 7 – *Aiding and Abetting Liability under Common Law* (against Lewis and Minnotte); and Count 8 – *Negligent Misrepresentation* (against the Boustead Defendants).   Like the prior complaint, the *Amended Complaint* has drawn a flurry of motions from the Defendants seeking dismissal for lack of standing and the failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6).[29] Following a hearing to consider the Motions, the Court took the matters under advisement.   In consideration of the motions and briefs submitted by the parties, these matters are now ripe for disposition.

---

[27]    Transcript of Sept. 26, 2019 Hearing, p. 40-41, Dkt. No. 211 ("Sept. 2019 Trans.").

[28]    Id. at 42:13-16 ("if the plaintiffs amend and the complaint is still deficient, then I'll consider whether or not dismissal of particular claims or counts with prejudice would be appropriate later on.").

[29]    Dkt. Nos. 216, 239, 244, 263, 265, 267, and 269.  Fed. R. Civ. P. 12 is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.  Unless otherwise qualified, all references to "Rule" shall be to the Federal Rules of Civil Procedure.

## II.  **JURISDICTION**

This case was referred to the Court through an *Opinion and Order* issued by United States District Judge Marilyn J. Horan on June 19, 2019 upon a finding that it is "related to" a case arising under title 11 of the United States Code.[30]  As a "related to" proceeding, this Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), (c), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  Except for Lewis, all parties consent to the entry of final orders or judgment by this Court.[31]

## III.  **DISCUSSION**

The Motions seek a variety of relief from the Court, ranging from an outright dismissal of the entire action to a request that Plaintiffs file another amended complaint to adhere to federal pleading standards.  Along the way, Defendants have raised both broad objections to the format and structure of the *Amended Complaint* as well as specific challenges to the individual claims brought by the Plaintiffs.  The Court will begin its analysis with the general challenges to the *Amended Complaint* before embarking on a tour of each cause of action.  In many instances, multiple defendants raise the same or similar defenses.  When possible, the Court has consolidated its analysis to address common issues.

### A.  **Rule 12(b)(1) Analysis**

A request to dismiss a case for lack of standing is a challenge to the authority of the court because standing is a jurisdictional matter.[32]  Motions to dismiss for lack of subject

---

[30]   *Opinion and Order* dated June 19, 2019, Dkt. No. 48.

[31]   See Dkt. Nos. 84 (Plaintiffs), 239 at 2 (Minnotte), 244 at 2 (Boustead and Campbell), 263 at 2 (Pirchesky), 267 at 4 (Patrick Maguire), and 269 at 4 (Matthew Maguire).

[32]   Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

matter jurisdiction must be brought under Rule 12(b)(1), and a court must dismiss the case if jurisdiction is lacking.[33]  When confronted with a Rule 12(b)(1) motion, the court must assess whether it presents a facial or factual attack.[34]  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to "consider the allegations of the complaint as true."[35]  The burden is on the plaintiff to establish the elements of standing and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[36]  In this case, the Boustead Defendants argue that the *Amended Complaint* lacks sufficient factual allegations to establish standing and thus their request for Rule 12(b)(1) relief constitutes a facial attack.

### 1.    Standing of Out-of-State Plaintiffs to Bring Claims under the PSA

Defendants initially claim that many Plaintiffs lack standing to pursue claims under the PSA because there is no factual allegation suggesting their claims accrued in Pennsylvania.  Half of Plaintiffs' claims (Counts 1, 2, 3, and 5) involve alleged violations of the PSA, yet before the state securities law can be applied to a sale of securities, the transaction must bear some nexus with the Commonwealth of Pennsylvania.[37]  Section 702 of the PSA provides that a party may invoke the PSA whenever "a sale or offer to sell is made" or "an offer to

---

[33]    In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).

[34]    Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

[35]    Id. (citing Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

[36]    Ballentine, 486 F.3d at 810 (quoting FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir.1996)).

[37]    See Count 1 (§ 1-501), Count 2 (§§ 1-403 and 1-501), Count 3 (§ 1-503), and Count 5 (§§ 1-501 and 1-503).

purchase is made and accepted" in Pennsylvania.[38]  An offer is "made in Pennsylvania" when it

either (a) originates from Pennsylvania, or (b) is directed by the offeror to Pennsylvania and is

received by an offeree within the state.[39]  Conversely, an offer is deemed to have been "accepted

in Pennsylvania" when acceptance is communicated to the offeror in Pennsylvania and was not

previously communicated to the offeror (orally or in writing) outside Pennsylvania.[40]  An

acceptance is considered "communicated to the offeror in this State" when the offeree directs it

to the offeror in Pennsylvania, reasonably believing that the offeror to be in the state, and it is

received by the offeror in Pennsylvania.[41]  By requiring that the relevant actions of either the

offeror or offeree take place in Pennsylvania, the PSA ensures that there is a sufficient

connection to the state to justify its regulation of the securities transaction.  Because the PSA

---

[38]     70 Pa. Stat. Ann. § 1-702 (West).  Section 702 provides:

    (a)    The provisions of this act concerning sales and offers to sell apply to persons who sell or offer to sell when (i) a sale or offer to sell is made in this State or when (ii) an offer to purchase is made and accepted in this State. The provisions concerning purchases and offers to purchase apply to persons who buy or offer to buy when (i) a purchase or offer to purchase is made in this State or when (ii) an offer to sell is made and accepted in this State.

    (b)    For the purpose of this section, an offer to sell or to purchase is made in this State, whether or not either party is then present in this State, when the offer originates from this State or is directed by the offeror to this State and received by the offeree in this State; provided, however, for the purpose of section 201 an offer to sell which is not directed to or received by the offeree in this State is not made in this State.

    (c)    For the purpose of this section, an offer to purchase or to sell is accepted in this State when acceptance is communicated to the offeror in this State, and has not previously been communicated to the offeror, orally or in writing, outside this State; and acceptance is communicated to the offeror in this State, whether or not either party is then present in this State, when the offeree directs it to the offeror in this State reasonably believing the offeror to be in this State, and it is received by the offeror in this State.

    (d)    An offer to sell or to purchase is not made in this State when the publisher circulates, or there is circulated on his behalf in this State, any bona fide newspaper or other publication of general, regular and paid circulation which is not published in this State, or a radio or television program originating outside this State is received in this State.

[39]     70 Pa. Stat. Ann. § 1-702(b).

[40]     70 Pa. Stat. Ann. § 1-702(c).

[41]     Id.

provides that no civil liability can arise against any person by implication, the lack of a sufficient connection to Pennsylvania may be fatal to a plaintiff's claims.[42]

For the vast majority of Plaintiffs, the Court can reasonably infer that the PSA applies. Most are residents of Pennsylvania and, when viewing the allegations in the light most favorable to Plaintiffs, there are no factual averments suggesting their transactions occurred within any other jurisdiction. But the *Amended Complaint* is deficient as to 19 plaintiffs (collectively, the "Out-of-State Plaintiffs") who are residents of other states and whose securities seemingly have no connection with the Commonwealth of Pennsylvania.[43] OneJet is a California corporation,[44] and although Matthew Maguire and Melvin Pirchesky are allegedly Pennsylvania residents,[45] it is incumbent upon the Out-of-State Plaintiffs to establish that they were either offered OneJet securities or accepted the offer in Pennsylvania. As section 702 makes clear, the residence or domicile of the buyer and seller are irrelevant. What matters is where the offer was made or accepted.[46]

---

[42]   70 Pa. Stat. Ann. § 1-506.

[43]   The "Out-of-State Plaintiffs" are:  Ronald Cindrich (*Amended Complaint* ¶ 7(11)); Clariot New Albany (Id. at ¶ 7(12)); Cowen OJ Investment, LLC (Id. at ¶ 7(16)); DelMetro, Inc. (Id. at ¶ 7(17)); Stephen Einhorn (Id. at ¶ 7(20)); The Harding-Brown Family Trust (Id. at ¶ 7(23)); Timothy Hoeksema (Id. at ¶ 7(24)); Jeffrey Joerres (Id. at ¶ 7(26)); Dennis J. Kuester (Id. at ¶ 7(31)); Mitchell Elias Nahra, M.D. (Id. at ¶ 7(37)); William Nasgovitz (Id. at ¶ 7(38)); Orttech Ltd. (Id. at ¶ 7(40)); Triad Investments, Inc. (Id. at ¶ 7(52)); The Christian Luke Ronald Vadas 2016 Trust (Id. at ¶ 7(53)); The Simon Isaac Young Vadas 2016 Trust (Id. at ¶ 7(54)); Jerry R. Whitaker (Id. at ¶ 7(56)); Michael H. White (Id. at ¶ 7(57)); The Gregory S. Zenczak Family Dynasty Trust (Id. at ¶ 7(58)); and the Stephen J. Zenczak Family Dynasty Trust (Id. at ¶ 7(59)).  For reference, the Out-of-State Plaintiffs are also listed on Table 1.

[44]   *Amended Complaint* at ¶¶ 7, 17.

[45]   Id. at ¶¶ 8, 11.

[46]   During oral argument, Plaintiffs' counsel contended that Pirchesky "made solicitations from Pittsburgh to these investors[,]" but none of that is alleged in the *Amended Complaint*. See Jan. 2020 Trans. at 22:1-2. The location of Matthew Maguire's solicitations was also not stated.  Counsel's additional suggestion that Pennsylvania law applies because OneJet used the Allegheny County Airport as its "home base" must also fail as there is no "principal place of business" provision in section 702. Id. at 22:6-7.

The deficiency is compounded by numerous references in the *Amended Complaint* to the various meetings Matthew Maguire conducted outside the state of Pennsylvania to attract investment in OneJet.  Plaintiffs Einhorn, Hoeksema, Joerres, Kuester, Nasgovitz, and White each met with him in Milwaukee, Wisconsin, while Orttech Ltd., Triad Investments, Inc., Gregory Zenczak, and Stephen Zenczak received his sales pitch in Cleveland, Ohio.  Meetings with other plaintiffs (Cowen OJ Investment, LLC and Clariot New Albany) occurred in New York or elsewhere.  Lastly, the *Amended Complaint* is devoid of any factual averment to suggest how Ronald Cindrich or DelMetro, Inc. have any connection to Pennsylvania.  Without a specific averment that Matthew Maguire or Melvin Pirchesky offered the securities for sale from Pennsylvania or accepted an offer there, the Court cannot conclude that the PSA applies to the Out-of-State Plaintiffs.

This is not the first time the Court scrutinized these particular deficiencies. During a hearing on the prior motions to dismiss, the Court expressed frustration that the initial complaint was unclear as to whether all transactions occurred within Pennsylvania so as to make the PSA applicable.[47]  Lewis and the Boustead Defendants raised this issue in their motions, but the Court finds no commentary in Plaintiffs' brief which addresses it.  The Court therefore finds that insufficient facts have been pled to give rise to claims under the PSA for the Out-of-State Plaintiffs, and accordingly, their claims under Counts 1, 2, 3, and 5 of the *Amended Complaint* will be dismissed.

---

[47]        Sept. 2019 Trans. at 41.

2.      <u>**Standing of Plaintiffs to Bring Claims Against Specific Defendants.**</u>

The Defendants also challenge the standing of certain plaintiffs to bring claims against them, either due to a lack of privity or the absence of any causal connection or communication between the plaintiff and an individual defendant.  Although mindful of the need to distinguish between Rule 12(b)(1) and (b)(6) relief, since Defendants present only facial attacks to standing, the Court will address any remaining arguments in the context of each claim.

B.      <u>**Rule 12(b)(6) Analysis**</u>

To satisfy federal pleading standards, a complaint must contain a "short and plain statement showing that the pleader is entitled to relief."[48]   This requirement ensures that a defendant receives fair notice of the claim and the grounds on which it rests.[49]   In addition, claims for securities fraud are subject to the heightened pleading standards under Rule 9(b), requiring a party to "state with particularity the circumstances constituting fraud or mistake."[50]

Rule 12(b)(6) provides for the dismissal of any cause of action that fails to state a claim for which relief can be granted.[51]   In <u>Ashcroft v. Iqbal</u>, the Supreme Court of the United States explained the standard for dismissal as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "<u>*state a claim* to relief that is plausible on its face</u>."[52]

---

[48]   Fed. R. Civ. P. 8(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008.

[49]   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

[50]   Fed. R. Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009; <u>see also</u> <u>Christidis v. First Pennsylvania Mortg. Trust</u>, 717 F.3d 96, 99 (3d Cir. 1983) ("[Rule 9(b)] applies not only to fraud actions under federal statutes, but to fraud claims based on state law.").

[51]   Fed. R. Civ. P. 12, made applicable to this adversary proceeding by Fed. R. Bankr P. 7012.

[52]   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ((quoting <u>Twombly</u>, 550 U.S. at 556-70 (2007)) (citations omitted) (emphasis added).

Although the standard for surviving a challenge under Rule 12(b)(6) has evolved, it remains a rather liberal threshold:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.[53]

The Court must conduct a three-step inquiry when confronted with a motion to dismiss.[54]  It must first "tak[e] note of the elements a plaintiff must plead to state a claim."[55] Second, it should identify any allegations that are not entitled to the assumption of truth because they are no more than conclusions.[56]  Lastly, the Court should assume the veracity of any well-pleaded factual allegations and then determine whether they plausibly support an entitlement for relief.[57]  The Court must also draw all reasonable inferences from the allegations and view them in the light most favorable to the non-moving party.[58]

## 1.    General Structure and Form of the *Amended Complaint*

As an initial matter, the Maguires claim the *Amended Complaint* is invalid because Plaintiffs try to foist a quasi-class action upon this Court without adhering to the requirements of class certification mandated under Rule 23.[59]  Claiming that Plaintiffs cannot

---

[53]      See Twombly, 550 U.S. at 555 (citations omitted).

[54]      Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

[55]      Id. (citing Iqbal, 556 U.S. at 673 (2009)).

[56]      Id.

[57]      Id.

[58]      See Bohus v. Restaurant.com, Inc., 784 F.3d 918, 921 n. 1 (3d Cir. 2015) (citing Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 604 (3d Cir.2015)).

