**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Bankruptcy No. 18-24070 |
| ONEJET, INC., | Adversary No. 19-02134-GLT |
| Debtor. | |
| _____ | Related to Adversary Doc. Nos.: |
| WOODY PARTNERS et al, | 216, 343, 344 and 345 |
| Plaintiffs, | |
| v. | |
| MATTHEW R. MAGUIRE, PATRICK MAGUIRE, BOUSTEAD SECURITIES, LLC and ROBERT LEWIS, | |
| Defendants. | |

## MOTION FOR LEAVE TO AMEND PLAINTIFFS' AMENDED COMPLAINT

And now, the Plaintiffs, Woody Partners et al, by their attorneys, Robert O Lampl, James R. Cooney, Ryan J. Cooney and Sy O. Lampl, submit the within Motion for Leave to Amend Plaintiffs' Amended Complaint:

**Background:**

1. The Plaintiffs, Woody Partners et al, are shareholders and/or noteholders of OneJet, Inc. (OneJet), a California corporation.

2. All of the Defendants either sold or participated in the sale of OneJet securities to the Plaintiffs.

3. On December 5, 2018, the Plaintiffs initiated the within action by filing a Complaint in Civil Action in the Court of Common Pleas of Allegheny County.

4. In their Complaint, the Plaintiffs asserted claims under the Pennsylvania Securities Act, aiding and abetting liability and negligent misrepresentation, all arising out of their purchase of OneJet securities.

5. On January 8, 2019, the case was removed to the United States District Court for the Western District of Pennsylvania.

6. By Order entered on June 16, 2019, the Honorable Marilyn J. Horan transferred the case to this Honorable Court.

7. All of the Defendants filed Motions to Dismiss pursuant to *Fed.R.Civ.P. 12*.

8. On September 27, 2019, this Honorable Court entered an Order requiring the Plaintiffs to file a more definite statement.

9. On October 28, 2019, the Plaintiffs filed their Amended Complaint.

10. The Amended Complaint asserts that the Defendants' sale of OneJet securities to the Plaintiffs violated the Pennsylvania Securities Act (*70 P.S. 1-201 et seq)* and was contrary to their duties under Pennsylvania common law.

11. All of the Defendants filed Motions to Dismiss the Amended Complaint.

**The Opinion and Order of May 22, 2020**

12. On May 22, 2020, this Honorable Court entered the Memorandum Opinion and Order which controls the issues that are remaining in this case.

13. Among other things, this Honorable Court:

A. Dismissed Robert Campbell and David Minnotte as party

2

Defendants.

B. Held that the 19 "out-of-state" Plaintiffs lacked standing to assert claims under the Pa. Securities Act (Opinion, pp. 8-11).

C. Held that thirty (30) of the Plaintiffs had asserted viable claims against Matthew Maguire under Section 501 of the Act (Opinion, pp. 15-21).

D. Held that thirty (30) of the Plaintiffs had asserted viable aiding and abetting claims against Patrick Maguire under Section 503 of the Act (Opinion, pp. 15-21).

E. Held that all of the Plaintiffs had asserted viable aiding and abetting claims against Matthew Maguire and Patrick Maguire under common law principles (Opinion, pp. 43-46).

F. Held that five (5) of the Plaintiffs had asserted viable aiding and abetting claims against Robert Lewis under both Section 503 and common law principles (Opinion, pp. 47-55).

**The remaining claims against Boustead:**

14. In dealing with the Plaintiffs' claims against Boustead Securities, LLC (Boustead), this Honorable Court held that only the "Broker Plaintiffs"[1] had valid claims (Opinion, p. 23).

15. This Court held that 17 of the Broker Plaintiffs had asserted viable claims against Boustead in Count 3 for aiding and abetting under Section 503 of the Act (Opinion, pp. 33-42). This Court held that Section 503 imposes an "inverse negligence" standard, and that to escape liability, a defendant must

---

[1] 28 of the 64 Plaintiffs who purchased OneJet securities from or through Boustead's agent, Mel Pirchesky (Opinion, p. 23).

