FILED
9/2/22 1:46 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 18-24070-GLT |
| **ONEJET, INC.**, | Chapter 7 |
| *Debtor.* | |
| **WOODY PARTNERS,** *et al.*, | Adv. Pro. No. 19-2134-GLT |
| *Plaintiffs,* | Related to Dkt. Nos. 601, 608, 613, 614, 617 |
| v. | |
| **BOUSTEAD SECURITIES, LLC**, | |
| *Defendant.* | |

James R. Cooney
The Cooney Law Offices LLC
Pittsburgh, PA
*Attorney for Woody Partners, et al.*

Christopher P. Parrington
Andrew R. Shedlock
Kutak Rock LLP
Minneapolis, MN

Jason L. Ott
Frost Brown Todd LLC.
Pittsburgh, PA
*Attorneys for Boustead Securities, LLC*

## **MEMORANDUM OPINION**

Boustead Securities, LLC seeks reconsideration of the Court's denial of partial summary judgment,[1] asserting that the Court's refusal to dismiss the aiding and abetting claims against it after the Plaintiffs' settled with the direct tortfeasor ("Oral Ruling") conflicts with the

---

[1] *Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608; see *Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608-1; *Reply Memorandum of Law in Support of Motion for Reconsideration or Relief from Order*, Dkt. No. 617-1.

legal standards applied in the Court's earlier *Memorandum Opinion* ("Opinion").[2] The Plaintiffs oppose the motion to reconsider ("Motion"), contending there is no valid reason to re-examine the analysis of either ruling.[3] Frankly, Boustead's gripe is not that the Court is applying its rulings inconsistently, but that the Court does not accept Boustead's interpretation of the law or, more importantly, the *Opinion*. This is apparent from Boustead's inability to accurately describe the basis of the *Oral Ruling*. Thus, for the reasons below, the Court will deny the *Motion*.

I.  **BACKGROUND**

OneJet was a Pittsburgh-based, California corporation formed by Matthew and Patrick Maguire in 2007 to provide affordable nonstop air service between mid-sized cities in regional markets.[4] The Debtor began flight operations in April 2015.[5] In February 2017, the Debtor retained Boustead to "assist [the Debtor] in securing investors and investment capital for [the Debtor's business]."[6] Despite the Debtor's success in attracting investors, the venture was short-lived as it paid no federal taxes since 2015 and began defaulting on its obligations to vendors and the Allegheny County Airport Authority by June 2018.[7] Within a month, the Debtor began selling planes in its fleet to "cover immediate operating expenses," and suspended all operations at Pittsburgh International Airport a few weeks later.[8] Several creditors then filed an involuntary

---

[2] Woody Partners v. Maguire (In re OneJet, Inc.), No. 19-2134-GLT, 2020 WL 2617043, at *32 (Bankr. W.D. Pa. May 22, 2020).

[3] See *Response to Motion for Reconsideration*, Dkt. No. 613; *Brief/Memorandum in Opposition to Motion for Reconsideration*, Dkt. No. 614.

[4] *Amended Complaint*, Dkt. No. 216 at ¶¶ 17-19. Because Boustead's statement of material facts in support of partial summary judgment is sparse, this paragraph has been supplemented by references to the *Amended Complaint* to provide some narrative background. See *Concise Statement of Material Facts in Support of Motion for Partial Summary Judgment*, Dkt. No. 581. To be clear, none of these allegations are assumed to be true or are relevant to the Court's ruling herein.

[5] *Amended Complaint*, Dkt. No. 216 at ¶ 20.

[6] Id. at ¶ 50.

[7] Id. at ¶¶ 88-98.

[8] Id. at ¶¶ 99-100.