[59]      Fed. R. Civ. P. 23 is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7023.

satisfy Rule 23 because, among other things, the individual plaintiffs are not similarly situated,[60] the Maguires ask the Court to prevent Plaintiffs from making an end-run around these procedural requirements.  In a similar vein, Lewis suggests the Plaintiffs' claims should be severed because they are not substantially related as required under Rule 20(a).  The Defendants also uniformly contend that the *Amended Complaint* evokes "puzzle pleading" whereby a litigant must jump back and forth between allegations to understand the gist of the claims alleged.

The Court acknowledges that many of the Defendants' general objections appear to have some merit on the surface.  The *Amended Complaint* is not a model of clarity.  To say that it is a vast improvement over the first complaint says more about the deficiencies of the initial pleading than the merits of the current one.  The Court has invested considerable time trying to sketch out the various allegations and match them against the respective Plaintiffs.  Some of this may be attributable to the large number of Plaintiffs, but the bulk of it appears to be an effort to use the specific allegations of certain plaintiffs as a foundation for general allegations that form a cause of action for all other Plaintiffs.  While such tactics might be permissible in a class action, they are not acceptable here.  Each plaintiff must independently plead a separate cause of action against each defendant for each asserted claim.

Despite these deficiencies, the Court does not find the entire *Amended Complaint* to be defective.  And since Plaintiffs were already given a chance to fix their complaint, any faults that now remain are subject to a substantive ruling.  Rather than require another amended complaint, prudence dictates that the Court issue rulings on the individual claims where further amendment would be futile.  By clearing away the brush (in terms of nonactionable claims and plaintiffs), the remaining viable claims should be more clearly revealed.

---

[60]     Matthew Maguire observes that Plaintiffs do not hold the same securities as some hold stock while others hold debt.  *Defendant Patrick Maguire's Motion to Dismiss Plaintiffs Woody Partners, et al.'s Amended Complaint* at 18.

2. **Count 1: *Violations of Section 501 of the Pennsylvania Securities Act*
(Matthew Maguire and Patrick Maguire)**

Plaintiffs' initial claim asserts a private cause of action under section 501 of the

PSA which provides, in pertinent part:

> (a) Any person who … (ii) offers or sells a security in violation of sections
> 401, 403, 404 or otherwise by means of any untrue statement of a material
> fact or any omission to state a material fact necessary in order to make the
> statements made, in the light of the circumstances under which they are
> made, not misleading, the purchaser not knowing of the untruth or
> omission, and who does not sustain the burden of proof that he did not
> know and in the exercise of reasonable care could not have known of the
> untruth or omission, shall be liable to the person purchasing the security
> from him, who may sue either at law or in equity to recover the
> consideration paid for the security, together with interest at the legal rate
> from the date of payment, less the amount of any income or distributions,
> in cash or in kind, received on the security, upon the tender of the security,
> or for damages if he no longer owns the security.[61]

Plaintiffs claim the Maguires are both liable under section 501 because they made material

misrepresentations and omissions when they solicited investments in OneJet.[62]

Matthew Maguire contends that Count 1 must be dismissed because Pennsylvania

does not recognize a "stand-alone" claim under section 501.  Instead, he asserts that section 501

paves the way for a cause of action only when it is coupled with a violation under another

statutory provision, such as section 401.  Plaintiffs disagree, relying on an opinion rendered by

the Delaware Court of Chancery in <u>Kronenberg v. Katz</u> [63] that suggests section 501 of the PSA

"creates a stand-alone cause of action for *any violation* of the Act."[64]  Although the Pennsylvania

---

[61]     70 Pa. Stat. Ann. § 1-501(a)(ii) (West).

[62]     *Amended Complaint* at ¶¶ 112-22.

[63]     <u>Kronenberg v. Katz</u>, 872 A.2d 568, 597 (Del. Ch. 2004).

[64]     *Amended Complaint* at ¶ 114 (emphasis original).

appellate courts have yet to weigh in on the issue, trial courts in both the federal and state systems have adopted most of <u>Kronenberg</u>'s analysis.[65]

Matthew Maguire maintains the issue remains unsettled until the Pennsylvania Supreme Court weighs in.  While that may be true, it does not discount the thorough analysis of those courts who predicted that the Pennsylvania Supreme Court would recognize a cause of action under section 501, independent of any other statutory violation.  As those courts observe, recognition of a stand-alone claim is faithful to the statutory language in section 501 which is written in the disjunctive.[66]  It also aligns with both section 410(a)(2) of the Uniform Securities Act of 1956 (on which section 501 was modeled) and section 12(2) of the original Securities Act of 1933 (the "Securities Act") which contain virtually the same language.[67]  The Court finds the <u>Kronenberg</u> decision persuasive not only for its reasoning, but also because no other court has taken a contrary stance since it was rendered.

---

[65]    <u>See</u> <u>e.g.</u>, <u>Gilliland v. Hergert</u>, No. 2:05-CV-01059, 2008 WL 2682587, at *7 (W.D. Pa. July 1, 2008)("[T]he Court agrees with the analysis in <u>Kronenberg</u> that the Pennsylvania Supreme Court would also recognize a stand-alone § 1-501 claim); <u>Fed. Home Loan Bank of Pittsburgh v. J.P. Morgan Sec. LLC</u>, No. GD09-016892, 2010 WL 7928643, at *16 (Pa. Com. Pl. Nov. 29, 2010) ("I find no merit to the contention of the J.P. Morgan defendants that § 501(a) applies only to a person who offers or sells a security in violation of §§ 401, 403, or 404. This contention ignores the language "or otherwise." Several courts have reached the same result."); <u>but see</u> <u>Fulton Bank v. NatCity Investments, Inc.</u>, No. CV 09-4855, 2017 WL 277670, at *23 (E.D. Pa. Jan. 19, 2017)("I find as a matter of law that the stand-alone cause of action contained in Section 1-501 applies only to claims based on statements in a prospectus or initial offering of securities.").

[66]    <u>See</u> Kronenberg, 872 A.2d at 597.

[67]    <u>See</u> <u>id</u>. at 596.  Section 410(a)(2) of the Uniform Securities Act of 1956 (the "USA") provides:

> Any person who … offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security … § 410. [Civil Liabilities]., App. Unif. Securities Act 1956 § 410(a)(2).

> The comments acknowledge that "[t]his clause is almost identical with § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2)."  Both the USA and section 12 of the Securities Act have since been amended.

Nor is it true that a stand-alone claim renders section 501's reference to a "violation of section[] 401" meaningless.  Matthew Maguire contends that no plaintiff would ever subject himself to the rigors of pursuing a fraud claim under section 401 if he could accomplish the same goal under section 501 without the burden of proving intent and reliance.[68] But this argument ignores that plaintiffs pursuing remedies under federal securities law possess similar dual options under SEC Rule 10b-5 and Section 12(a)(2) of the Securities Act, and the unlawful conduct in section 401 of the PSA is not strictly limited to material misstatements or omissions of fact.[69]  The Court also notes that its interpretation of section 501 harmonizes with how similar language is used elsewhere within the PSA.[70]  To the extent that Matthew Maguire's attempt to dismiss Count 1 hinges on his statutory interpretation, that portion of the request is denied.

Absent controlling Pennsylvania precedent, the text of section 501 suggests that a stand-alone claim is established by showing that: (a) the defendant sold or offered to sell a security, and (b) while making the sale or offer, defendant either made an untrue statement of material fact or omitted a material fact that might render other statements misleading.[71]  Because

---

[68]     Dkt. No. 269-1 at 13.

[69]     See 70 Pa. Stat. Ann. § 1-401 (making it unlawful "(a) To employ any device, scheme or artifice to defraud; (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.").

[70]     See 70 Pa. Stat. Ann. § 1-410 (West) ("[N]o person shall be deemed to have violated section 401 or 406 or otherwise to have made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading if such person demonstrates that the offer, sale or purchase was prearranged in accordance with 17 CFR § 240.10b5-1(c)…").

[71]     70 Pa. Stat. Ann. § 1-501(a)(ii) (West); see also In re Phar-Mor, Inc. Litig., 848 F. Supp. 46, 48 (W.D. Pa. 1993) (setting forth the elements of a similar section 12(2) claim (now known as a section 12(a)(2) claim under the Securities Act)).

the PSA commands that statutory interpretations should align with complementary federal securities law,[72] the Court will examine Plaintiffs' section 501 claim with the same lens applied to an action under section 12(a)(2) of the Securities Act.  Much like a section 12(a)(2) claim, Plaintiffs need not prove scienter, reliance, or loss causation, but they still must establish some causal relationship between the misrepresentations and their purchase.[73]  Although fraud is not a necessary element, a section 501 claim that sounds in fraud must be pled with particularity.[74]

The Maguires seek dismissal because Plaintiffs have not pled their securities fraud claims with sufficient particularity.  Patrick Maguire specifically requests dismissal of Count 1 because none of the Plaintiffs allege to have communicated with him about the promotion or sale of OneJet securities.[75]  He contends that even if the averments of the *Amended Complaint* are accepted as true, Plaintiffs have not alleged a single misrepresentation made by him that would trigger liability under section 501.

Nearly all the allegations against the Maguires are grounded in fraud.  Plaintiffs allege that as part of a "scheme" to solicit public investment in OneJet, the Maguires made a series of false statements to potential investors, including inaccurate and misleading statements

---

[72]    See 70 Pa. Stat. Ann. § 1-703 (West) ("This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact the "Uniform Securities Act" and to coordinate the interpretation and administration of this act with related Federal regulation.").

[73]    Gilliland v. Hergert, 2008 WL 2682587, at *7 (citing Klein v. Boyd, No. CIV. A. 95-5410, 1996 WL 675554, at *18 (E.D. Pa. Nov. 19, 1996), aff'd in part, rev'd in part, No. 97-1143, 1998 WL 55245 (3d Cir. Feb. 12, 1998), reh'g en banc granted, judgment vacated (Mar. 9, 1998); see also In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269 (3d Cir. 2006) (interpreting section 12(a)(2) of the Securities Act and finding that it is a "virtually absolute liability provision[ ], which do[es] not require plaintiffs to allege that defendants possessed any scienter.").

[74]    See In re Westinghouse Sec. Litig., 90 F.3d 696, 717 (3d Cir. 1996) (finding that a section 12(2) claim that sounds in fraud must be pled with particularity (citing Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288-89 (3d Cir. 1992)).

[75]    *Defendant Patrick Maguire's Motion to Dismiss Plaintiffs Woody Partners, et al.'s Amended Complaint* at 9.

18

about the size of their personal investment in OneJet, the nature of the company's financial performance, and the composition of their management team and advisors.[76] The Maguires also allegedly circulated financial statements that were "simply 'made up'" and induced investment by establishing a "Naples Club" for private flights that was "a sham."[77]  Because Plaintiffs incorporate these fraud allegations into Count 1 and provide no disclaimer or other indicia to suggest they are pursuing a section 501 claim through negligence, the Court deems Count 1 to sound in fraud and will apply the heightened pleading standard of Rule 9(b).[78]  To satisfy the Rule 9(b) standard, a plaintiff must allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue."[79]

After examining the allegations leveled against Patrick Maguire, the Court finds insufficient factual averments to support a claim that he made false representations to any of the Plaintiffs while soliciting their investment.  Through the first 87 pages of the *Amended Complaint*, Plaintiffs detail false statements made by Matthew Maguire, including an identification of what was said and who heard it.  Yet they provide no comparable allegations involving Patrick.  Instead, for the remainder of the *Amended Complaint*, Plaintiffs make only generalized allegations of false statements made by the "Maguires" without attributing any specific statement to Patrick or providing the particulars as to how, when, and to whom the

---

[76]     *Amended Complaint* at ¶¶ 42, 45, 47.

[77]     Id. at ¶¶ 47, 79, 81.

[78]     See In re Suprema, 438 F.3d at 269-70.

[79]     United States ex rel. Bookwalter v. UPMC, 946 F.3d 162, 176 (3d Cir. 2019) (citing U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016)) ("Rule 9(b) does not require the relators to plead anything more, such as the date, time, place, or content of every single allegedly false [] claim.").

statements were made.  And unlike Matthew Maguire, who made personal contact with at least 51 plaintiffs, none of the Plaintiffs allege to have communicated with Patrick.  Taken as true, these allegations fail to show that Patrick Maguire made false statements as a seller of securities under section 501.

Plaintiffs contend that "[s]ince Patrick Maguire and Matthew Maguire are the founders and sole officers of OneJet, it is impossible to determine which one of them "cooked up" the misleading statements that were used to induce the Plaintiffs' investments."[80]  Although this Court must be mindful that "premature application of Rule 9(b) can permit sophisticated defrauders to conceal fraud[,]" a plaintiff confronted with this predicament must still allege that "necessary information lies within the defendants' control" and provide facts on which their allegations are based.[81]  Plaintiffs have provided no such support.

As noted above, the *Amended Complaint* provides far more detail about the false statements allegedly made by Matthew Maguire.  Still, the allegations are noticeably deficient for certain plaintiffs.  The Court finds that as to Clement R. Austin, William Benter, Ronald Cindrich, DelMetro, Inc., Corina Diehl, Michael J. Lewis, North Star Coal Co. Non-Bargaining Employees Profit Sharing Plan, William Sarris, Sheertex Fabrics, LLC, Steven G. Smith, and David Tesone Group, Inc. (together, the "Rule 9(b) Plaintiffs"), the *Amended Complaint* provides none of the requisite details necessary to establish a securities fraud claim with particularity.[82]  For each of these plaintiffs, the *Amended Complaint* generally alleges a material

---

[80]     *Plaintiffs' Brief in Opposition* at 39.

[81]     See Shapiro, 964 F.2d at 289, 285, as amended (May 28, 1992).

[82]     *Amended Complaint* at ¶¶ 41(6), (8), (11), (17), (19), (32), (39), (45), (47), (49), (50).

misrepresentation without identifying the essentials such as "what" the misrepresentation was, "when" it was made, and in some instances, "who" it was made to.