3

show that the exercise of reasonable care would not have uncovered the untruth (Opinion, p. 38). This Court concluded that the Broker Plaintiffs had alleged enough facts to suggest that Boustead "materially aided" Maguire's violations of the Act (Opinion, p. 41).

16. This Court held that 22 of the Broker Plaintiffs had asserted viable aiding and abetting claims against Boustead in Count 4 under common law principles (Opinion, pp. 46-47).

17. This Court held that 18 of the Broker Plaintiffs had asserted viable claims against Boustead in Count 8 for negligent misrepresentation (Opinion, pp. 58-63). This Court held that Plaintiffs had adequately alleged that Boustead made material misstatements before the Broker Plaintiffs made their investment decisions, and that the Court can "reasonably infer" that the Broker Plaintiffs relied upon Boustead's statements (Opinion, p. 61).

**The settlements:**

18. On February 8, 2021, this Honorable Court entered an Order directing this case to mediation.

19. Joel M. Walker was selected as the Mediator.

20. Formal mediation sessions were held on April 7 and 8, 2021, and informal sessions with the Mediator continued thereafter.

21. As a result of the mediation:

A. The Plaintiffs have agreed upon a full and final settlement with Matthew Maguire and the Estate of Patrick Maguire.

4

B. The Plaintiffs have also agreed upon a full and final settlement with Robert Lewis.

22. Accordingly, the only remaining claims in this case are the Broker Plaintiffs' claims against Boustead[2] for aiding and abetting liability under *70 P.S. 1-503* (Count 3), common law aiding and abetting (Count 4) and negligent misrepresentation (Count 8).

23. Such claims total in excess of $6.2 million dollars, excluding interest and costs.

### A. The within Motion to Amend the Amended Complaint:

24. Since the filing of the Amended Complaint (on October 28, 2019), the Plaintiffs have become aware of several facts which justify a further amendment of the Complaint to join Keith Moore, the CEO of Boustead, as well as Boustead's parent company, Boustead & Company, Limited (BCL), as party Defendants. These facts did not become available until March of 2021 during the mediation stay.

25. As a registered broker with FINRA, Boustead was required to maintain adequate errors and omissions insurance.

26. However, the Plaintiffs have discovered that Boustead had no insurance coverage whatsoever at the time that it solicited the Plaintiffs to invest in OneJet.

27. In addition, the Plaintiffs have discovered that Boustead is grossly under-capitalized.

---

[2] Mel Pirchesky has filed a Petition for Relief under Chapter 7 of the Bankruptcy Code.

5

28. A true and correct copy of Boustead's Annual Report pursuant to SEC Rule 17a-5(d) for the Year ended on December 31, 2020 is attached hereto as Exhibit "A." This Report was published and made available to the public on March 22, 2021.

29. As indicated, Boustead's CEO, Keith Moore, signed the Acknowledgment for the Report filed with the SEC.

30. The total equity in the Company was $2.9 million dollars. However, the net capital was only $522,724.00 as of December 31, 2020.

31. Note 9 to the Annual Report identifies pending litigation including the present case. Note 9 asserts that the claims in the case are "baseless" and that the Company "has not provided for any award or costs related to this matter." Such statement is completely contrary to this Honorable Court's Opinion of May 22, 2020, holding that the Broker Plaintiffs have asserted valid claims against Boustead. This is also contrary to SEC regulations which would require Boustead to set aside a loss contingency. See, *In re Snap Securities Litigation*, 2018 U.S. Dist. LEXIS 97704 (C.D. Ca. 2018):

> With regard to the Pompliano claim, Defendants contend that Snap was not required to disclose Pompliano's lawsuit under Accounting for Unasserted Claims (ASC) Standard 450. ASC 450, labeled Contingencies, outlines the accounting and disclosure requirements for loss and gain contingencies reporting in an S-1. ASC 450 "set[s] out different rules for claims that have been asserted and those that have yet to be asserted." *SEC v. RPM Int'l*, 282 F. Supp. 3d 1, 2017 WL 4358693, at *12 (D.D.C. 2017). "[F]or a claim that has been asserted, an issuer must disclose a loss contingency if there is 'at least a reasonable possibility' that a loss may be incurred, even if the amount cannot be reasonably estimated."