2

chapter 7 petition against the Debtor.[9] The petition was uncontested and an order for relief entered on November 13, 2018.[10]

The Plaintiffs are a collection of disappointed investors who acquired OneJet securities before its demise.[11] Shortly after the order for relief, the Plaintiffs sued the Maguires and Boustead for various state and common law causes of action.[12] Essentially, they contend that the Maguires misrepresented the financial health of the Debtor to secure investors and that Boustead furthered the scheme by knowingly or recklessly distributing materially misleading financial information to the Plaintiffs. The current procedural posture largely concerns the claims under the Pennsylvania Securities Act ("PSA"), although common law analogs are also implicated.[13] For context, both the Maguires and Boustead were alleged to be liable under section 501 of the PSA, which imposes liability on any person who "offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of material fact or any omission [and failure to correct a misleading statement.]"[14] The Plaintiffs also allege the Maguires and Boustead are jointly and severally liable under section 503 of the PSA for "materially aid[ing] the act or transaction constituting" the other's alleged violation of section 501.[15] In other words, a "section 501 claim" can be understood as targeting the perpetrator of securities fraud directly, while a "section 503 claim" imposes indirect liability on those who gave material aid to the primary tortfeasors.

---

| | |
|---|---|
| 9 | See *Chapter 7 Involuntary Petition*, Case No. 18-24070-GLT, Dkt. No. 1. |
| 10 | *Order for Relief Under Chapter 7*, Case No. 18-24070-GLT, Dkt. No. 28. |
| 11 | *Amended Complaint*, Dkt. No. 216 at ¶ 7. |
| 12 | Id. at ¶ 1. |
| 13 | See id. at 109-116. |
| 14 | 70 Pa. Stat. Ann. § 1-501. |
| 15 | 70 Pa. Stat. Ann. § 1-503. |

3

The Maguires and Boustead moved to dismiss the Plaintiffs' claims,[16] which the Court denied in part and granted in part in the *Opinion*.[17] Of relevance here, the Court focused on the legal question of "whether a party must first be held liable for a violation of the PSA before a section 503 action can arise."[18] Relying on *Daniel Boone Area Sch. Dist. v. Lehman Bros.*, the Maguires and Boustead argued that the PSA "requires that someone other than the [section] 503 defendant be adjudicated liable under [section] 501 in order for the defendant to be liable under [section] 503."[19] Put differently, they "contend[ed] that until someone is found liable under section 501, Plaintiffs do not have a cause of action against them under section 503."[20] Acknowledging that the "law is muddled as federal courts have failed to offer a uniform outcome in the absence of determinative case law from Pennsylvania appellate courts,"[21] the Court observed that other district courts within the circuit have "held that it is unnecessary to 'go through the motions of obtaining a judgment against a directly liable party' before pursuing relief under section 503."[22] Persuaded largely by *Gilliland v. Hergert*, the Court rejected *Daniel Boone*'s rigid requirement and instead "conclude[d] that, as a matter of judicial efficiency, a section 503 claim can survive a motion to dismiss without an adjudicated PSA violation so long as a viable 501 claim remains

---

[16]    See *Motion to Dismiss Adversary Proceeding*, Dkt. No. 244; *Motion to Dismiss Adversary Proceeding*, Dkt. No. 267; *Motion to Dismiss Adversary Proceeding*, Dkt. No. 269.

[17]    In re OneJet, Inc., 2020 WL 2617043, at *32.

[18]    Id. at *19.

[19]    Daniel Boone Area Sch. Dist. v. Lehman Bros., 187 F. Supp. 2d 400, 410 (W.D. Pa. 2002).

[20]    In re OneJet, Inc., 2020 WL 2617043, at *19.

[21]    Id.

[22]    Id. (quoting Gilliland v. Hergert, No. 2:05-CV-01059, 2007 WL 4105223, at *6 (W.D. Pa. Nov. 15, 2007)).

pending in the same proceeding."[23]  The Court noted that "[i]f the section 501 claim is later dismissed, then any derivative liability under section 503 would also evaporate."[24]