In sum, the factual averments offered in the *Amended Complaint* cannot establish a claim against Patrick Maguire under Count 1. In addition, the Rule 9(b) Plaintiffs failed to plead a claim against Matthew Maguire with even a minimal level of particularity. Because Plaintiffs were given a prior opportunity to address these deficiencies and failed to do so, Count 1 of the *Amended Complaint* will be dismissed as to Patrick Maguire and the Rule 9(b) Plaintiffs. In all other respects, Matthew Maguire's request to dismiss Count 1 is denied.

### 3.    Count 2: *Violations of Sections 403 and 501 of the PSA* (Pirchesky, Campbell, and Boustead Securities, LLC)

In Count 2, Plaintiffs allege that the Boustead Defendants solicited investment for OneJet by using false or misleading statements.[83] Plaintiffs claim the Boustead Defendants distributed "executive summaries" and financial documents that were "woefully inaccurate, false and/or misleading" and "repeated many of the material misstatements made by the Maguires" about OneJet, including statements about its financial performance, the amount personally invested by the Maguires into the venture, and that all newly invested funds would be used to acquire additional aircraft.[84] Plaintiffs also assert that Boustead's FINRA registration, coupled with Pirchesky's assurances that both he and Campbell were analyzing the veracity of disseminated financial information, provided investors with a false sense that the OneJet transactions were legitimate and authentic.[85] Most of the Plaintiffs conclude their individual

---

[83]    Id. at ¶¶ 55-56, 59, 127.

[84]    Id. at ¶¶ 58-59, 127-29; see also ¶¶ 41(10)(C)-(I), (21)(B), 25(C), 27(B)(4), 33(B)(5), 34(C), 56, 58.

[85]    Id. at ¶¶ 41(1)(B) [Note: The *Amended Complaint* contains two averments that are both labeled as (B) in ¶ 41(1)], 58, 61, 63; see also ¶¶ 41(10(D)(1))) ("our diligence involves independently verifying everything it is as being accurate"); 63(B) ("Bob and I agreed we would not give these out until we have completed our

allegations with a generic, catch-all averment suggesting that while soliciting their investment, "Pirchesky continually provided material misrepresentations regarding OneJet's financial viability."[86]

> Plaintiffs claim such actions violate section 403 of the PSA which provides that:
>
> No broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this State by means of any manipulative, deceptive or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of this act or any regulation or order hereunder.[87]

And because section 501 provides a private cause of action against persons who violate the PSA, including any person who "offers or sells a security in violation of sections 401, 403, 404, or otherwise[,]" Plaintiffs maintain the Boustead Defendants are liable for their damages caused by these false misrepresentations.[88]

> The Boustead Defendants initially challenge Plaintiffs' standing to pursue this claim due to a lack of privity. They contend that a civil action cannot be maintained under the PSA by Plaintiffs who did not acquire their securities from Boustead.[89]

---

diligence on them by reviewing them thoroughly."); 41(15)(B)(2) ("Pirchesky analyzed the reported revenue for each month from January 2017 to June 2017 and the Balance Sheet dated December 31, 2016. The numbers were supplied by Matthew Maguire and were not accurate, but rather were "made up" by Maguire."), (3) ("Pirchesky went on to analyze additional financial numbers which were not actual but just made up by Matthew Maguire"). Although the *Amended Complaint* suggests "other potential investors" received the email communication, none are identified other than Woody Partners, Blair Oak Investments, LP, and Nicholas P. and Veronica Constantakis. See *Amended Complaint* at ¶ 63.

[86]    Id. at ¶¶ 41(1)(D), (2)(J), (3)(C), (4)(D), (5)(F), (10)(Q), (13)(F), (21)(I), (22)(D), (25)(D), (27)(C), (32)(B), (33)(D), (34)(D), (41)(C), (42)(F).

[87]    70 Pa. Stat. Ann. § 1-403 (West).

[88]    70 Pa. Stat. Ann. § 1-501 (West). The Court interprets Count 2 to seek relief under sections 403 and 501 together, rather than implicate a stand-alone claim under section 501.

[89]    Ging v. Parker-Hunter Inc., 544 F. Supp. 49, 52 (W.D. Pa. 1982) ("Under the [PSA], a plaintiff may sue only the individual or other legal entity with whom the plaintiff stands in privity. So, if a named defendant did not buy the security from the plaintiff or sell it to the plaintiff, no liability would attach to that defendant under the PSA.").

The *Amended Complaint* reveals that only 28 of the 64 Plaintiffs (the Broker Plaintiffs) purchased OneJet securities "from" or "through" Pirchesky, who was acting as Boustead's agent.[90]  The remaining 36 plaintiffs (the Non-Broker Plaintiffs) do not allege to have any awareness of the Boustead Defendants or of their actions to promote OneJet securities.  For these Non-Broker Plaintiffs who neither transacted business with Pirchesky, did not receive a solicitation from him, and did not interact with him, the Boustead Defendants cannot be considered a "seller" under even the most expansive reading of sections 403 and 501.  The Court will therefore dismiss the claims of the Non-Broker Plaintiffs in Count 2.

The Boustead Defendants next argue that the claims of the remaining plaintiffs must fail because a section 501 action cannot proceed against a broker-dealer.[91]  According to the United States Court of Appeals for the Third Circuit, section 501 is the sole source of civil liability for any alleged violations of section 403 of the PSA.[92]  By its own terms, section 501

---

[90]   See *Notice of Motion and Motion to Dismiss* filed by Defendants Boustead Securities, LLC at 3; see also *Amended Complaint* at ¶ 11.   Boustead acknowledges the following plaintiffs allegedly purchased securities from Pirchesky (acting as Boustead's agent):  Woody Partners (Id. at ¶ 7(1)); Aloe Brothers, LLC (Id. at ¶ 7(2)); David Aloe (Id. at ¶ 7(3), 41(3)); Kevin Altomari (Id. at ¶ 7(4)); Robert Auray, Jr. and Marion Auray (Id. at ¶ 7(5)); Blair Oak Investments, LP (Id. at ¶ 7(10)); Eugene K. Connors and Tina Houmis (Id. at ¶ 7(13); Andrew J. Constantakis (Id. at ¶ 7(14)); Nicholas P. Constantakis and Veronica Constantakis (Id. at ¶ 7(15)); Flighthawk, LLC (Id. at ¶ 7(21)); John A. George and Carolyn D. George (Id. at ¶ 7(22; William E. Hunt (Id. at ¶ 7(25)); James R. Johnson and Matthew Johnson Id. at (¶ 7(27)); Michael J. Lewis (Id. at ¶ 7(32)); James Liken (Id. at ¶ 7(33)); Randy Lueth (Id. at ¶¶ 7(34), 41(34)); Orttech, Ltd. (Id. at ¶ 7(40)); Robert A. Pietandrea (Id. at ¶ 7(41)); James J. Restivo and Gail Restivo (Id. at ¶ 7(42)); Triad Investments, Inc. (Id. at ¶ 7(52)); The Gregory S. Zenczak Family Dynasty Trust (Id. at ¶ 7 (58)); and The Stephen J. Zenczak Family Dynasty Trust (Id. at ¶ 7(59)).  Although Boustead tallies the number at 24, the number is actually 28 when spouses or significant others are factored in.  David Aloe and Randy Lueth are distinguishable from the others because they allegedly received Pirchesky's solicitation materials and purchased their securities from Matthew Maguire.  *Amended Complaint* at ¶¶ 7(3), (34); 41(3), (34).

[91]   *Notice of Motion and Motion to Dismiss* at 18 (citing Jairett v. First Montauk Securities Corp., 153 F.Supp. 2d 562, 576-77 (E.D.Pa. 2001)); see also Dkt. No. 261-1 at 11.

[92]   Biggans v. Bache Halsey Stuart Shields, Inc., 638 F.2d 605, 610 (3d Cir. 1980), holding modified by In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir. 1988) (overruling on a separate issue recognized by McCarter v. Mitcham, 883 F.2d 196 (3rd Cir. 1989)).

imposes liability upon those who purchase or sell a security in violation of the PSA.[93]  And while an aggrieved investor may pursue a cause of action under section 501 against a buyer or seller of securities, the Boustead Defendants assert it does not afford a claim against them when they acted merely as securities brokers.[94]

Plaintiffs suggest there is a split of authority on this issue.  Following the United States Supreme Court's decision in Pinter v. Dahl,[95] courts abandoned the use of a strict privity test to determine whether a defendant qualified as a seller for violations of section 12(1) of the Securities Act (the precursor to current section 12(a)(1)).  Finding this approach too restrictive, the Supreme Court adopted an expansive view of a "seller" to include not only an owner who passes title but one "who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."[96]  Recognizing that section 501 was modeled after section 12, some courts have now acknowledged that a broker or other person who solicits and executes securities sales might be a "seller" under section 501(a), even if it did not own the securities.[97]

---

[93]    70 Pa. Stat. Ann. § 1-501 (West).

[94]    See, e.g., Biggans, 638 F.2d at 610 (recognizing that section 501 does not authorize an action against a broker, only against "the individuals who purchased the securities that the his broker sold for him or those who sold the securities that his broker bought for him."); McCarter, 883 F.2d at 204 (observing that Biggans "can be squared with" the Pennsylvania Superior Court decision in Brennan v. Reed, Smith, Shaw & McClay, 450 A.2d 740 (Pa. Super. Ct. 1982) because it suggested that section 501 only provides a cause of action to buyers and sellers and did not consider whether a cause of action under the PSA could be obtained under section 503); Fox Int'l Relations v. Fiserv Sec., Inc., 490 F. Supp. 2d 590, 604 (E.D. Pa. 2007), order corrected (May 7, 2007) (no claim exists under section 1-501 against defendant who was not alleged to have sold securities to the plaintiffs); Jairett, 153 F.Supp. 2d at 577 (plaintiffs may not bring forward a claim under section 501 against a broker-dealer who is not a seller of securities).

[95]    Pinter v. Dahl, 486 U.S. 622, 647 (1988).

[96]    Id.

[97]    See Fulton Bank, N.A. v. UBS Sec., LLC, No. CIV.A. 10-1093, 2011 WL 5386376, at *8 fn. 5 (E.D. Pa. Nov. 7, 2011); see also Gilliland v. Hergert, No. 2:05-CV-01059, 2007 WL 4105223, at *4 (W.D. Pa. Nov. 15, 2007); Fed. Home Loan, No., 2010 WL 7928643 at *16.

The distinction is one without a difference at this stage of the proceeding. Pirchesky is not merely accused of soliciting investments in OneJet. Twenty-six plaintiffs claim they bought their securities from him. He is also allegedly a OneJet shareholder.[98] The *Amended Complaint* provides no further detail about whether Pirchesky carried out these transactions in his capacity as a broker or dealer, or whether these were secondary sales. After viewing these facts in a light most favorable to Plaintiffs, the Court must conclude that Pirchesky and Boustead qualify as "sellers" under section 501 as to those 26 plaintiffs.[99]

The Court will now address whether Plaintiffs have sufficiently pled a claim under section 403. Although the Pennsylvania Supreme Court has yet to identify the elements required to establish a section 403 claim under the PSA, those federal courts and state trial courts who have waded into this area have consistently held it must mirror a claim under SEC Rule 10b-5 because sections 401 and 403 are "functionally equivalent to section 10(b)" of the Securities Act.[100] Thus, to establish a cause of action under section 403, a plaintiff must allege that: "(1) that the defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which the plaintiff relied; and (5) the plaintiff's reliance was the cause of its injury."[101] Unlike the stand-alone claim discussed in Count 1, a plaintiff pursuing a section 403 violation through section 501 must plead scienter and

---

[98]   *Amended Complaint* at ¶¶ 41(21)(F)(7), 111(K) (Matthew Maguire testified that Pirchesky was a OneJet shareholder); 41(21)(F)(7) (In an email, Pirchesky discusses "[o]ther local entrepreneurs *besides myself* who have invested [in OneJet].") (emphasis in original).

[99]   The 26 plaintiffs consist of the Broker Plaintiffs without David Aloe and Randy Lueth. As noted in n.90, Aloe and Lueth allegedly received materials and representations from Pirchesky but did not acquire securities from him. *Amended Complaint* at ¶¶ 7(3), (34); 41(3), (34).

[100]  See Fulton Bank v. UBS, 2011 WL 5386376, at *7; Fulton Fin. Advisors, Nat. Ass'n v. NatCity Investments, Inc., No. CIV.A. 09-4855, 2013 WL 5635977, at *9 (E.D. Pa. Oct. 15, 2013) ("The Third Circuit has held that § 1–401 of the PSA is "functionally equivalent" to section 10(b)." (citing GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 214 (3d Cir. 2001))).

[101]  Fulton Fin. Advisors., 2013 WL 5635977, at *8.

reliance as required elements.[102]   As such, Plaintiffs must adhere to the heightened pleading requirements of Rule 9(b).[103]

Plaintiffs argue that the heightened pleading standard is inapplicable because they are not claiming "securities fraud under [SEC] Rule 10b-5" but instead allege the Boustead Defendants breached their duties under the PSA.[104]   In support, Plaintiffs rely on the Third Circuit's holding in Suprema Specialties, Inc. which held that Securities Act claims "do not sound in fraud if ordinary negligence is expressly pled in connection with those claims."[105] But there, the Court of Appeals held that ordinary negligence claims asserted under Sections 11 and 12(a)(2) of the Securities Act need not satisfy Rule 9(b) because they were pled as separate claims from an additional section 10(b) fraud claim.[106]   The implication is that the section 10(b) claim must clear a higher bar than the one imposed on a claim based on pure negligence.   The other cases cited by Plaintiffs do not necessarily involve securities law, and merely hold that a claim for negligent misrepresentation need not satisfy the Rule 9(b) pleading standards.[107]

---

[102]   Id. see also Fulton Bank v. UBS, 2011 WL 5386376, at *10 ("The Third Circuit has held §§ 1–401 and 1–403 of the PSA require pleading and proof of scienter.").

[103]   Id. at *8.

[104]   Dkt. No. 300 at 12.

[105]   In re Suprema, 438 F.3d at 272.

[106]   Id. at 273 ("Here, ordinary negligence is alleged in the Section 11 and Section 12(a)(2) claims, and those claims are pled separately from the Section 10(b) fraud claims against the same defendants. That is enough to avoid triggering Rule 9(b).").