See also, *SEC v. RPM Int'l*, 282 F. Supp. 3d 1 (D.D.C. 2017).

6

32. The Plaintiffs have also discovered that Boustead has engaged in substantial inter-company transfers with its parent company, BCL. Note 11 to the Annual Report discloses that Boustead "has advanced monies to Boustead & Company, Limited (BCL), its parent corporation." As indicated, in the calendar year ending on December 31, 2020, Boustead "advanced" the sum of $1,173,611.00 to BCL. Note 11 goes on to disclose that "the advances carry no interest and are repayable at any time."

33. Such disclosures reveal that Keith Moore can employ BCL, at his whim, to make Boustead judgment proof and to avoid Boustead's obligations to the Plaintiffs.

34. These discoveries have caused Plaintiffs to investigate the relationships between Keith Moore, Boustead and Boustead's parent company, BCL.

35. Such investigation supports a further amendment to the Complaint to join Moore and BCL as parties based upon alter ego principles.

36. According to Boustead's Annual Report (Exhibit "A" hereto), Boustead is "wholly owned" by BCL.

37. During the calendar year ending on December 31, 2020, Boustead "advanced" the sum of $1,173,611.00 to BCL.

38. According to BCL's Website (www.bousteadco.com), Keith Moore is both the CEO and CFO of BCL.

39. Keith Moore is also the CEO and CFO of Boustead and was the "founder" of the company.

40. BCL and Boustead share offices at 6 Venture Street, Irvine, CA 92618.

41. Keith Moore also controls several affiliates of Boustead.

42. According to Boustead's Annual Report (Exhibit "A" hereto), Sutter Capital Partners, LLC (SCP) is an "affiliate" of Boustead. Keith Moore is both the CEO and CFO of SCP. SCP shares offices with Boustead and BCL at 6 Venture Street, Irvine, CA 92618. According to SCP's Annual Report, SCP provides "consulting services" to BCL and Boustead.

43. According to Boustead's Annual Report (Exhibit "A" hereto), Sutter Securities, Inc. (SSG) is also an "affiliate" of Boustead. Keith Moore is both the CEO and CFO of SSG. According to BCL's Annual Statement filed with FINRA, SSG is wholly owned by its parent company, SCP, which in turn, is wholly owned by BCL. SSG shares offices with Boustead, BCL and SCP at 6 Venture Street, Irvine, CA 92618.

44. According to Boustead's Annual Report (Exhibit "A" hereto), Flash Funders Shareholders Group (FFSG) is also an "affiliate" of Boustead. According to FFSG's website, (www.flashfunders.com), FFSG is wholly owned by SCP, which in turn, is wholly owned by BCL. Keith Moore is the CEO of FFSG. FFSG shares offices with Boustead, BCL, SCP and SSG at 6 Venture Street, Irvine, CA 92618. According to BCL's website ([www.boustead1828.com](www.boustead1828.com)), FFSG was "acquired" by BCL on August 28, 2017.

8

45. In addition to Keith Moore's control of Boustead, BCL and the affiliates, Keith Moore had substantial participation in Boustead's solicitations of the Plaintiffs' investments. Among other things:

A. Keith Moore signed the Placement Agent and Advisory Services Agreement with OneJet which authorized Boustead to solicit investments for the Maguires/OneJet.