Applying that law to the facts, the Court found that because "most of the Plaintiffs assert a valid section 501 claim against Matthew Maguire, [they] have made a sufficient showing of a PSA violation to justify their pursuit of relief under section 503 against the other Defendants" like Boustead.[25]  On the other hand, the Court concluded that "the essence of Plaintiffs' [section 501] claims against the Boustead Defendants sound in negligence" and "is not the stuff of securities fraud."[26]  With "no plausible basis in the pleadings" to show fraud by Boustead, the Court dismissed the section 501 claim against it.[27]  As a result, the Court was then compelled to dismiss the section 503 claim against Matthew Maguire, reasoning that he "cannot be liable for aiding and abetting his own violation of the PSA" and "there is no pending section 501 claim (or a prior adjudication of liability) that can support a statutory aiding and abetting claim against [him]."[28]

After the *Opinion*, the Plaintiffs, Matthew Maguire, and the Estate of Patrick Maguire[29] entered into settlement negotiations to resolve the outstanding claims.  In June 2021, the Plaintiffs and the Maguires executed a "Settlement Agreement and Pro Rata Release" ("Release") under which the Plaintiffs agreed to a full and complete release of the Maguires from all claims asserted against them in this case or otherwise in exchange for a settlement payment of

---

[23]  Id.

[24]  Id.

[25]  Id.

[26]  Id. at *17.

[27]  Id.

[28]  Id. at *19.

[29]  Patrick Maguire subsequently passed away and his estate was substituted as a defendant pursuant to Fed. R. Bankr. P. 7025.  See *Default Order*, Dkt. No. 342.

5

$1,200,000.[30] Under this so-called "*Griffin*-release,"[31] the Maguires conceded joint tortfeasor liability without admitting "liability, fault, wrongdoing, or violation."[32] Under the Uniform Contribution Among Tortfeasors Act,[33] the *Release* extinguished Boustead's right to seek contribution from the Maguires but, to the extent liability is ultimately allocated to them, also reduced Boustead's liability. Moreover, the *Release* barred the Plaintiffs from disparaging the Maguires.[34]

Following the Maguires' release, Boustead sought partial summary judgment as to both the common law aiding and abetting fraud claim and the section 503 claim.[35] Boustead argued that because the Maguires had been released from those wrongs supporting the aiding and abetting claims, it was no longer possible for the Plaintiffs to obtain the requisite findings of fraud to prevail against Boustead.[36] Specifically, Boustead emphasized one sentence from the *Opinion*: "If the section 501 claim is later dismissed, then any derivative liability under section 503 would also evaporate."[37] With no pending section 501 claim against the Maguires, Boustead contended that, under *Daniel Boone*, they cannot be adjudicated as liable for fraud.[38] This legal impossibility, under Boustead's reasoning, is only further exacerbated by the non-disparagement clause of the *Release* and precludes even the suggestion that the Maguires might be responsible for fraud.[39]

---

[30]   *Exhibit 1 to the Concise Statement*, Dkt. No. 535.

[31]   See Griffin v. United States, 500 F.2d 1059 (3d Cir. 1974).

[32]   *Exhibit 1 to the Concise Statement*, Dkt. No. 535 at 5.

[33]   See 42 Pa. Stat. and Cons. Stat. Ann. § 8327

[34]   *Exhibit 1 to the Concise Statement*, Dkt. No. 535 at 4.

[35]   *Motion for Partial Summary Judgment*, Dkt. No. 580 at ¶ 5.

[36]   *Memorandum of Law in Support of Motion for Partial Summary Judgment*, Dkt. No. 580-1 at 2.

[37]   Id. at 3.

[38]   Id. at 4.

[39]   See *Memorandum of Law in Support of Motion for Partial Summary Judgment*, Dkt. No. 580-1 at 5.