[107]   Premier Health Assocs., LLC v. Med. Tech. Sols., No. CV 17-331 (JLL), 2018 WL 4043289, at *8 (D.N.J. Aug. 24, 2018) (applying the heightened standard to fraud claims but finding that "Rule 9(b) only applies to claims of negligent misrepresentation that sound in fraud"); Donachy v. Intrawest U.S. Holdings, Inc., No. CIV.A. 10-4038 RMB, 2012 WL 869007 (D.N.J. Mar. 14, 2012) (separately-pled negligent misrepresentation claim is not subject to Rule 9(b)'s pleading requirements; In re Am. Bus. Fin. Servs., Inc. Sec. Litig., No. 05-232, 2007 WL 81937, at *1 (E.D.Pa. Jan. 9, 2007) (complaint that does not focus or refer to defendants' state of mind is not grounded on fraud and does not implicate the requirements of Rule 9(b)); Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 604 n.12 (D.N.J. 2016) ("Rule 9(b) [is] inapplicable because the claim here is premised on negligence rather than fraud").

Because Plaintiffs allege a violation of section 403 which, by its nature requires a "manipulative, deceptive, or other fraudulent scheme[,]" they cannot ignore that Count 2 is, at its core, a fraud claim. As a result, Plaintiffs must "state with particularity the circumstances constituting [the] fraud[.]"[108]

(a)      **Claims Against Robert Campbell**

Boustead and Campbell seek dismissal of all claims against Robert Campbell because they contend Plaintiffs fail to assert any substantive or plausible allegations against him.[109] Although Boustead raised this issue in its motion to dismiss, Plaintiffs did not directly address it in their brief, opting instead to repeat their mantra that "Campbell and Pirchesky repeated many of the material misstatements made by the Maguires in order to solicit investors for OneJet."[110] After examining the *Amended Complaint*, the Court finds merit to Campbell's request.

A comparison of the allegations leveled against Campbell and Pirchesky reveals a sharp contrast. The *Amended Complaint* shows that Pirchesky actively pursued new investment for OneJet. He regularly communicated with investors directly, sent them numerous documents, and conducted various meetings. The *Amended Complaint* even contains summaries and quotations from several of the email communications and statements written by Pirchesky.

Campbell, by comparison, is only periodically referenced in the *Amended Complaint*, and when he is, Plaintiffs make only vague allegations of his actions. Aside from generally alleging that Campbell's status "as a so-called aviation expert" and "diligence expert"

---

[108]      Fed. R. Civ. P. 9.

[109]      *Notice of Motion and Motion to Dismiss* at 14; *Defendants' Boustead Securities, LLC and Robert Campbell's Motion for Leave to File a Reply to the Plaintiffs' Brief in Opposition to Motions to Dismiss* at Dkt. No. 302-1 at 5.

[110]      *Plaintiffs' Brief in Opposition* at 5.

lent a "false sense of legitimacy to OneJet's operations[,]" the *Amended Complaint* identifies no culpable conduct that would give rise to liability against him.[111]  He was copied on communications Pirchesky sent to investors and participated in various meetings, but the *Amended Complaint* fails to identify a specific misrepresentation made by Campbell.  Instead, Plaintiffs implement the same pleading strategy they used for the Maguires (and discussed in Count 1):  after nearly 68 pages of detailed averments discussing representations made by *other* parties, the *Amended Complaint* then repeats those same allegations in more generalized terms, only this time, it lumps Campbell together with Pirchesky for actions that Pirchesky was previously accused of doing on his own, making it impossible to assess which of the 64 plaintiffs are accusing him of misconduct.  Though the *Amended Complaint* specifically identifies 13 documents and at least nine misrepresentations communicated by Campbell and Pirchesky, it fails to allege that Campbell distributed this false information knowingly or recklessly.  At most, Campbell allegedly touted OneJet as a "solid investment opportunity," but such vague and generalized statements are considered immaterial as a matter of securities law because "reasonable investors would not rely on them in considering the total mix of available information."[112]  Plaintiffs also offer no averment on which one might conclude that Campbell was not the "aviation" or "diligence" expert he purported to be, and even so, only two plaintiffs were told of these qualifications.

---

[111]     *Amended Complaint* at ¶¶ 41(10(D)(2))), (14)(D), 54.

[112]     In re Am. Bus. Fin. Servs., Inc. Sec. Litig., 413 F. Supp. 2d 378, 399 (E.D. Pa. 2005); *see Amended Complaint* at ¶ 57; Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 200 (3d Cir.1990) ("To say that a statement is mere "puffing" is, in essence to say that it is immaterial."); In re Aetna Inc. Sec. Litig., 34 F. Supp. 2d 935, 950 (E.D. Pa. 1999); In re Advanta Corp. Sec. Litig., 180 F.3d 525, 538 (3d Cir. 1999) ("vague and general statements of optimism "constitute no more than 'puffery' and are understood by reasonable investors as such."") *abrogated on other grounds by* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

When pressed to identify specific misrepresentations or other bad acts by Campbell, Plaintiffs' counsel acknowledged there were none and instead suggested that Pirchesky's actions could be imputed to him.[113]  But there is nothing in the *Amended Complaint* supporting the type of relationship necessary to impute the conduct of another party to Campbell, and Plaintiffs offered no legal authority to bolster this contention.  Pirchesky is not alleged to be a partner or agent of Campbell, nor is Campbell alleged to have known about Pirchesky's actions or the falsity of his statements sufficient to implicate him for Pirchesky's conduct.[114]  In the end, the Court finds that the allegations against Campbell are much like those asserted against Patrick Maguire:  while it is generally asserted that he made misrepresentations, none of the Plaintiffs can specifically attribute a single wrongful statement or action to him.  Because Plaintiffs have failed to show a plausible claim under section 403 against Campbell, he will be dismissed from Count 2 of the *Amended Complaint*.

### (b)     Claims Against Melvin Pirchesky and Boustead

Plaintiffs also face a difficult hurdle establishing scienter as to the Boustead Defendants.  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud" and "requires a knowing or reckless state of mind."[115]  To establish scienter, plaintiffs must allege facts showing: (a) defendants had both a motive and an opportunity to commit fraud, or (b)

---

[113]     Jan. 2020 Trans. at 36:4-10.

[114]     During oral argument, Plaintiffs' counsel suggested that Campbell and Pirchesky were partners, but this specific averment is missing from the *Amended Complaint*.  Jan. 2020 Trans. at 35-36.  Campbell and Pirchesky are alleged to be "agents" of Boustead.  *Amended Complaint* at ¶¶ 11, 12.  Although the *Amended Complaint* quotes emails sent by Pirchesky wherein he references Campbell as his "partner," the Court is unable to reasonably infer that this is anything beyond a colloquial use of the term given that it conflicts with Boustead's alleged organizational structure as a limited liability company.  Id. at ¶¶ 10, 41(10)(D)(1)-(2), (14)(D), 53(A), 63(A).

[115]     Institutional Inv'rs Grp. v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir. 2009) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976); Fulton Bank v. UBS, 2011 WL 5386376, at *10.

circumstantial evidence of either reckless or conscious behavior.[116]  Motive requires "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures" while an opportunity "would entail the means and likely prospect of achieving concrete benefits by the means alleged."[117]  An allegation that a defendant was motivated purely by profit is insufficiently concrete to infer scienter.[118]  A statement is reckless if it stretches well beyond the boundaries of inexcusable negligence and becomes "an extreme departure from the standards of ordinary care … [and] presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[119]

While courts often analyze the PSA using the same standards applied to corresponding federal securities statutes,[120] the federal regulatory scheme demands a much higher standard for scienter.  To curb abusive and frivolous securities litigation, Congress adopted the Reform Act in 1995, requiring plaintiffs alleging federal securities fraud claims to assert facts with sufficient particularity so that they lead to a "strong inference" of scienter.[121]  A plaintiff seeking relief under the PSA may be subject to the heightened pleading requirements of

---

[116]   In re Advanta, 180 F.3d 525, 534-35 (3d Cir. 1999) (noting that the Private Securities Reform Act of 1995 (the "Reform Act"), 15 U.S.C.A. § 78u-4 (West), did not "alter the substantive contours of scienter") *abrogated on other grounds by* Tellabs, 551 U.S. 308 (2007).

[117]   Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 661 (W.D. Pa. 1999) (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994)).

[118]   Fulton Fin. Advisors, 2013 WL 5635977, at *11; see also Majer v. Sonex Research, Inc., 541 F. Supp. 2d 693, 705 (E.D. Pa. 2008); In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004) *abrogated on other grounds by* Tellabs, 551 U.S. 308 (2007).

[119]   In re Advanta, 180 F.3d at 535 (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)) *abrogated on other grounds by* Tellabs, 551 U.S. 308 (2007).

[120]   See, e.g., Leder v. Shinfeld, 609 F. Supp. 2d 386, 395 (E.D. Pa. 2009) ("it has long been the practice in this Circuit to treat section 1-401 claims as requiring the same elements of proof as required under Rule 10b–5."); see also 70 Pa. Stat. Ann. § 1-703 (West).

[121]   See 15 U.S.C. § 78u-4 (West); see also Tellabs, 551 U.S. 308, 313-14.

Rule 9(b), but the exacting threshold established by the Reform Act does not apply.[122]    The

distinction is made here because some of the parties may have blurred those lines in their

arguments, and the Court will not follow suit.

Returning to the allegations of the *Amended Complaint*, the Court finds Plaintiffs

failed to plead the element of scienter with particularity and sufficiency.    The Boustead

Defendants are not accused of falsifying information.    Instead, Plaintiffs maintain that Pirchesky

made a series of misrepresentations to investors by either disseminating fabricated financial

information he received from Matthew Maguire or repeating inaccurate statements Maguire

made about OneJet's operations.    But the *Amended Complaint* fails to allege specific facts to

suggest the Boustead Defendants knew these statements were false when communicated to

investors.    The most Plaintiffs can offer in terms of intent is a blanket assertion that the Boustead

Defendants "knew or should have known" that the information provided was "false and

misleading."[123]    But these are mere conclusory allegations that lack the particularity necessary

for the Court to reasonably infer that the Boustead Defendants had the requisite intent to deceive,

manipulate, or defraud.    As the Third Circuit has observed, allegations that a defendant "'must

have known' a statement was false or misleading are 'precisely the types of inferences which

[courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b)

scrutiny.'"[124]    In another instance, Pirchesky allegedly analyzed financial statements for one

investor based on "financial numbers which were not actual but just made up by Matthew

---

[122]    Leder, 609 F. Supp. at 397 n. 10.

[123]    *Amended Complaint* at ¶ 130.

[124]    In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) (quoting Maldonado v. Dominguez, 137
F.3d 1, 10 (1st Cir. 1998)).

Maguire."[125]  Yet again, however, the *Amended Complaint* provides no facts on which the Court could conclude that Pirchesky was aware the data was inaccurate and either intentionally or recklessly distributed it.  Lastly, the *Amended Complaint* provides no facts to substantiate a motive for the fraudulent conduct beyond an "attempt to induce the investment" and obtain a 10% finder's fee from all securities sold by the Boustead Defendants.[126]  As noted above, a "desire to reap the financial rewards of a successful transaction is not sufficient motive to survive a motion to dismiss."[127]

A holistic reading of the *Amended Complaint* reveals that the essence of Plaintiffs' claims against the Boustead Defendants sound in negligence.  Plaintiffs allege that the Boustead Defendants "failed to exercise reasonable diligence to verify the truth or falsity of the representations that they made regarding the financial viability of OneJet" and they "would have known of such falsity if they had exercised reasonable diligence."[128]  This is not the stuff of securities fraud.  And after parsing through their oral argument, it appears that Plaintiffs now concede that the *Amended Complaint* fails to show fraud by the Boustead Defendants because they cannot point to allegations suggesting the Boustead Defendants acted with the requisite intent or recklessness.[129]  Because there is no plausible basis in the pleadings to conclude that the

---

[125]    *Amended Complaint* at ¶¶ 41(15)(B)(2), (3).

[126]    Id. at ¶¶ 41(2)(D), 53.

[127]    Majer, 541 F. Supp. 2d at 705; Fulton Bank v. UBS, 2011 WL 5386376, at *10 ("the fact that UBS could earn substantial sales commissions and fees for underwriting the securities and managing ARS auctions is an allegation that could be imputed as motivation for simply making profit and is not sufficiently concrete to infer scienter."); Sunquest Info., 40 F. Supp. 2d at 661.

[128]    *Amended Complaint* at ¶¶ 60, 65, 131.

[129]    See Jan. 2020 Trans. at 38:9-13 ("We're not saying that the Boustead [D]efendants made these things up. They got [them] from [the] Maguires, but we believe that if they had done their due diligence, as they represented they had done … they would have [have] realized that these representations were not true."); see also *Plaintiffs' Brief in Opposition* at 6 ("Plaintiffs believe and therefor aver that Boustead Securities, Campbell, and Pirchesky failed to exercise reasonable diligence to verify the truth or falsity of the

Boustead Defendants knowingly distributed false or materially inaccurate information about OneJet, the claims of Count 2 must fail.

> **4.** **Count 3:** *Violations of Section 503 of the PSA*
> **(Matthew Maguire, Patrick Maguire, Pirchesky, Campbell, and Boustead Securities, LLC)**

In the *Amended Complaint*, Plaintiffs bring "aiding and abetting" claims under both the PSA and under common law. The first of these claims is found in Count 3, where Plaintiffs allege statutory joint and several liability under section 503 of the PSA against the Maguires and Boustead Defendants for materially aiding in acts or transactions which violate the PSA. Plaintiffs contend that the Maguires engaged in a "scheme to violate" the PSA and the Boustead Defendants are liable either as co-conspirators or aiders and abettors because they either knew or should have known of the scheme.[130] They also allege that the Boustead Defendants were responsible for "putting out material falsehoods to the investing public" to create a sense that "OneJet was a legitimate business operation" to induce sales of its securities.[131]

Section 503(a) provides secondary liability for violations of the PSA as follows:

> (a)    Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe[e] of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of

---

representations that they made regarding the financial viability of OneJet."), 7 ("Boustead Securities, Campbell and Pirchesky would have known of such falsity if they had exercised reasonable diligence").