B. Keith Moore signed the Independent Broker Agreements with Robert Campbell and Mel Pirchesky, which authorized Campbell and Pirchesky to solicit investments for the Maguires/OneJet.

C. Keith Moore signed the Escrow Agreement with VMD Law Group, LLC which provided for the deposit of funds raised by Boustead on behalf of OneJet.

D. Keith Moore was required to approve and sign-off on each of the investments made by the Plaintiffs.

E. In its Initial Disclosures submitted pursuant to Fed.R.Civ.P. 26, Boustead listed Keith Moore as having knowledge of the underlying facts in this case as well as Boustead's involvement in the events described in the Complaint.

F. Keith Moore provided the information for Boustead's Responses to Plaintiff's Discovery Requests.

G. Keith Moore engaged in correspondence with PartnerRe Ireland Insurance in connection with Boustead's attempts to obtain insurance coverage for the claims asserted in the within case.

### B. Legal standards for Amendment:

46. The law is clear that:

> Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Grant of leave to amend is within the discretion of the district court, and should be granted unless there is "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)….
>
> A party opposing amendment "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

See, *Clientron Corp. v. Devon IT, Inc.,* 2015 U.S. Dist. LEXIS 962 (E.D. Pa. 2015). See also, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

47. A motion to amend to add new parties is considered under both Rule 15 and Rule 21, and the same liberal standard applies. See, *Custom Pak Beverage, LLC v. Dandrea Produce, Inc.,* 2014 U.S. Dist. LEXIS 31681 (D. N.J. 2014):

> In evaluating the propriety of an amended pleading pursuant to Federal Rule of Civil Procedure 21, the Court applies the same "liberal" standard applicable to motions arising under Federal Rule of Civil Procedure 15(a). Sly Magazine, LLC v. Weider Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007) ("In deciding whether to allow joinder, courts adhere to 'the same standard of liberality afforded to motions to amend under Rule 15.'") (citing Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00-7909, 2001 U.S. Dist. LEXIS 415, 2001 WL 58000, at *2 (S.D.N.Y. Jan. 23, 2001)); Sutton v. New Century Fin. Servs., No. 05-3125, 2006 U.S. Dist. LEXIS 93685, 2006 WL 3676306, at *1 (D.N.J. 2006).

See also, *Erus Builders, LLC v. Volt Solar Systems,* 2016 U.S. Dist. LEXIS 74774 (D. Az. 2016).

48. Pursuant to the liberal standard for amendments, several courts have permitted plaintiffs to amend their complaints to add "alter-ego" parties. The case of *Lozosky v. Keystone Business Products, Inc.,* 2015 U.S. Dist. LEXIS 104291 (M.D. Pa. 2015) is directly on point. In *Lozosky,* the plaintiff filed an ADA claim against a corporate defendant. During discovery, the plaintiff learned that the owner of the company had commingled his accounts with the corporate defendant and had used corporate funds to pay personal expenses. Based upon the same, the plaintiff sought to amend her complaint to add alter-ego claims against the owner. The district court permitted the amendment, holding that:

> Plaintiff has alleged enough facts in her proposed amended complaint to state a cognizable theory of veil piercing necessary to permit this claim to proceed against Mr. Morda. Plaintiff has met the stringent burden to pierce the corporate veil since she has alleged that Mr. Morda abused the legal separation between himself and Keystone and used Keystone and its assets for improper purposes. *See Clientron Corp. v. Devon IT, Inc.*, 2015 U.S. Dist. LEXIS 962, 2015 WL 70921 (E.D.Pa. Jan. 05, 2015). Moreover, there are exCeptional circumstances to warrant piercing Keystone's corporate veil and holding Mr. Morda personally liable for Keystone's obligations since he sold all the assets of Keystone to a third party, Stratix, on December 12, 2014, and Keystone was denied insurance coverage regarding plaintiff's discrimination claims.