On January 20, 2022, the Court held a hearing on Boustead's motion for partial summary judgment.[40] Following oral arguments, the Court issued the *Oral Ruling* denying Boustead's motion for partial summary judgment.[41] The Court "agreed conceptually that the viability of a [s]ection 503 aiding and abetting claim under the PSA is dependent on the viability of the primary claim under [s]ection 501 or [s]ection 502," but noted that it "expressly rejected the *Daniel Boone* court's suggestion that a party must go through the motions of trial, first obtaining a judgment for direct liability before pursuing an aiding and abetting claim."[42] As for the *Opinion*'s statement on the "evaporat[ion]" of liability under section 503, the Court clarified that its "intent was to merely describe the interrelationship of the merits of the primary claims and any derivative liability under [s]ection 503, and was looking at it in the lens of several competing motions to dismiss at that time."[43] In this context, the Court stated that it was "apparent that [the language] was merely dicta."[44] The Court further acknowledged that describing section 503 liability as "derivative" was inapt.[45]

---

    Not only is it now impossible for Plaintiffs to obtain an adjudication that the Maguires committed fraud in violation of [s]ection 501 of the PSA or otherwise as required for their [s]ection 503 aiding and abetting claim against Boustead, but Plaintiffs have gone a step further in their Release of the Maguires – the Release prevents Plaintiffs from even accusing the Maguires of fraud because it makes it [] unlawful for Plaintiffs to make any disparaging remark about the Maguires akin to an allegation of fraud. Specifically, the Release contains a non-disparagement clause wherein Plaintiffs agreed to refrain from making 'disparaging remarks about or criticiz[ing]' the Maguires which means that not only are Plaintiffs barred from seeking and obtaining an adjudication of fraud against the Maguires under the Release, but they are barred from even alleging that the Maguires engaged in fraud as they alleged in this case before executing the Release.

Id. (internal citations omitted).

[40]    *Hearing Held on 1/20/2022*, Dkt. No. 602.

[41]    *Text Order*, Dkt. No. 601.

[42]    *Trans. of January 20, 2022 Hearing*, Dkt. No. 604 at 26:7-14.

[43]    Id. at 27:6-10.

[44]    Id. at 27:11-13.

[45]    Id. at 27:14-20. With the benefit of further contemplation, "indirect" is a much better descriptor.

> Turning to the merits of the motion, the Court explained:
>
> that a violation under [s]ection 501 or 502 is a precondition to a claim under [s]ection 503, and frankly, that's simple logic. One cannot aid and abet a violation of the PSA that did not occur. And the same holds true for the common law. There must be a primary tort if another is to be found liable for aiding and abetting it. And this rationale was the basis for the Court's Memorandum Opinion. But the Court can make a judicial finding or an adjudication with respect to the direct claim as an element of proving the aiding and abetting claims against Boustead.[46]

The Court pointed to *Gilliland* as being "instructive on this issue . . . [because] the party directly liable for the securities fraud had died and his estate was insolvent but the plaintiffs brought suit under [s]ection 503 against the party that allegedly aided and abetted the fraud."[47] When the defendant similarly moved for summary judgment citing the *Daniel Boone* case, the *Gilliland* court denied relief because it "respectfully disagree[d] with the statement in *Daniel Boone* that a determination of primary liability is a precondition to suit under Section 1-503 . . . [a]nd while the defendant is liable only to the same extent as the deceased, that liability can be determined in the context of this litigation."[48]

The Court rejected Boustead's position that "secondary liability must be dismissed upon the release of the primary tortfeasor [because it] would discourage settlements and render the Uniform Contribution Among Joint Tortfeasors Act a nullity."[49] The Court also concluded that the *Release*'s non-disparagement clause would not frustrate litigation because Boustead maintained "no standing to enforce the provisions of the *Release*, and [was] not a party to the *Release*, nor a third-party beneficiary."[50]

---

[46]    Id. at 27:24-28:10.

[47]    Id. at 28:11-15.

[48]    Id. at 28:16-23.

[49]    Id. at 29:2-5.

[50]    Id. at 29:12-14.

After the Court's *Oral Ruling*, Boustead filed the *Motion*,[51] which the Plaintiffs opposed.[52] At the end of oral arguments, the Court took the matter under advisement.[53]

## II.    JURISDICTION

This case was referred to the Court through an Opinion and Order issued by United States District Judge Marilyn J. Horan on June 19, 2019 upon a finding that it is "related to" a case arising under title 11 of the United States Code.[54]  As a "related to" proceeding, this Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), (c), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.