[130]    *Amended Complaint* at ¶ 141.

[131]    <u>Id</u>. at ¶ 140.

reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.[132]

As a joint and several liability provision, section 503 imposes liability upon one who "materially aids" a section 501 or 502 violation committed by another.  A defendant need not be a "seller" under the PSA to be subject to liability under section 503.[133]

The Defendants suggest Plaintiffs cannot bring a section 503 claim for two reasons.  First, they argue that as a contribution and indemnification provision, section 503 does not support an independent cause of action by a victim of securities fraud.  Second, they contend that even if such a claim exists, Plaintiffs cannot pursue it until after a securities violation is proven to have occurred.  Unfortunately, the case law is split in both areas, so the Court will discuss each in turn.

Pirchesky suggests section 503 does not create an independent cause of action against an aider or abettor of securities fraud.[134]  Relying on the Third Circuit's opinion in Gruber v. Price Waterhouse, he contends that section 503 only affords a right to "joint and several liability, contribution and a corporation's right to indemnification" among those already liable under securities law, but provides no relief to the victim of any such violation.[135]  But a close reading of the case shows that our Court of Appeals was not interpreting section 503 when it made this statement in dicta, and instead, was merely distinguishing another case.[136]  Although

---

[132]   70 Pa. Stat. Ann. § 1-503(a) (West).

[133]   Gilliland v. Hergert, 2007 WL 4105223, at *6 ("there is no requirement that [a defendant] be a "seller" to face liability under Section 1–503."); Bull v. Am. Bank & Tr. Co. of Pa., 641 F. Supp. 62, 67 n.5 (E.D. Pa. 1986) ("Under certain circumstances, § 503 appears to extend civil liability to groups of non-sellers.").

[134]   Defendant Melvin Pirchesky's Motion to Dismiss the Plaintiff's Amended Complaint at 15.

[135]   Gruber v. Price Waterhouse, 911 F.2d 960, 967 (3d Cir. 1990).

[136]   Id.

34

some courts have still quoted the language in <u>Gruber</u> to preclude a cause of action,[137] recent decisions have trended in the opposite direction.[138]   This Court is persuaded by the later camp and adopts the rationale expressed by the district courts in both <u>Fox</u> and <u>Gilliland</u>.   In <u>McCarter v. Mitcham</u>, the Third Circuit left the door open about whether a private cause of action exists under section 503, and the statute's reference to "joint and several liability" is rendered superfluous if only confined to claims between culpable parties.[139]   The Court finds that the statutory language of section 503 suggests that a separate claim may be brought for aiding and abetting liability, and absent explicit Third Circuit precedent or controlling authority from the Pennsylvania state courts to the contrary, the Court will not consider the statute limited solely between co-defendants.

The second issue is whether a party must first be held liable for a violation of the PSA before a section 503 action can arise.   The Defendants argue that the statute "requires that someone other than the § 503 defendant be adjudicated liable under § 501 in order for the defendant to be liable under § 503[,]" relying on the opinion in <u>Daniel Boone Area Sch. Dist. v.</u>

---

[137]   <u>See</u>, <u>e.g.</u>, <u>Daniel Boone Area Sch. Dist. v. Lehman Bros.</u>, 187 F. Supp. 2d 400, 410 (W.D. Pa. 2002); <u>S. Kane & Son Profit Sharing Tr. v. Marine Midland Bank</u>, No. CIV. A. 95-7058, 1996 WL 200603, at *2 (E.D. Pa. Apr. 25, 1996) ("no direct cause of action exists under § 1–503"); <u>In re Phar-Mor, Inc. Sec. Litig.</u>, 892 F. Supp. 676, 688 (W.D. Pa. 1995); <u>Schor v. Hope</u>, No. CIV. A. 91-0443, 1992 WL 22189, at *3 (E.D. Pa. Feb. 4, 1992) (section 503 appears to "contemplate an action by an individual who has been found liable under § 1–501 against other individuals involved in the sale of the securities."); <u>Penturelli v. Spector Cohen Gadon & Rosen</u>, 640 F. Supp. 868, 872 (E.D. Pa. 1986) (regarding section 503, the court found "that the court's conclusion in <u>Biggans</u> that the sole source of private causes of action is 501 is correct").

[138]   <u>See</u>, <u>e.g.</u>, <u>NewSpring Mezzanine Capital II, L.P. v. Hayes</u>, No. CV 14-1706, 2016 WL 7426122, at *2 (E.D. Pa. Dec. 23, 2016) ("a plaintiff other than someone already adjudged liable of securities fraud <u>can</u> bring an action against the aiders and abettors of the principal who committed the fraud.") (emphasis in original); <u>Gilliland v. Hergert</u>, 2007 WL 4105223, at *5 ("the Court concludes that a victim of securities fraud may bring an action against anyone who materially aided the violation and that Section 1–503 is not limited strictly to actions between co-defendants."); <u>Fox Int'l Relations</u>, 490 F. Supp. 2d at 605, <u>order corrected</u> (May 7, 2007); <u>Jairett</u>, 153 F. Supp. 2d at 578 (allowing plaintiffs' 503 claims to proceed).

[139]   <u>See</u> <u>McCarter</u>, 883 F.2d at 204; <u>Gilliland v. Hergert</u>, 2007 WL 4105223, at *5.

<u>Lehman Bros.</u>[140]  They contend that until someone is found liable under section 501, Plaintiffs do not have a cause of action against them under section 503.[141]

Once again, however, this area of the law is muddled as federal courts have failed to offer a uniform outcome in the absence of determinative case law from the Pennsylvania appellate courts.  Several district courts within our Circuit have held that it is unnecessary to "go through the motions of obtaining a judgment against a directly liable party" before pursuing relief under section 503, and to do so would be a "wasteful" use of resources.[142]  Although there are compelling reasons behind either approach, the Court adopts the reasoning of the more recent decisions and concludes that, as a matter of judicial efficiency, a section 503 claim can survive a motion to dismiss without an adjudicated PSA violation so long as a viable 501 claim remains pending in the same proceeding.  If the section 501 claim is later dismissed, then any derivative liability under section 503 would also evaporate.

In this instance, the Court determined that most of the Plaintiffs assert a valid section 501 claim against Matthew Maguire, and since all factual averments are assumed to be true, Plaintiffs have made a sufficient showing of a PSA violation to justify their pursuit of relief under section 503 against the other Defendants.[143]  But to state the obvious, Matthew Maguire cannot be liable for aiding and abetting his own violation of the PSA.  And since the Court

---

[140]    <u>Daniel Boone Area</u>, 187 F. Supp. 2d at 410 ("it appears to be undeniable that a mere allegation that a third party would be liable under § 501 is insufficient to support liability under § 503.").

[141]    *Notice of Motion and Motion to Dismiss* at 22.

[142]    <u>Gilliland v. Hergert</u>, 2007 WL 4105223, at *6 ("such a requirement would only result in fruitless and wasteful litigation"); <u>see</u> <u>also</u> <u>NewSpring Mezzanine</u>, 2016 WL 7426122, at *2; <u>Fox Int'l Relations</u>, 490 F. Supp. 2d at 605, *order corrected* (May 7, 2007) ("the better interpretation of Section 1-503 is that the statute creates a cause of action against a defendant who "materially aids" in a securities violation, ***with or without a prior showing of liability by the plaintiff***.") (emphasis added).

[143]    Because the Court previously denied the claims of the Rule 9(b) Plaintiffs in Count 1, they cannot pursue an aiding and abetting claim under section 503 because there is no underlying section 501 violation.

dismissed Count 2 against the Boustead Defendants, there is no pending section 501 claim (or a prior adjudication of liability) that can support a statutory aiding and abetting claim against Matthew Maguire. Accordingly, Count 3 is dismissed as to Matthew Maguire.

Having addressed these preliminary issues, the Court will now examine the sufficiency of the allegations leveled against each defendant. As to Robert Campbell, the Court finds a dearth of allegations to support a statutory aiding and abetting claim against him. As noted before, despite general allegations that "Campbell and Pirchesky" repeated many of the material misstatements made by the Maguires, the *Amended Complaint* fails to identify a single misrepresentation or material omission made by Campbell, nor does it name a specific plaintiff who received any communications or misinformation from him. Viewing the *Amended Complaint* as a whole, it is plain to see that Pirchesky's alleged misrepresentations were rejiggered to ensnare Campbell, but without the factual content necessary to make a plausible claim against him. Plaintiffs offer no other allegations specific to Campbell, contending only that the Boustead Defendants materially aided the sale of securities "by virtue of their positions as registered brokers under FINRA" and by "putting out material falsehoods to the investing public."[144] These general statements are a mere reiteration of prior averments that have already been found insufficient to justify a claim against him. Because Plaintiffs have not otherwise alleged how Campbell materially aided Matthew Maguire in a violation of the PSA or knew about Maguire's efforts to perpetuate a securities fraud, all claims against Campbell in Count 3 will be dismissed.

The Boustead Defendants also claim that the allegations in the *Amended Complaint* are deficient because they are not alleged to have had fraudulent intent or sufficient knowledge of Matthew Maguire's fraud in a manner that would lead to aiding and abetting

---

[144]    *Amended Complaint* at ¶¶ 137, 140.

liability.[145]  But the Court finds this to be the incorrect standard.  To establish a section 503

claim, Plaintiffs must show that:  (a) some person is liable under sections 501 or 502 of the PSA,

(b) the section 503 defendant is an affiliate, partner, principal executive officer, or director of

such person (or occupy a similar status or perform similar functions), or an employee of such

person, or a broker-dealer, and (c) the section 503 defendant must have materially aided in the

act or transaction constituting the violation.[146]  A defendant can shield himself from section 503

liability if he can prove that "he did not know, and in the exercise of reasonable care could not

have known of" the facts supporting the section 501 or 502 liability.[147]  In this case, the aiding

and abetting claim depends on the section 501 claim asserted against Matthew Maguire in Count

1.  And just as the stand-alone claim under section 501 does not demand proof of scienter or

reliance, the aiding and abetting claim that springs from it does not require a showing of

knowledge or fraudulent intent.  Section 503 instead imposes an "inverse negligence standard"

by which a defendant must show that exercising reasonable care would not have uncovered the

untruth.[148]  And because the allegations may not sound in fraud, the heightened pleading

standard of Rule 9(b) is inapplicable when the claim is based on negligence.

Unlike the more stringent pleading standard imposed in Count 2, the Court finds

the *Amended Complaint* safely clears the lower bar established for Count 3 as to the Broker-

Plaintiffs.  Plaintiffs allege that Matthew Maguire "engaged in a scheme to violate" the PSA and

---

[145]  *Notice of Motion and Motion to Dismiss* at 23; *Defendant Melvin Pirchesky's Motion to Dismiss the Plaintiff's Amended Complaint* at 17.

[146]  70 Pa. Stat. Ann. § 1-503 (West).

[147]  Id.

[148]  See In re Access Cardiosystems, Inc., 776 F.3d 30, 33 (1st Cir. 2015) (the language in section 503 mirrors similar language in section 12(2) of the Securities Act (15 U.S.C.A. § 77l) which has been interpreted to impose liability for negligent misrepresentations or omissions.); see e.g., Shapiro, 964 F.2d at 288, as amended (May 27, 1992); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 n. 28 (3d Cir. 1989).

the Boustead Defendants, as the broker-dealer, "either knew or should have known of the scheme."[149]  From the contours of the *Amended Complaint*, the Boustead Defendants are accused of misconduct in four general areas that can lead to liability under section 503 by:  (a) making material misrepresentations about OneJet's financials;[150] (b) allegedly repeating material misstatements made by the Maguires to solicit investors for OneJet;[151] (c) distributing financial documents from OneJet that were "woefully inaccurate, false and/or misleading[,]" including investment summaries, profit and loss statements, balance sheets, and executive summaries;[152] and (d) suggesting that they "independently" verified the accuracy of OneJet information.[153]  In doing so, Plaintiffs allege that the Boustead Defendants failed to exercise reasonable diligence to verify the truth or falsity of the representations made about OneJet's financial viability.[154]

Boustead suggests many of the Plaintiffs' alleged misrepresentations derive from projections and forecasts of OneJet's financial performance which cannot support a claim  unless they were "knowingly and recklessly" made.[155]  Boustead claims the Plaintiffs must allege the "dates, the speaker, and the actual projections at issue" as well as "facts indicating why the charges against defendants are not baseless and why additional information lies exclusively

---

[149]    *Amended Complaint* at ¶ 141.

[150]    Id. at ¶ 58 (Pirchesky is alleged to have falsely represented, among other things, that OneJet:  (i) had a management team comprised of senior executives from major airlines; (ii) maintained accurate and complete financial and accounting records; (iii) was operating "in the black" by September 2017; (iv) experienced a positive EBITDA for every month after March 2017; (v) was guided by a talented and experienced board of directors; and (vi) received an initial investment of $9 million from the Maguires.).

[151]    Id.

[152]    Id. at ¶¶ 56, 59.

[153]    Id. at ¶¶ 58, 64; 41(1)(B), (2)(C), (10)(D)(1).

[154]    Id. at ¶¶ 60, 65.

[155]    *Notice of Motion and Motion to Dismiss* at 16.

within defendants' control."[156]  But this standard derives from claims made under Section 10(b) of the Securities Act (as well as SEC Rule 10b-5), which implicates the heightened pleading standard of Rule 9(b) which is inapplicable here.[157]  In addition, Plaintiffs satisfied the minimum pleading threshold by identifying at least 13 financial documents that were "woefully inaccurate, false and/or misleading" on an objective basis.[158]  While many projections could rely on subjective opinion, Plaintiffs identify several areas where OneJet's historical performance was misrepresented:

- OneJet's "revenue has been increasing and bottom line losses have been decreasing every month" in 2017;[159]

- OneJet had a "positive EBITDA" for every month after March 2017;[160]

- OneJet's operations were "profitable" during the third quarter of 2017;[161]

- OneJet's "revenues were increasing at the rate of 5% to 10% per month";[162]

- Misrepresentations of OneJet's operating costs, leasing rates, and cash flow "burn" rate; and[163]

- OneJet would have a positive EBITDA for 2017 and 2018 and would own 42 aircraft by 2018.[164]

---

[156]   *Notice of Motion and Motion to Dismiss* at 16 (citing Weiner v. Quaker Oats Co., 129 F.3d 310, 319 (3d Cir. 1997)).