Similarly, in *Clientron Corp. v. Devon IT, Inc.,* 2015 U.S. Dist. LEXIS 962 (E.D. Pa. 2015), the Court permitted a similar amendment, holding that:

> The Court is not able to conclude that Clientron's proposed amendment is futile. Pennsylvania courts consider a number of factors in determining whether to pierce the corporate veil, including "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 42, 669 A.2d 893, 895 (1995). The Court believes Clientron has pleaded "factual content that allows the court to draw the reasonable inference" that a number of these factors are present, and the proposed amendment therefore is not futile.

11

See also, *Partner Reinsurance Co. v. RPM Mortgage, Inc.,* 2020 U.S. Dist. LEXIS 212519 (S.D. NY 2020):

> Courts have often held that the addition of alter-ego claims or, claims against new defendants that track existing claims, will not unduly prejudice defending parties. *See, e.g., Essar Steel Algoma Inc. v. S. Coal Sales Corp.* ("*Essar Steel I*"), No. 17 Misc. 360 (AT) (RWL), 2018 U.S. Dist. LEXIS 188199, 2018 WL 6332900, at *6 (S.D.N.Y. Oct. 29, 2018); *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 38-40 (S.D.N.Y. 2016); *A.V.E.L.A. I*, 34 F. Supp.3d at 318; *Soroof*, 283 F.R.D. at 153; *Michalek v. Amplify Sports & Entm't LLC*, No. 11 Civ. 508 (PGG), 2012 U.S. Dist. LEXIS 85727, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012).

These same principles clearly apply in the present case.

### C.    Legal standards for alter ego claims:

49.    The law is clear that:

> Piercing the corporate veil is similarly a matter of equity, allowing a court to disregard the corporate form and assess one corporation's liability against another. *Mosaica Educ., Inc. v. Pa. Prevailing Wage Appeals Bd.*, 925 A.2d 176, 184 (Pa. Commw. 2007). The corporate veil will be pierced and the corporate form disregarded "whenever justice or public policy demand[,]" *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637, 641 (Pa. 1978), such as when the corporate form has been used to "defeat public convenience, justify wrong, protect fraud, or defend crime." *Mosaica Educ., Inc.*, 925 A.2d at 184.

*Commonwealth v. Golden Gate National Senior Care, LLC,* 684 Pa. 604, 194 A.3d 1010 (2018). See also, *Sereda v. Center City Acquisitions, LLC,* 2019 Pa.Super. 337, 222 A.3d 1161 (2019):

> A court may pierce the corporate veil when equity requires it to prevent fraud, illegality or injustice. *Vill. at Camelback Property Owners Ass'n*, 538 A.2d at 533. The corporate veil may be pierced under the "alter ego" theory, which applies "where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 695 (Pa. Super. 1998).

12

50. Proof of actual fraud is not necessary to pierce the corporate veil.

See, *Village at Camelback Property Owner's Ass'n v. Carr,* 371 Pa. Super. 452, 538 A.2d 528 (1988):

> Nevertheless, the corporate existence can be disregarded without a specific showing of fraud. As we recently stated in *Rinck v. Rinck*, 363 Pa.Super. 593, 526 A.2d 1221 (1987): Appellant argues that the corporate veil cannot be pierced unless the court makes a specific finding that he used his professional corporation to commit fraud, illegality or wrongdoing. This is a statement frequently made in the decided cases. Appellant's reliance on this general language, however, fails to acknowledge the scope of the rule which permits the separate corporate entity to be disregarded whenever it is necessary to avoid injustice.

See also, *Rinck v. Rinck*, 363 Pa.Super. 593, 526 A.2d 1221 (1987).

51. Although veil piercing is usually applied to corporate entities, it can also be applied to pierce limited liability companies. See, *Advanced Telephone Systems, Inc. v. Com-Net Professional Mobile Radio, LLC,* 2004 Pa. Super. 100, 846 A.2d 1264 (2004):

> Any business that may be conducted in a corporate form may also be conducted as a partnership or a limited liability company," 15 Pa. C.S. § 8102(a)(1), and "in the appropriate case the doctrine of piercing the corporate veil will be applied to a limited liability company."