## III.    POSITIONS OF THE PARTIES

### A.    Boustead

Boustead asserts that the Court should reconsider its *Oral Ruling* because it failed to consistently apply its analysis from the *Opinion*.[55]  This failure, according to Boustead, "is highly prejudicial and manifestly unjust."[56]  Boustead centers its argument on the perceived inconsistency between the Court's prior treatment of the section 503 claim against the Maguires and the "failure to dismiss Plaintiffs' [s]ection 503 claim against Boustead after Plaintiffs' dismissal of their [s]ection 501 claim against the Maguires."[57]  Boustead insists that this language cannot be brushed aside as "merely dicta" because, in its view, it is a "proper iteration of the case

---

[51] *Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608.
[52] *Response to Motion for Reconsideration*, Dkt. No. 613.
[53] *Hearing Held on 03/03/2022*, Dkt. No. 619.
[54] See *Opinion and Order*, Dkt. No. 48 at 6.
[55] *Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608-1 at 12.
[56] Id.
[57] Id.

law on a [s]ection 503 claim and was the substantive basis of the Court's decision to dismiss Plaintiffs' [s]ection 503 claim against [the Maguires]."[58] After applying the literal reading of the plain text, Boustead contends that "[i]f the existence of a pending [s]ection 501 claim or prior adjudication of liability under [s]ection 501 is mandatory for Plaintiffs to succeed on their [s]ection 503 claim against Matthew [Maguire], then it must also be mandatory for them to succeed on their precisely similarly situated [s]ection 503 claim against Boustead."[59]

In addition, Boustead suggests that the Court erroneously relied on a misinterpretation of *Gilliland*'s disagreement with *Daniel Boone*.[60] Boustead asserts that *Gilliland* only disagreed with a portion of *Daniel Boone* and did not "completely eliminate the requirement for adjudication of liability under [s]ection 501 to succeed on a [s]ection 503 claim."[61] Boustead also attacks *Gilliland*'s utility based on its "unpublished" status.[62]

B.  The Plaintiffs

The Plaintiffs argue that reconsideration must be denied because Boustead failed to meet the requisite threshold for reconsideration by "not identif[ying] any newly discovered evidence, nor . . . any intervening change in law."[63] Instead, they maintain that Boustead "simply rehashes the same arguments presented in its prior Motion for Partial Summary Judgment."[64] The Plaintiffs assert that Boustead misconstrues the *Opinion* because the Court "made it clear that [the

---

[58]  Id. at 13.
[59]  Id. at 16.
[60]  Id. at 16-17.
[61]  Id. at 17.
[62]  Id. at 18.
[63]  See *Response to Motion for Reconsideration*, Dkt. No. 613; *Brief/Memorandum in Opposition to Motion for Reconsideration*, Dkt. No. 614 at 4.
[64]  *Brief/Memorandum in Opposition to Motion for Reconsideration*, Dkt. No. 614 at 4.

"evaporate"] language was dicta."[65] They agree with the Court that a judgment against the Maguires is not precondition to aiding and abetting liability under either the PSA or the common law.[66] The Plaintiffs also oppose the Court "'re-examin[ing] its analysis of the *Gilliland* and *Daniel Boone* cases . . . [because] Boustead has not identified any reason for such an exercise, let alone a 'clear reason to prevent manifest injustice.'"[67] The Plaintiffs contend that the Court's rejection of *Daniel Boone* and its precondition requirement aligns with other courts that criticize *Daniel Boone*,[68] namely *Chi. Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*[69] and *Baker v. Family Credit Counseling Corp.*[70]

IV.   DISCUSSION

    A.   The Standard for Reconsideration

When reviewing past rulings, this Court has noted that "[m]otions for reconsideration are not recognized by the Federal Rules of Civil Procedure but are generally considered under Fed. R. Civ. P. 59."[71] After receipt of an unfavorable judgment, Fed. R. Civ. P. 59(e) ("Rule 59(e)") allows the aggrieved party an opportunity to alter or amend the judgment if the motion is filed within 14 days after its entry.[72] In the Third Circuit, courts have explained that the basis for reconsidering judgments is "to correct manifest errors of law or fact or to present

---

[65] Id.