[157]   See Weiner v. Quaker Oats Co., 129 F.3d 310 (3d Cir. 1997).

[158]   *Amended Complaint* at ¶ 56.

[159]   Id. at ¶ 58(E).

[160]   Id. at ¶ 58(F).
[161]   Id. at ¶ 59(A).

[162]   Id. at ¶ 59(B).

[163]   Id. at ¶ 47(A), (B).

[164]   Id. at ¶ 47(K).

Plaintiffs also allege that the Boustead Defendants failed to exercise reasonable diligence to verify the truth or falsity of the representations before disseminating this information to potential investors.

In summary, it bears repeating that this is not a class action and each plaintiff must separately support their own cause of action.  To withstand a challenge to their section 503 claim, each plaintiff must show how Boustead and Pirchesky materially aided Matthew Maguire's violation of state securities law involving *their* investment.  As discussed above, Plaintiffs have alleged enough facts to suggest that Boustead and Pirchesky materially aided Maguire's effort to violate the PSA with respect to the Broker Plaintiffs.  But the Court cannot conclude that these same facts substantiate an aiding and abetting claim against the Non-Broker Plaintiffs.  Pirchesky's misrepresentations and the inaccurate financial statements he circulated cannot be considered to have "materially aided" a violation of securities law for investors who neither heard nor received them.  The Boustead Defendants also cannot be responsible for Maguire's sales of stock that occurred long before Boustead was engaged by OneJet.[165]  And even if Boustead's involvement contributed prestige or "legitimacy" to OneJet's securities offering, none of the Non-Broker Plaintiffs contend that this had a material impact on their decision to invest.

After considering the alleged facts in a light most favorable to Plaintiffs, the Court finds that only the Broker Plaintiffs have provided enough content to establish a plausible claim for relief against Boustead and Pirchesky under section 503.  Boustead and Pirchesky's request

---

[165]    The following plaintiffs acquired their securities prior to Boustead's engagement in February 2017:  Cowen OJ Investment, LLC (2015), William Nasgovitz (2016), Jeffrey Joerres (2016), Michael H. White (2016), Dennis J. Kuester (2016), Timothy Hoeksema (2016), BS5, LLC (2016), Stephen Einhorn (2016), and The Harding-Brown Family Trust (January 18, 2017).  See *Amended Complaint* at ¶¶ 7(7), (16), (20), (23), (24), (26), (31), (38), (57); 50.  With the exception of BS5, LLC, the Court previously determined that these plaintiffs have not shown standing to bring a claim under the PSA.

to dismiss Count 3 will be denied as to the Broker Plaintiffs, but will be granted in all other respects.

The last area of inquiry involves Patrick Maguire. Plaintiffs accuse Patrick of materially aiding in the violations of the PSA by making material misstatements and engaging in a "scheme to violate the [PSA]."[166] While soliciting public investment in OneJet, the Maguires allegedly made several misrepresentations to potential investors, including false statements about the size of their personal investment in OneJet, the nature of the company's financial performance, and the composition of their management team and advisors.[167] The Maguires allegedly provided a myriad of misleading financial documents to investors and collected undisclosed finder's fees from the sale of OneJet securities.[168] Plaintiffs also imply that the Maguires misused at least $60 million in investor funds and destroyed records that would verify the amount of their personal investments in the company.[169]

The Court already found the allegations against Patrick Maguire in Count 1 to be deficient because none of the Plaintiffs allegedly communicated with him, nor did they plead their allegations with sufficient particularity. The outcome is different for Count 3. With an aiding and abetting claim, the Court is compelled to evaluate the allegations under the more permissive standards of Rule 8. Through this review, the Court notes that Patrick Maguire held a central role within OneJet. Aside from being a co-founder, he and Matthew Maguire were the only two officers of the company.[170] The *Amended Complaint* shows that he was an active

---

[166]    *Amended Complaint* at ¶¶ 136, 141.

[167]    Id. at ¶¶ 42, 45, 47.

[168]    Id. at ¶¶ 47-48.

[169]    Id. at ¶¶ 45-46, 104.

[170]    Id. at ¶¶ 17, 111.

participant in OneJet's operations, submitting applications for economic development loans and

providing a personal guaranty of OneJet's performance under two loan agreements totaling

$2,000,000 in debt.[171]   Given this unique status, the Court can reasonably infer that Patrick

Maguire not only had the requisite relationship with Matthew Maguire to sustain a section 503

claim, but he also provided material aid to Matthew's efforts to solicit investors.   Among other

things, Patrick Maguire's capacity as a corporate officer in a two-man executive suite suggests

he either prepared, reviewed, or approved the allegedly misleading OneJet financial statements

before they were ultimately distributed to investors.   Although the allegations are admittedly

sparse as to the nature and extent of his involvement, they are still sufficient at this preliminary

stage to support a plausible claim for statutory aiding and abetting against Patrick Maguire.   The

request to dismiss Patrick Maguire will be denied as to Count 3.

### 5.    Count 4:  *Aiding and Abetting Liability under Common Law Principles* (Matthew Maguire, Patrick Maguire, Pirchesky, Campbell, and Boustead Securities, LLC)

Relying on the same facts used to bolster their claims for violating state securities

law, Plaintiffs allege common law aiding and abetting liability against the Maguires and the

Boustead Defendants in Count 4 of the *Amended Complaint*.[172]   The substance of Count 4 is a

recitation of case law from Pennsylvania and other jurisdictions recognizing the merits of an

aiding and abetting claim under common law.   It does not provide any new factual allegations.

---

[171]    See id. at ¶¶ 24, 28 (regarding an application submitted by Patrick Maguire to the Commonwealth of Pennsylvania Department of Community and Economic Development (DCED) for a low interest loan to OneJet and his personal guaranty of the loan), 37 (involving Patrick Maguire's personal guaranty of OneJet's obligations under a loan extended by the Allegheny County Regional Development Authority to OneJet).

[172]    *Amended Complaint* at ¶¶ 142-47.

Instead, Plaintiffs suggest only that "the Boustead Defendants provided substantial assistance to the Maguires' scheme to violate the [PSA]."[173]

The parties agree that Pennsylvania law recognizes a cause of action for civil aiding and abetting using the elements in § 876 of the Restatement (2d) of Torts.[174]  The components of the claim are as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.[175]

At its core, a claim for common law aiding and abetting liability requires the defendant to engage in tortious conduct that facilitates a common plan or he must provide "substantial assistance" to another committing the tortious act.[176]  A claim under § 876(a) requires proof of an express or implied agreement to engage in tortious conduct, while a plaintiff proceeding under § 876(b)

---

[173]     Id. at ¶ 147.

[174]     See *Plaintiffs' Brief in Opposition* at 32; *Notice of Motion and Motion to Dismiss* at 24 (Boustead and Campbell); *Motion to Dismiss the Plaintiff's Amended Complaint* at 23-24 (Pirchesky); *Motion to Dismiss* at 10 (Lewis); *Motion to Dismiss* at 14 (Patrick Maguire); *Motion to Dismiss* at 8 (Matthew Maguire); see also Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003); Cummins v. Firestone Tire & Rubber Co., 495 A.2d 963 (Pa. Super. 1985); Sovereign Bank v. Valentino, 914 A.2d 415, 416 (Pa. Super. Ct. 2006).

[175]     Sovereign Bank, 914 A.2d at 421.

[176]     Cummins, 495 A.2d at 969 ("In order for this cause of action to be viable, there must be acts of a tortious character pursuant to a common design or plan … [or] a defendant must render substantial assistance to another to accomplish a tortious act."); see also Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998) (although interpreting New Jersey law, finding that "[t]he Restatement requires that an aider and abettor knowingly give assistance or encouragement.").

must show the defendant had actual knowledge of the wrongdoer's actions.[177]  Plaintiffs have

not alleged any sort of agreement between the Boustead Defendants and Matthew Maguire, and

as discussed above, they have not established that the Boustead Defendants knew about the

Maguire's "scheme" to violate the PSA.  That leaves Plaintiffs with a § 876(c) claim which

requires the following elements: (a) the defendant provided substantial assistance; (b) to

someone for the purpose of committing a tortious act that causes injury; and (c) the defendant's

own conduct breaches a legal duty.  A defendant's "substantial assistance" can be gauged upon

consideration of six factors:  the nature of the act encouraged, the amount of assistance given by

the defendant, the defendant's presence or absence at the time of the tort, the defendant's relation

to the other, the defendant's state of mind, and the duration of the assistance provided.[178]

In keeping with principles of Pennsylvania tort law, aiding and abetting liability

"must be founded upon some blameworthy conduct, or lack of due care resulting in the violation

of a duty owing to others."[179]  Courts have denied aiding and abetting claims when the defendant

is passive and has not actively engaged or encouraged a tortfeasor to breach a duty to a third

party.[180]  In addition, a claim for aiding and abetting liability can be dismissed when it contains

no allegation about how the scheme was devised and carried out.[181]

---

[177]   See Restatement (Second) of Torts § 876, comment a (1979); Schwartzman v. Morningstar, Inc., No.
CIV.A. 12-1647, 2014 WL 3843875, at *24-5 (E.D. Pa. Aug. 5, 2014) (citing Reis v. Barley, Snyder, Senft
& Cohen, LLC, 426 F. App'x 79, 84 (3d Cir. 2011)).

[178]   Gilliland v. Hergert, 2007 WL 4105223, at *8 (citing Hurley v. Atlantic City Police Dept., 174 F.3d 95,
128 (3d Cir.1999)).

[179]   Kline v. Ball, 452 A.2d 727, 729 (Pa. Super. Ct. 1982); Daniel Boone Area, 187 F. Supp. 2d at 412 ("The
plain language of § 876(a) indicates that a concert of action claim will lie only if both persons who are
alleged to have acted in concert each committed a tortious act. If one person did not commit a tortious act,
then that person cannot have acted in concert with another person who did harm the plaintiff.").

[180]   See Brandjord v. Hopper, 688 A.2d 721 (Pa. Super. Ct. 1997), appeal denied, Brandjord v. Hopper, 704
A.2d 633 (Pa. 1997) (passengers in car operated by intoxicated driver could not be liable to pedestrian
struck by the vehicle when they did not pressure, coerce or induce the driver to drink or force him to drive
the car); Kline, 452 A.2d at 727 (evidence failed to which, if any, of the student bystanders prompted or

45

The Court will once again evaluate the substance of Count 4 for each defendant. Similar to the preceding claims, the Court finds the allegations pertaining to Robert Campbell are lacking.  At no point have Plaintiffs identified the "substantial assistance" he provided to assist with a PSA violation.  Based on these deficiencies, Count 4 will be dismissed as to Robert Campbell.

Turning next to the Maguires, the Court finds enough allegations that they intended to violate the PSA for the claim to proceed.  Plaintiffs allege that the Maguires acted together to engage in series of wrongful acts that caused injury to the Plaintiffs.  They materially misrepresented their personal investment in OneJet, created and disseminated false financial statements, fabricated a list of individuals on the OneJet management team and board of directors, and misrepresented the size of OneJet's fleet and acquisition plans.[182]  Matthew Maguire also allegedly made inaccurate statements to Pirchesky and passed on misleading financial statements with the knowledge that Pirchesky would use these materials to solicit investors for OneJet.  Matthew Maguire also made misrepresentations to investors in tandem with Pirchesky at various investment meetings and solicitations.[183]

As for Boustead and Pirchesky, the Court determined that Plaintiffs have offered enough allegations to substantiate a statutory aiding and abetting claim as to the Broker

---

encouraged an actor to tip a garbage over a balcony railing, causing injury to an individual below); see also Berman v. Morgan Keegan & Co., 455 Fed.Appx. 92, 96 (2d Cir. 2012) ("[t]he mere fact that participants in a fraudulent scheme use accounts at [a financial institution] to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance").

[181]  See Burnside v. Abbott Lab., 505 A.2d 973, 982 (Pa. Super. Ct. 1985) (plaintiffs did not allege a "tacit understanding or common design to market a defective product" nor did they suggest manufacturers rendered substantial assistance in causing injury); Cummins, 495 A.2d at 968-69 (complaint cannot succeed when it fails to allege that defendant rendered substantial assistance to manufacturers who allegedly engaged in concerted tortious conduct).

[182]  *Amended Complaint* at ¶¶ 42-49.

[183]  Id. at ¶¶ 41(2), (3).

Plaintiffs. These same facts also establish a claim under common law aiding and abetting. According to the *Amended Complaint*, Boustead and Pirchesky provided substantial assistance to Matthew Maguire's investment scheme by distributing materially false and misleading statements about OneJet to prospective investors. Plaintiffs also allege that Boustead and Pirchesky could have discovered the falsity of these statements with appropriate diligence. And although Pirchesky supposedly analyzed the veracity of OneJet's financials, he failed to uncover the misstatements, thereby breaching a duty owed to those investors he solicited. By the same token, Plaintiffs have not shown that Boustead or Pirchesky owed a legal duty to investors whom they did not solicit or contact, nor are they alleged to have performed actions that conceivably affected their investment.[184] Absent further proof that these plaintiffs can pursue an aiding and abetting claim against Boustead and Pirchesky, Count 4 will be dismissed for each of the Non-Broker Plaintiffs.