See also, *Mortimer v. McCool,* 2019 Pa. Super. Unpub. LEXIS 4595, 225 A.3d 1152 (2019).

52. In *Lumax Industries v. Aultman,* 543 Pa. 38, 669 A.2d 893 (1995), the Supreme Court of Pennsylvania set forth the factors to be considered as follows:

> The factors to be considered in disregarding the corporate form are as follows: undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud.

13

53. The holding in *Lomas v. Kravitz,* 2015 Pa. Super. 267, 130 A.3d 107 (2015) is directly relevant to the present case. As stated by the Court:

> There is sufficient evidence in the record showing that (1) Cherrydale had been undercapitalized; (2) Kravitz had failed to adhere to corporate formalities; (3) there was extensive intermingling of the various corporations' funds; and (4) Appellant had used the corporate form to perpetuate a fraud, specifically, to remove assets from the reach of creditors, like Appellee. *See Lumax Industries, Inc.*

See also, *Fletcher-Harlee Corp. v. Szymanski,* 2007 Pa. Super. 310, 936 A.2d 87 (2007).

54. All of these factors are present in the within case.

Wherefore, the Plaintiffs respectfully request this Honorable Court to permit the Plaintiffs to amend their Complaint to add Keith Moore and Boustead & Company, Limited (BCL) as party Defendants. The proposed Amended Complaint is attached hereto as Exhibit "B."

Respectfully Submitted,

  */s/ Robert O Lampl*_____
ROBERT O LAMPL
PA I.D. #19809
JAMES R. COONEY
PA I.D. #32706
RYAN J. COONEY
PA I.D. #319213
SY O. LAMPL
PA. I.D. #324741
ALEXANDER L. HOLMQUIST
PA I.D. #314159
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)
Email: rlampl@lampllaw.com

15

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | **Bankruptcy No. 18-24070** |
| **ONEJET, INC.,** | **Adversary No. 19-02134-GLT** |
| Debtor. | |
| _____ | **Related to Adversary Doc. Nos.:** |
| **WOODY PARTNERS et al,** | **216, 343, 344 and 345** |
| Plaintiffs, | |
| v. | |
| **MATTHEW R. MAGUIRE, PATRICK MAGUIRE, BOUSTEAD SECURITIES, LLC and ROBERT LEWIS,** | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Robert O Lampl, hereby certify that on the 23rd day of June, 2021, I served a true and correct copy of the within **Motion for Leave to Amend the Amended Complaint** upon all interested parties, by E-mail, addressed as follows:

Christopher P. Parrington
Andrew R. Shedlock
Kutak Rock, LLP
1760 Market Street
Suite 1100
Philadelphia, PA 19103
*Christopher.Parrington@kutakrock.com*
*Andrew.Shedlock@kutakrock.com*
*daniel.carmeli@kutakrock.com*

                Jason L. Ott
Dickie, McCamey & Chilcote, P.C.
              Two PPG Place
                Suite 400
           Pittsburgh, PA 15222
             *jott@dmclaw.com*
(Counsel for Boustead Securities, LLC)

          */s/ Robert O Lampl*
          ROBERT O LAMPL
          PA I.D. #19809
          JOHN P. LACHER
          PA I.D. #62297
          JAMES R. COONEY
          PA I.D. #32706
          RYAN J. COONEY
          PA I.D. #319213
          SY O. LAMPL
          PA I.D. #324741
          ALEXANDER L. HOLMQUIST
          PA I.D. #314159
          223 Fourth Avenue, 4th Fl.
          Pittsburgh, PA  15222
          (412) 392-0330 (phone)
          (412) 392-0335 (facsimile)
          Email:  rlampl@lampllaw.com