[66] Id.

[67] Id. at 5.

[68] Id. at 6.

[69] Chi. Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304 (E.D. Pa. 2007).

[70] Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392 (E.D. Pa. 2006).

[71] United States Tr. v. Harms (In re Harms), 612 B.R. 288, 294 (Bankr. W.D. Pa. 2020).

[72] Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023; see U.S. v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003).

11

newly discovered evidence."[73] A motion for reconsideration under Rule 59(e) "may only be granted if the party seeking reconsideration shows (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or prevent manifest injustice."[74] To find clear error, there must be "more than mere disagreement with the earlier ruling; it must [be] show[n] that the Bankruptcy Court committed 'a direct, obvious, [or] observable error.'"[75]

B. Analysis

Boustead urges the Court to reconsider the "clear error" resulting from the perceived inconsistency between the *Oral Ruling* and the *Opinion*. The Supreme Court of the United States has explained that the "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[76] "This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues,'"[77] but is a more "amorphous concept" compared to the well-defined limits of res judicata.[78] That said, the law of the case doctrine "does not apply if the court is 'convinced [its prior decision] is clearly erroneous and

---

[73] Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

[74] In re Marinari, 596 B.R. 809, 818 (Bankr. E.D. Pa. 2019) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

[75] In re Energy Future Holdings Corp., 904 F.3d 298, 312 (3d Cir. 2018) (quoting Black's Law Dictionary (10th ed. 2014)).

[76] Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984); see Pepper v. United States, 562 U.S. 476, 506–07, 131 S. Ct. 1229, 1250–51, 179 L. Ed. 2d 196 (2011).

[77] Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 2177, 100 L. Ed. 2d 811 (1988) (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)).

[78] Arizona v. California, 460 U.S. at 618.

would work a manifest injustice.'"[79] Also, the law of the case does not apply to dicta, which are non-binding,[80] "peripheral" statements "in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding."[81] Thus, as succinctly put by the United States Court of Appeals for the Third Circuit, "[i]n the absence of extraordinary circumstances, [a court] should generally adhere to its own prior rulings arising out of the same case."[82]

Here, Boustead argues that a passage of the *Opinion* consisting of the following two statements is the law of this case that should have governed the outcome of the *Oral Ruling*:

> (1) "Although there are compelling reasons behind either approach, the Court adopts the reasoning of the more recent decisions and concludes that, as a matter of judicial efficiency, a section 503 claim can survive a motion to dismiss without an adjudicated PSA violation so long as a viable 501 claim remains pending in the same proceeding."; and
>
> (2) "If the section 501 claim is later dismissed, then any derivative liability under section 503 would also evaporate."[83]

Boustead is only half right because each statement is analytically distinct. The first represents the legal standard critical to the Court's assessment of the *Amended Complaint*'s sufficiency under Fed. R. Civ. P. 12(b)(6). The second is plainly dicta because it purports to describe the impact of

---

[79] Agostini v. Felton, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Arizona v. California, 460 U.S. at 618 n. 8); see Wyoming v. Oklahoma, 502 U.S. 437, 446, 112 S. Ct. 789, 796, 117 L. Ed. 2d 1 (1992).

[80] See Williams v. United States, 289 U.S. 553, 568, 53 S. Ct. 751, 756, 77 L. Ed. 1372 (1933).

[81] United States v. Mallory, 765 F.3d 373, 381 (3d Cir. 2014) (quoting Sarnoff v. American Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir.1986)) (internal quotation marks omitted).

[82] Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa., 701 F.3d 938, 949 (3d Cir. 2012).