### C.   Count 5: *Violation of Sections 501 and 503 of the PSA* (Robert Lewis)

In Count 5 of the *Amended Complaint*, Plaintiffs assert violations of sections 501 and 503 of the PSA against Lewis. As discussed above, section 501 is a claim commonly

---

[184]   The *Amended Complaint* does not show any plausible connection between the actions undertaken by the Boustead Defendants and the investments made by the Non-Broker Plaintiffs that would render the facts here analogous to the cases cited by Plaintiffs. See Gilliland v. Hergert, 2007 WL 4105223, at *1 (summary judgment denied for attorney who acted as legal counsel, manager and/or director of the entity that issued securities); In re Enron Corp. Sec., Derivative & "ERISA" Litig., 490 F. Supp. 2d 784, 787 (S.D. Tex. 2007) (denying motion to dismiss where Merrill Lynch was accused of devising and executing transactions to hide Enron's fraudulent accounting from rating agencies by "cooking its books and its SEC-filed reports"); Ret. Program for Employees of Town of Fairfield v. Madoff, No. X08 CV09 5011561S, 2011 WL 7095186, at *5 (Conn. Super. Ct. Dec. 29, 2011) (denying motion to strike and allowing plaintiffs to switch their theory of liability from section 876(c) to 876(b) against defendants who solicited investments in feeder fund interests and placed those funds under the management of Bernard Madoff); CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d 268, 285-86 (1987) (denying motion to dismiss where Morgan Stanley was alleged to have prepared and distributed false and fictitious financial projections to plaintiff and others); Silvercreek Mgmt., Inc. v. Citigroup, Inc., 248 F. Supp. 3d 428, 445 (S.D.N.Y. 2017) (denying motion to dismiss where "the alleged level of involvement here, including participation in "atypical financial transactions," rises well beyond "mere participation" to the point of knowing, substantial assistance.").

brought against the seller of a security, while section 503 imposes liability for aiding and abetting a violation of the PSA. Plaintiffs claim that Lewis was a OneJet shareholder and a member of the Airport Authority Board of Directors.[185] In this dual capacity, Plaintiffs claim Lewis used his position to direct a $1,000,000 grant from the Airport Authority to OneJet and helped negotiate a $1,500,000 loan to OneJet from the Allegheny County Regional Development Authority, which he personally guaranteed.[186]

Plaintiffs contend that Lewis actively solicited investors in OneJet and infer that he took a major role to "initiate and lead the private investment syndicate" for OneJet securities.[187] Plaintiffs allege Lewis was at the forefront of OneJet's promotional efforts and should be considered a "seller" under both sections 501 and 503 of the PSA.[188] They claim he worked closely with Matthew Maguire to arrange meetings with potential investors and touted the grant and loan as an "approval" of OneJet's operations by the respective authorities.[189] The *Amended Complaint* also alleges that Lewis "was repaid some or all of the funds invested in OneJet, to the detriment of all investors and creditors."[190]

Lewis initially raises two issues with Count 5. He first claims that it is inconsistent to allege, within the same claim, that Lewis was both a seller of security under section 501 and also one who aided and abetted the sale of a security under section 503.[191] He

---

[185] *Amended Complaint* at ¶¶ 13, 149, 150.

[186] Id. at ¶¶ 152-54.

[187] Id. at ¶¶ 156, 160.

[188] Id. at ¶¶ 162, 164.

[189] Id. at ¶¶ 155, 161.

[190] Id. at ¶ 69.

[191] *Motion to Dismiss* at 3-4.

also suggests the section 503 claim is deficient because Plaintiffs have not pled that Lewis was an "affiliate" or possessed any other specialized relationship with a section 501 defendant.

At oral argument, Plaintiffs concede they are no longer pursuing Lewis as a "seller" under section 501, so that portion of Count 5 will be dismissed.[192]  As for the affiliation element, Plaintiffs allege that Lewis held himself out as a director of OneJet and distributed business cards with this title.[193]   Lewis was also admittedly a shareholder of OneJet and performed activities consistent with those of executive management by negotiating various grants and loans and offering a personal guaranty of OneJet's obligations.[194]   Assuming these facts to be true, the averments satisfy the affiliation element of section 503 which applies to every "affiliate[,] … partner, principal executive officer or director of [the person liable under section 501], [and] every person occupying a similar status or performing similar functions[.]"[195] Under the PSA, an "affiliate" includes one who is "affiliated with" a person that "directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the person specified."[196]   As both a director and shareholder of OneJet, Lewis ostensibly had direct or indirect control over Matthew Maguire's actions as a OneJet executive.

---

[192]      Jan. 2020 Trans. at 18:5-10:

|  |  |
|---|---|
| Court: | … Are you alleging that [Lewis is] a seller under 501? |
| Mr. J. Cooney: | I think he certainly aided the seller.  I think our real claim against Mr. Lewis is a 503 claim. |
| Court: | Okay. So, it's a 503, not a 501. |
| Mr. J. Cooney: | Yes. |

[193]      *Amended Complaint* at ¶¶ 68, 157.

[194]      Id. at ¶¶ 13, 149-50, 152-54.

[195]      70 Pa. Stat. Ann. § 1-503 (West).

[196]      70 Pa. Stat. Ann. § 1-102 (West).

The Court concludes that Lewis' alleged connections with OneJet and Matthew Maguire fall within these definitional requirements and satisfy the relationship requirement under section 503.

The Court will now examine whether the remaining section 503 elements are adequately alleged here. As noted above, the Court determined that Plaintiffs sufficiently pled a claim for relief under Count 1 as to Matthew Maguire. Assuming those facts to be true, Count 1 establishes a violation of the PSA and opens the door for a claim for aiding and abetting liability against the co-defendants. The next step is to assess whether Lewis materially aided Matthew Maguire with a violation of the PSA. Just as it did with the Boustead Defendants in Count 3, the Court finds it necessary to distinguish between those plaintiffs who interacted with Lewis and those who did not.

While Lewis allegedly played a "key role" in soliciting OneJet investors, only five of the Plaintiffs (the Lewis Plaintiffs) communicated with him.[197] Lewis allegedly introduced James Sacco to Matthew Maguire and pressed both Sacco and his affiliate, B5S, LLC to invest.[198] He also participated in meetings with Matthew Maguire to convince Mitchell Elias Nahra, M.D. and Robert Vadas to purchase securities.[199] Plaintiffs allege that Lewis was "well aware that OneJet was not a financially viable entity and that the Maguires were engaged in violations of the [PSA]."[200] By late 2016, Plaintiffs suggest Lewis was concerned about Maguire's ability to handle OneJet operations.[201] They also contend that Lewis may have been aware that certain aspects of OneJet's business, including its Naples Program, "was a sham from

---

[197]     See *Amended Complaint* at ¶ 72; Jan. 2020 Trans. at 17:1-3. The Lewis Plaintiffs are identified in n. 24.

[198]     *Amended Complaint* at ¶¶ 41(7), (44).

[199]     Id. at ¶ 41(37), (53), (54).

[200]     *Amended Complaint* at ¶ 166.

[201]     Id. at ¶ 167(D).

day 1."[202]  Despite this information, Plaintiffs claim Lewis failed to disclose his knowledge to potential investors when he sought their investments.[203]  From these allegations, the Court discerns enough elements to establish a claim that Lewis materially aided a securities violation by Matthew Maguire as to the five Lewis Plaintiffs.

The connection between Lewis and the remaining Plaintiffs is far more tenuous. Plaintiffs generally allege that Lewis "solicited investments from potential investors[,]" but beyond the five listed above, no other plaintiff is alleged to have communicated with him.[204] Even if Lewis made material misrepresentations, none of the other Plaintiffs claim to have received them, nor did they make an investment decision based on something he said.  Plaintiffs also do not accuse Lewis of preparing any of the solicitation materials circulated to potential investors.  Plaintiffs instead claim that the Maguires promoted Lewis' involvement on the basis that he "could secure favorable treatment for OneJet with the Airport Authority[,]" but the *Amended Complaint* does not identify any plaintiff who heard this statement, nor does it suggest that Lewis knew or approved the use of his name in this way.[205]  Lastly, three other plaintiffs allegedly received solicitation materials listing several OneJet equity holders, including Lewis, but there is nothing in this *Amended Complaint* suggesting the list was inaccurate or created undue pressure for them to invest in OneJet.[206]

Plaintiffs suggest they need not show privity between Lewis and each individual plaintiff, but this misses the point.  Section 503 requires that the defendant materially aid "in the

---

[202]  Id. at ¶ 168.

[203]  Id. at ¶ 166.

[204]  Id. at ¶ 70.

[205]  Id. at ¶ 47(F).

[206]  *Amended Complaint* at ¶¶ 41(21), (42).

act or transaction constituting the violation[.]"[207]   Here, the alleged violation is Matthew Maguire's misrepresentation or omission of material facts while soliciting the investment of each plaintiff.  To establish a claim, Plaintiffs must show how Lewis substantially contributed to the section 501 violation involving each plaintiff.  When the claims are separately evaluated, the *Amended Complaint* falls short for the remaining plaintiffs.  For example, Blair Oak Investments, LP purchased $500,000 in Series B Preferred Stock from Melvin Pirchesky and a $150,000 Term Note from Matthew Maguire.[208]  Each of these transactions may constitute a separate securities law violation.[209]  Yet despite 32 paragraphs detailing Maguire's efforts to lock down Blair Oak's investment, the *Amended Complaint* contains no reference to any role played by Lewis.[210]  Even in the general allegations, Lewis is not alleged to have done anything that would have influenced Blair Oak's decision to invest or assisted Maguire's effort to misrepresent material facts.  Put differently, if Blair Oak was the only plaintiff, it would be obvious that no plausible claim exists against Lewis.  The result is the same when the claims of the other remaining plaintiffs are similarly placed under the microscope.

The Court also notes that the mere allegation that Lewis was repaid a portion of his investment is not, by itself, sufficient to bolster an aiding and abetting claim.  While this assertion may link Lewis to the damages sustained by each plaintiff (or serve as fodder for another claim), it does not advance the section 503 claim because it does not establish how Lewis substantially assisted Maguire with his material misrepresentations to each plaintiff.

---

[207]    70 P.S. § 1-503(a).

[208]    *Amended Complaint* at ¶ 7(10).

[209]    Id. at ¶ 41(10).

[210]    Id. at ¶ 41(10).

The fact that multiple plaintiffs join together to bring similar claims does not alleviate Plaintiffs' burden of establishing the minimum elements for each cause of action. Based on the averments of the *Amended Complaint*, none of the remaining plaintiffs are alleged to have been aware of Lewis' involvement, and if they were, it was not a material factor in their decision to invest in OneJet.   Without direct allegations implicating Lewis in the "act or transaction" involving these 59 plaintiffs, the Court finds no valid claim has been asserted against him and their claims under Count 5 will be dismissed.

### D.   Count 6: *Aiding and Abetting Liability under Common Law Principles* (Robert Lewis)

For Count 6, Plaintiffs incorporate the factual averments from their statutory aiding and abetting claim to assert a similar claim under common law.   At oral argument, Plaintiffs confirmed their theory of liability in Count 6 rests on § 876(c) of the Restatement (Second) of Torts § 876.[211]   Plaintiffs claim Lewis substantially assisted Matthew Maguire's scheme to violate the PSA by soliciting investors when he knew OneJet was not a viable enterprise.[212]   Lewis contends that Plaintiffs have not set forth the required elements for common law aiding and abetting, and furthermore, have not pled their allegations with particularity as required by Rule 9(b).[213]   Lewis also maintains that the *Amended Complaint* is contradictory because he could not have been aware of an investment scheme by the Maguires to mislead investors when he was simultaneously investing his own money and providing a personal guaranty for OneJet loan obligations.[214]

---

[211]      Jan. 2020 Trans. at 19-20.

[212]      *Amended Complaint* at ¶¶ 166, 172.

[213]      *Motion to Dismiss* at 11.

[214]      Id. at 13.

As noted above, a claim for common law aiding and abetting under § 876(c) requires that one "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."[215] Upon examination of the *Amended Complaint*, the Court finds the requisite elements for such a claim are present as to the five Lewis Plaintiffs who were personally solicited by Lewis.  The allegations reveal that Matthew Maguire and Lewis were acting together to solicit investments from these parties.[216]  Lewis supposedly initiated and led a "private investment syndicate" on behalf of Matthew Maguire and OneJet,[217] and he pursued investments with Maguire.[218]  Lewis was allegedly aware of Matthew Maguire's misconduct, but continued to provide assistance nonetheless.  In communications with one investor, Lewis allegedly said that he was worried about Matthew Maguire since the end of 2016 and had been "trying to get this guy straight for a year[.]"[219]  Lewis also suggested that "[t]he Naples operation was a sham from day 1."[220]  Lastly, Lewis is said to have given substantial assistance to Matthew Maguire by making material misrepresentations and omissions to attract new investment even though Lewis knew that OneJet was not financially viable and the Maguires were engaged in violations of the PSA.[221]  Rather than disclose his knowledge to potential investors, Lewis allegedly remained silent to enrich his

---

[215]     Sovereign Bank, 914 A.2d at 421.

[216]     *Amended Complaint* at ¶ 70.

[217]     Id. at ¶¶ 72(C), 160(C).

[218]     Id. at ¶¶ 41(7), 73, 161.

[219]     Id. at ¶¶ 75(A), (D)(3), 167(A), (D).

[220]     *Amended Complaint* at ¶¶ 75(C)(2), 81, 168.  Although some of these communications occurred after OneJet imploded, Plaintiffs suggest they show Lewis' state of mind at the time he was soliciting investment.

[221]     Id.  at ¶¶ 41(44)(U), 53(B), 54(B), 165, 166.

own financial and economic interests.[222]  Among those, Lewis allegedly cashed out at least half of his investment before OneJet crashed.[223] From these alleged facts, the Court finds a sufficiently pled claim for common law aiding and abetting and the request to dismiss Count 6 will be denied.

As for the remaining 59 plaintiffs, the Court regards the claim to be lacking. Consistent with its discussion of Count 5, the Court finds insufficient allegations to suggest that Lewis owed a legal duty to these parties and then breached it.  The Court will therefore grant the request to dismiss Count 6 as to all plaintiffs excluding the five personally solicited by Lewis.