[83] In re OneJet, Inc., 2020 WL 2617043, at *19 (emphasis added).

a potential claim dismissal at some "later" date untethered to any particular set of facts.[84] As such, it is unnecessary to the holding.[85]

As a practical matter, the crux of Boustead's displeasure is the Court's failure to strictly adhere to the words of the *Opinion* rather than a lack of fidelity to its substance. But as the Court explained in the *Oral Ruling*—and the Court cannot be clearer on this point—that language is, in hindsight, regrettably imprecise when viewed outside the narrow context of the *Opinion*'s procedural posture.[86] The Court's intent was merely to acknowledge the "simple logic" that there must be a viable direct claim for there to be a viable indirect claim.[87] After all, if "[section] 503 carries with it the precondition that there be a person liable under section 501 or 502,"[88] then an indirect claim is inadequately pled when there are insufficient facts to establish a plausible direct claim. To that end, the *Opinion*'s holding is appropriately permissive: "a section 503 claim *can survive* a motion to dismiss without an adjudicated PSA violation so long as a viable 501 claim remains pending in the same proceeding."[89] The phrase "pending in the same proceeding" stems from inadvertently equating the assertion of a plausible direct claim with the alleged existence of one. Like it or not, the possibility that a complaint could sufficiently allege a plausible direct claim for the sole purpose of asserting an indirect claim was neither before the Court nor received "full and fair consideration."[90]

---

[84] Id.

[85] Lest there be any confusion, the Court also finds a broad standard requiring dismissal of an indirect claim without consideration as to why the direct claim was dismissed to be erroneous and manifestly unjust. See Agostini v. Felton, 521 U.S. at 236.

[86] Trans. of January 20, 2022 Hearing, Dkt. No. 604 at 26:23-27:16.

[87] Id. at 27:24-28:1.

[88] Daniel Boone Area Sch. Dist. v. Lehman Bros., 187 F. Supp. 2d at 410.

[89] In re OneJet, Inc., 2020 WL 2617043, at *19 (emphasis added).

[90] United States v. Mallory, 765 F.3d at 381.

Ultimately, the operative passage of the *Opinion* accurately reflects the Court's rejection of *Daniel Boone*'s strict requirement that a party first "'go through the motions of obtaining a judgment against a directly liable party' before pursuing relief under section 503."[91] Instead, relying on cases like *Gilliland*, the Court adopted a flexible approach that allowed the section 501 claim and the section 503 claim to be adjudicated in the same proceeding.[92] And that is precisely what the *Oral Ruling* held: the Maguires' direct liability can be adjudicated in this adversary proceeding as an element or pre-condition of the Plaintiffs' claim for indirect liability against Boustead.[93] In fact, this scenario is nearly identical to *Gilliland*, where the primary tortfeasor had died and was dismissed from the lawsuit but the court permitted the section 501 claim to be adjudicated as part of the plaintiff's case against the section 503 defendant.[94]

Factually, Boustead's cries of disparate treatment rely on a false equivalence between the dismissal of the direct claims against it and the Maguires. The Court dismissed the indirect claim against the Maguires because it found that the Plaintiffs failed to allege a plausible direct claim against Boustead. In other words, the *Amended Complaint* did not describe any fraud or securities law violation committed by someone other than the Maguires that they could have aided. In contrast, the direct claim against the Maguires is plausible—the *Opinion* clearly says as much[95]—but will be voluntarily dismissed by the Plaintiffs as part of a settlement of that claim. Thus, the distinction is that the *Amended Complaint* still contains all the factual predicates to the

---

[91]    Id. (quoting Gilliland v. Hergert, 2007 WL 4105223, at *6).

[92]    Id.

[93]    *Trans. of January 20, 2022 Hearing*, Dkt. No. 604 at 28:6-10.

[94]    See Gilliland v. Hergert, 2007 WL 4105223, at *1, *6.

[95]    In re OneJet, Inc., 2020 WL 2617043, at *19.

15

indirect claims against Boustead, including a plausible section 501 claim against the Maguires, which the Court can finally adjudicate.