E.    **Count 7:** *Aiding and Abetting Liability under Common Law Principles*
      **(Robert Lewis and David Minnotte)**

In Count 7, Plaintiffs allege a cause of action for aiding and abetting liability under common law against Lewis and Minnotte.[224]  Significantly, this is the only claim where Minnotte is named a defendant.  Plaintiffs allege that while Minnotte and Lewis held shares in OneJet, they used their positions on the Airport Authority board to steer a $1,000,000 economic development grant to the company.[225]  Plaintiffs allege that Minnotte and Lewis leveraged the grant as a marketing tool to solicit investments in OneJet, suggesting the grant signified the Airport Authority's "approval" of OneJet's operations.[226]  Plaintiffs also allege that Pirchesky and the Maguires publicized the investments of notable local figures, including Minnotte and

---

[222]    Id. at ¶¶ 163, 166.

[223]    Id. at ¶ 69.

[224]    Id. at ¶¶ 173-88.

[225]    *Amended Complaint* at ¶¶ 174-78.

[226]    Id. at ¶¶ 179, 180.

Lewis, as endorsements of OneJet to attract additional investors.[227]  Pirchesky allegedly said the pair "could secure favorable treatment for OneJet with the Airport Authority."[228]  The *Amended Complaint* suggests that at least one plaintiff considered Minnotte's "endorsement" to be a substantial factor in his decision to invest in OneJet.[229]  Plaintiffs claim Minnotte and Lewis are liable to Plaintiffs because they were either aware or should have been aware that the Maguires were involved in "an investment scheme to mislead investors" but did nothing to prevent the use of their names to promote the scheme.[230]

Plaintiffs' third common law aiding and abetting claims is their weakest and it is admitted as such.[231]  Count 7 essentially asserts that Lewis and Minnotte aided and abetted the Maguires' scheme by lending their names, prestige, and influence with the Airport Authority to bolster OneJet's operations and generate interest among potential investors.  Unlike its sister claims, however, Count 7 fails to offer sufficient factual averments that ripen into an actionable claim.

Assuming the facts of the *Amended Complaint* to be true, Plaintiffs are unable to establish how Lewis and Minnotte substantially assisted a scheme to defraud investors as alleged in Count 7.  Plaintiffs contend that OneJet solicitation materials used Lewis' and Minnotte's names to create demand for its securities, but there is no allegation that Lewis and Minnotte were aware of these marketing efforts or endorsed them.  And out of 64 plaintiffs, only one claims that

---

227    Id. at ¶¶ 41(13)(D), 184.

228    Id. at ¶ 183.

229    Id. at ¶¶ 41(13)(D), 180.

230    Id. at ¶ 186.

231    Jan. 2020 Trans. at 9:3-12.

Minnotte's involvement had any impact on his decision to invest.[232]  The *Amended Complaint* also cannot identify a single plaintiff that Minnotte contacted, and Lewis communicated with no more than five.  Count 7 also does not reference any material misrepresentations made by Lewis and Minnotte, instead referring to statements made about them by Matthew Maguire and Pirchesky.  Yet even those statements appear to be true.  Lewis and Minnotte had indeed invested in OneJet, and Defendants do not appear to dispute that the Airport Authority extended financial benefits to OneJet while Minnotte and Lewis sat on its board.

Plaintiffs also fail to identify the legal duty owed by Lewis and Minnotte to the investors and how it was breached.  At best, Plaintiffs have alleged that Lewis and Minnotte directed the use of public funds to prop up a business in which they owned a personal stake.  While this conduct might raise conflict of interest concerns and may even breach duties owed to the Airport Authority or Allegheny County, it does not readily implicate a duty owed to the individual investors, and thus does not support a claim for aiding and abetting liability.

Plaintiffs cite cases from other jurisdictions to support an expansive interpretation of the aiding and abetting tort, but even those courts recognize that a threshold level of knowledge and culpable conduct by the defendant is required before liability can attach.[233]  Without the critical elements of knowledge, substantial assistance, and a legal duty, disgruntled investors might routinely seek damages from high-profile investors like Warren Buffet whenever an attempt to mimic his portfolio leads to a worthless investment.  In fact, the fallacy of

---

[232]    *Amended Complaint* at ¶ 41(13)(D).

[233]    See In re Enron Corp., 490 F. Supp. 2d at 790 (interpreting Texas securities law to find that the aider and abettor must have (a) a general awareness of their role in the violation, (b) given substantial assistance in the violation, and (c) intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations); Silvercreek Mgmt., 248 F. Supp. 3d at 446 (plaintiff's complaint alleged with particularity now certain financial institutions helped company engage in fraudulent transactions and supplied ample detail as to who knew about the nature of the transactions and their fraudulent underlying purpose and provided substantial assistance).

Plaintiffs' legal theory in Count 7 is laid bare when one considers that OneJet touted the investments of several high-profile individuals, including a few plaintiffs, yet only Lewis and Minnotte were targeted with this claim. In consideration of these deficiencies, Plaintiffs' aiding and abetting claim cannot survive and Count 7 will be dismissed.

   F.   **Count 8:** *Negligent Misrepresentation*
        **(Pirchesky, Campbell, and Boustead Securities, LLC)**

   Plaintiffs' final claim asserts common law liability for negligent misrepresentation against the Boustead Defendants. Plaintiffs contend that the Boustead Defendants made material misrepresentations and distributed material misstatements about OneJet's viability to induce further investment.[234] They contend the Boustead Defendants are liable to all investors who relied on the information, regardless of whether they bought their securities from Pirchesky.[235] Plaintiffs also assert that, even if the Boustead Defendants were unaware that the statements were false, they owed a duty of reasonable care to ensure the statements were accurate.[236]

   To establish a claim of negligent misrepresentation under Pennsylvania law, the following elements must be shown:

   > (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.[237]

Unlike an intentional misrepresentation, "the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation [concerning] the truth" of a material

---

[234]   *Amended Complaint* at ¶ 197.

[235]   Id. at ¶¶ 193, 201.

[236]   *Amended Complaint* at ¶¶ 192, 199.

[237]   Bortz v. Noon, 729 A.2d 555, 561 (Pa. Super. Ct. 1999) (citations omitted).

fact.[238]  A plaintiff must also establish the existence of a duty owed by one party to another.[239]

Contractual privity is unnecessary because Pennsylvania adopted § 522 of the Restatement

(Second) of Torts as the foundation for a cause of action "where information is negligently

supplied by one in the business of supplying information … and where it is foreseeable that the

information will be used and relied upon by third persons, even if the third parties have no direct

contractual relationship with the supplier of the information."[240]

The Court already found the *Amended Complaint* deficient because it did not

allege a specific material misrepresentation made by Campbell.  It also did not identify any

plaintiff who heard Campbell make a misstatement.  For these reasons, Count 8 will be

dismissed as to Campbell.

The Boustead Defendants contend that Plaintiffs' fraud-based claims are recast in

Count 8 as a negligent misrepresentation claim, and that is undoubtedly true.  But it does not

discount the viability of the cause of action.  As noted before, Plaintiffs identify several material

misstatements made or repeated by Pirchesky and contend that he "failed to exercise reasonable

diligence to verify the truth or falsity" of the statements.[241]  Plaintiffs assert that OneJet was not

financially viable when those statements were made and their securities were subsequently

rendered worthless.[242]

---

[238]  Id.

[239]  Id.

[240]  Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 287 (Pa. 2005).

[241]  *Plaintiffs' Brief in Opposition* at 6; *Amended Complaint* at ¶ 60.

[242]  *Amended Complaint* at ¶ 103.

The Boustead Defendants maintain that Plaintiffs fail to sufficiently plead the fourth element – reliance – as to most of the Plaintiffs' claims.[243]  They note that the Non-Broker Plaintiffs admittedly did not acquire OneJet securities from Pirchesky, nor are they alleged to have received any communications from the Boustead Defendants.  And among those Broker-Plaintiffs who purchased stock from Pirchesky, only four (Orttech Ltd.; Triad Investments, Inc.; The Gregory S. Zenczak Family Dynasty Trust;  and The Stephen J. Zenczak Family Dynasty Trust, together, the "Zenczak Plaintiffs") allege to have relied on any misstatements.[244]  Plaintiffs respond by claiming that, aside from the direct sales procured by Pirchesky, the Boustead Defendants were responsible for innumerable indirect sales because the investing public perceived their involvement as legitimizing the OneJet business operations.[245]

Before Plaintiffs can build a case for justifiable reliance, they must first show they were aware of the Boustead Defendants, their statements, or their solicitation materials.  After canvassing the *Amended Complaint*, the Court finds nothing to bolster a claim for negligent misrepresentation by any of the Non-Broker Plaintiffs.  Aside from having no direct interaction with Pirchesky, none of the Non-Broker Plaintiffs allege to know anything about his involvement.  They also did not receive any communications or financial documents from him, nor did they hear any statements he may have made.  The same can be said for Boustead.  Instead, each of these plaintiffs bought their securities from Maguire and ostensibly made their investments based on the information he provided.  While privity may not be required, the Boustead Defendant's actions still must have some discernible influence on the investor's decision to purchase OneJet securities.  Because the *Amended Complaint* offers no facts on

---

[243]     *Notice of Motion and Motion to Dismiss* at 26.

[244]     Id. at 15, 26.

[245]     *Plaintiffs' Brief in Opposition* at 31-32, 36.

which the Court can find that the Non-Broker Plaintiffs were aware of Boustead or Pirchesky's misstatements, they have not shown justifiable reliance and thus have not alleged a plausible claim for negligent misrepresentation.  The Court will dismiss Count 8 as to the Non-Broker Plaintiffs.

As for the Broker Plaintiffs, the Court finds the pleading standard suggested by the Boustead Defendants to be too rigorous.  The claims alleged in Count 8 are for mere negligence and the specificity required under the heightened pleading standard of Rule 9(b) is inapplicable.  Instead, Plaintiffs must put the Boustead Defendants on notice of the facts supporting the legal elements of their claim, and here, the Court finds they have done so.  When examining the entire *Amended Complaint*, the Court finds that despite its failure to use precise terms like "reliance" or "relied" for each Broker-Plaintiff, the allegations show that the Boustead Defendants made many material statements about OneJet's profitability and operations before investment decisions were made.  And because most of those plaintiffs bought their securities from Pirchesky and do not claim to have received OneJet information from any other source, the Court can reasonably infer, viewing the *Amended Complaint* in a light most favorable to Plaintiffs, that they relied on his statements when making their investments.[246]

To draw a reasonable inference, however, the *Amended Complaint* must provide the Court with suitable underlying facts.  The Court finds that the Zenczak Plaintiffs provide insufficient factual content to bolster a claim of negligent misrepresentation.  Although Pirchesky allegedly sold securities to these plaintiffs, they do not attribute any specific

---

[246]    See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This assessment does not alter the ultimate burden of proof for reliance in the context of an omission or an omission and representation made in connection with the sale of securities.  See, e.g., Hoxworth, 903 F.2d at 202, *holding modified by* Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994); Sharp v. Coopers & Lybrand, 649 F.2d 175, 189 (3d Cir. 1981).

misrepresentations to him.[247]  Rather, the Zenczak Plaintiffs identify a series of false statements made by Matthew Maguire during a December 2017 meeting in Cleveland.  Importantly, each of the Zenczak Plaintiffs allege they relied on the misrepresentations of Matthew Maguire – not any statement made by Pirchesky – when making their investments.[248]  Absent a direct allegation that Pirchesky made a false statement to them or omitted a material fact, the Zenczak Plaintiffs fail to set forth a valid claim for relief against the Boustead Defendants.

The Boustead Defendants also seek dismissal of claims brought by David Aloe, Andrew Constantakis, and Matthew Johnson because they did not directly receive solicitation information and financials from Pirchesky, but had the information passed on from other investors.  Viewing the facts in a light most favorable to Plaintiffs, it is reasonably foreseeable that prospective investors might share solicitation materials with each other, and thus the Court finds no basis to dismiss the claims of these plaintiffs at this time.[249]

Boustead argues that some claims are ripe for dismissal because the alleged misrepresentations occurred _after_ Plaintiffs acquired their OneJet securities.  Boustead contends that the claims of at least four plaintiffs are not actionable because "there is no possibility that a Plaintiff could have relied on or considered a representation that was made after they had already invested."[250]  While the legal principle may be accurate, it does not extinguish the claims referenced by Boustead.  As the chart below shows, each of the four plaintiffs identified by

---

[247]    <u>Compare</u> _Amended Complaint_ at ¶¶ 7 (22), (40), (52), (58), (59) <u>with</u> ¶¶ 41 (22), (40), (52), (58), and (59).

[248]    <u>Id</u>. at ¶ 41(39)(D), 52(D), 58(D), 59(D).

[249]    <u>See</u> <u>Bilt-Rite Contractors, Inc.</u>, 866 A.2d at 287 (adopting section 552 of the Restatement (Second) of Torts in Pennsylvania to impose liability "where information is negligently supplied by one in the business of supplying information … and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information.").

[250]    _Notice of Motion and Motion to Dismiss_ at 15.

Boustead alleged they received misrepresentations from Pirchesky before they acquired OneJet securities:

| Plaintiff | First Alleged Misrepresentation | Date Securities Acquired | Cite in Amend. Compl. |
|---|---|---|---|
| Aloe Brothers, LLC | 2/9/2017 | 6/6/2017 | ¶ 7(2); ¶41(2) |
| Blair Oak Investments, LP | 2/9/2017 | 3/10/2017 | ¶ 7(10); ¶ 41(10) |
| Constantakis, Nicholas & Veronica | 7/12/2017 | 7/26/2017 | ¶ 7(15); ¶ 41(15) |
| Flighthawk, LLC | 2/2/2018 | 4/4/2018 | ¶ 7(21); ¶ 41(21) |

Boustead's request for dismissal is therefore denied with respect to these four plaintiffs.

## IV.   CONCLUSION

Based on the discussion above, the motions to dismiss filed by Robert Campbell and David Minnotte will be granted. As to all other defendants, the motions are granted in part and denied in part for the reasons stated in this *Memorandum Opinion*. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: May 22, 2020

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

cm:
James Cooney, Esq.
Brian Bisignani, Esq.
Patrick Cavanaugh, Esq.
Zachary Gordon, Esq.
George Fitting, Esq.
Jerry Stubenhofer, Esq.
Jason Ott, Esq.
Jason Shedlock,Esq.
Stephanie Short, Esq.
Keith Whitson, Esq.