Legally, Boustead's protest that it is "impossible for [the Maguires] to be found liable for engaging in any tortious act" is knowingly disingenuous.[96] As is the suggestion that the Court has eliminated the requirement "that someone other than the [section] 503 defendant be adjudicated liable under [section] 501 in order for the defendant to be liable under [section] 503."[97] Implicit in these arguments is the idea that "adjudication" connotes a judgment against Matthew Maguire. But Boustead concedes, though grudgingly in a footnote, that "adjudication" simply means "to settle in the exercise of judicial authority."[98] The Court can still find, as a matter of fact and law, that the Maguires engaged in securities fraud as a predicate to the aiding and abetting claims asserted against Boustead. In such an event, "there [will] be a person liable under section 501" else there will be no indirect liability under section 503 of the PSA either.[99] The same holds true for the common law claim. There is no prejudice to Boustead because the Plaintiffs have the same burden to prove primary liability they had before the *Release*.[100]

---

[96] *Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608-1 at 20.

[97] Daniel Boone Area Sch. Dist. v. Lehman Bros., 187 F. Supp. 2d at 410; see *Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608-1 at 17-20.

[98] *Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Partial Summary Judgment*, Dkt. No. 608-1 at 16-17 n.7 ("Neither *Gilliland* nor *Daniel Boone* provides a definition of the term 'adjudicate' with regard to the Daniel Boone case's ruling that Section 503 requires that someone other than the Section 503 defendant be 'adjudicated' liable under Section 501 for the defendant to be liable under Section 503. *See Daniel Boone*, 187 F. Supp. 2d 400; *see also Gilliland*, 2007 WL 4105223. However, "adjudicate" is defined by Black's Law Dictionary as follows: 'To settle in the exercise of judicial authority. To determine finally.' (Black's Law Dict. (4th ed.) at pg. 63, citing *United States v. Irwin*, 127 U.S. 125 (1888).) Furthermore, the U.S. District Court for the Eastern District of Pennsylvania has recognized similar definitions of adjudicate,' including: (i) 'the legal process of resolving a dispute; the process of judicially deciding a case;' (ii) 'to make an official decision about who is right in in a dispute;' (iii) 'to settle judicially;' or (iv) 'to act as judge.' *Wilborn v. Barr*, 401 F. Supp. 3d 501, 506 (E.D. Pa. 2019).").

[99] Daniel Boone Area Sch. Dist. v. Lehman Bros., 187 F. Supp. 2d at 410.

[100] Boustead half-heartedly complains (again, in a footnote) that without the Maguires as parties, it will have to defend them at trial. Not so. While Boustead may have preferred a co-defendant actively challenging the Plaintiffs' proof that the Maguires engaged in securities fraud as an additional barrier to its potential indirect

16

In the end, Boustead is solely advocating an outcome, which is why its fixation on a single passage of the *Opinion* seems more of a "gotcha" than a sincere legal argument. Other than challenging the suggestion that the *Opinion*'s inartful language was dicta, Boustead completely ignores the rationale of the *Oral Ruling* and its explanation of the *Opinion*. Consequently, this reconsideration effort was doomed by failing to address the most critical points, including: (1) dicta or not, the Court made clear that the *Opinion*'s language (a) had to be understood within the context of the motions to dismiss and (b) did not support the broad standard Boustead advanced; (2) dismissal of the direct claims against the Maguires and Boustead are factually dissimilar, warranting different outcomes; (3) the facts of *Gilliland*, which the Court specifically found persuasive, are nearly identical to this case, providing substantial support for the *Oral Ruling*; and (4) that an "adjudication" of the Maguires direct liability can still occur as part of these proceedings despite the *Release*. Instead, Boustead doubled down on the curious notion that the Court misunderstood its own *Opinion*. The impression is that Boustead just hoped to piggy-back on to the Maguires' settlement to end the litigation and avoid any liability. In sum, Boustead has not shown that the *Oral Ruling* was clearly erroneous.

---

liability, that was never guaranteed. Moreover, Boustead will almost certainly not defend the Maguires because it is in Boustead's interest to allocate as much liability to them as possible for any damages.

## V. CONCLUSION

In light of the foregoing, the *Motion* is denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: September 2, 2022

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
Christopher P. Parrington, Esq.
Jason L. Ott, Esq.
James R. Cooney, Esq.